FILED
WILLIAMSON COUNTY
CIRCUIT COURT
2019 APR 25 PM 3:36

ENTERED_____

COPY

| | |
|---|---|
| DEAN CHASE; SANDRA CHASE; and D.F. CHASE, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| CUMMINGS MANOOKIAN PLC; MANOOKIAN PLLC; BRIAN PHILIP MANOOKIAN; HAMMERVOLD PLC; MARK HAMMERVOLD; CUMMINGS LAW LLC; BRIAN CUMMINGS; and AFSOON HAGH, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

No. 2019-221

---

## MOTION TO SUBJECT PROPERTY, ISSUE WRITS OF EXECUTION AND DISTRINGAS/FIERI FACIAS, APPOINT RECEIVER AND GRANT INJUNCTIVE RELIEF

---

Come the Plaintiffs, Dean Chase, Sandra Chase and D.F. Chase, by and through counsel, and (a) pursuant to Tenn. Code Ann. § 26-4-101 *et.seq.* respectfully move this Court for an order compelling the identification, preventing the transfer to third parties, and compelling the turnover to Plaintiffs (or a receiver) of certain property as set forth herein, (b) pursuant to Tenn. Code Ann. §§ 26-1-105 and 26-3-103, respectfully move the Court to issue a *Writ of Execution and Distringas/Fieri Facias* on the assets of defendants Cummings Manookian PLC and Hammervold PLC and appoint a receiver for the collection of their choses in action; and (c) pursuant to Tenn. Code Ann. §29-1-102 and

Tenn. R. Civ. Proc. 65.04, respectfully move the court to enter a temporary injunction that prohibits all Defendants from:

a.      Disbursing any monies due to, or on behalf of, any of the Sanctions Judgment Debtors (as defined below), their officers, directors, agents, heirs, successor or assigns;

b.      Entering into any agreements for payments by any third parties for fees and expenses due to any of the Sanctions Judgment Debtors; and

c.      Interfering with any actions undertaken by any receiver appointed by the Court.

In support of this Motion, Plaintiffs state as follows:

## I. FACTS

### A.      The Events Leading to the Sanctions Judgment

1.      As set forth in the July 20, 2018 Order entered by this Court and attached as **Exhibit 1** (the "**July 20 Sanctions Order**") Mr. Manookian, acting through and on behalf of his law firm Cummings Manookian PLLC ("**Cummings Manookian**"), and Mr. Hammervold, acting through and on behalf of his law firm Hammervold PLC, entered appearances in 2015 as counsel for several defendants in *David Chase v. Chris Stewart, et al.* Williamson County, Tennessee Circuit Court, docket no. 2015-200 (the "**David Chase Action**").

2.      In the course of the David Chase Action, Mr. Manookian caused subpoenas to be served on Dean Chase, Sandra Chase, and DF Chase, who were not at that time parties to the David Chase Action. The subpoenas sought certain documents and commanded the

2

Chases, both individually and on behalf of D.F. Chase, to give depositions. (See **Exhibit 1**, p. 9). Subsequently, Mr. Manookian and the Chases entered into an agreed protective order (the "**Protective Order**"), which allowed them to designate documents that they were turning over pursuant to the subpoenas as confidential, and to designate deposition testimony is confidential. (See *Id.*, pp. 9-11). The Protective Order was eventually filed and entered by this Court. (See *Id.*, pp. 12-13).

3.      After Mr. Manookian requested authority to provide News Channel 4 WSMV with copies of Sandra Chase's deposition, which had been deemed confidential by Ms. Chase's counsel, counsel for Plaintiff David Chase filed an Expedited Motion for Sanctions, Protective Orders and Other Relief, which led to the Court ordering that all of the deposition testimony and documents that had been deemed confidential be placed under seal pending the entry of the Protective Order. (See *Id.,* pp. 14-15).

4.      Ultimately, the videotaped transcripts of deposition testimony and copies of certain documents designated as confidential were disclosed to several local news outlets. (See *Id.*, pp. 20-25). Additionally, the Court found that some of the confidential materials surfaced as exhibits to separate lawsuit filed by Mr. Manookian and Mr. Hammervold in the Circuit Court for Davidson County, Tennessee. (See *Id.*, pp. 18-20). As a result, Plaintiffs Dean Chase, Sandra Chase and D.F. Chase were granted permission by this Court to intervene in the David Chase Action, and they filed motions to hold Mr. Manookian, Cummings Manookian, Mr. Hammervold, and Hammervold PLC in contempt for violating the Protective Order. (See *Id.*, p. 25).

3

5.     After a series of hearings and follow-up motions that spanned more than two years, Judge Binkley of this Court found that Mr. Manookian had knowingly, willfully, and intentionally violated the Protective Order and, *inter alia,* attempted "to mislead the Court from uncovering his violations of the Court's Orders by any means necessary." (See *Id.*, pp. 31, 85-95). Judge Binkley also found that Mr. Hammervold had knowingly, willfully, and intentionally violated the Protective Order. (See *Id.*, pp. 93-94).

6.     Finding that Messrs. Manookian and Hammervold had (a) abused the discovery process, (b) failed to maintain candor with this court, (c) continuously violated the Agreed Protective Order, and (d) attempted to defraud the court for over two years, this Court imposed monetary sanctions on Mr. Manookian, Cummings Manookian, Mr. Hammervold, and Hammervold PLC (the "**Sanctions Judgment Debtors**"). (See *Id.*, pp.116-122).

7.     Specifically, the Court ruled that Plaintiffs Dean Chase, Sandra Chase and D.F. Chase (as well as certain corporate entities owned or controlled by Dean Chase) should be awarded their attorneys' fees as sanctions. (See *Id*). In the July 20 Sanctions Order and in a supplemental Order entered on September 27, 2018 attached as **Exhibit 2** (the "**Supplemental Sanctions Order**"), this Court awarded monetary sanctions against the Sanctions Judgment Debtors, jointly and severally, in favor of Dean Chase, Sandra Chase, and D.F. Chase, Inc. in the total amount of $748,769.21 (the "**Sanctions Judgment**"). (See **Exhibit 2**). Included within the amount awarded in the Sanctions Judgment, this Court held that certain companies owned or controlled by Dean Chase- CK

4

Global, LLC and NV Music Row, LLC- were entitled to share in that amount to the extent of $638,105.82. (See *Id.*).

8.     Pursuant to Tenn. R. App. P. 4(a), the Sanctions Judgment became final on October 27, 2018.

9.     Mr. Manookian, Mr. Hammervold and Hammervold PLC have appealed the Sanctions Judgment, but none of them have filed a supersedeas bond to stay execution thereon. Mr. Hammervold and Hammervold PLC have filed a "Motion to Stay Proceedings Pending Expedited Rule 10B Appeal" in the David Chase Action. However, it does not appear that they have set the motion for hearing, and no stay has been granted by this court as of the filing of this Complaint.

10.     The initial attempt to satisfy the Sanctions Judgment was unsuccessful, as evidenced by the returns thereon attached hereto as **Exhibit 3**.

11.     As such, the Sanctions Judgment remains wholly unsatisfied and the current balance of the judgment, including statutory post-judgment interest through April 24, 2019, was $778,751.52. The Sanctions Judgment balance increases by $143.60 every day due to the accumulation of post-judgment interest.


**B.     The Indefinite Suspension of Mr. Manookian From the Practice of Law and its Effect on Pending Cummings Manookian Litigation**

12.     At the time of its formation in 2014, Cummings Manookian had two members, Mr. Cummings and Mr. Manookian, as shown on the attached **Exhibit 4**.

5

13.     In September 2018, the Tennessee Supreme Court suspended Mr. Manookian from the practice of law, upon a finding that he poses a threat of substantial harm to the public. A copy of the suspension order is attached as **Exhibit 5.** Per its order of February 27, 2019 attached hereto as **Exhibit 6**, Mr. Manookian remains suspended indefinitely and is, *inter alia*, prohibited from maintaining any presence where the practice of law is conducted. By virtue of his suspension from the practice of law, Mr. Manookian cannot legally be a member of Cummings Manookian. *See* Tenn. Code Ann. § 48-249-1109.

14.     Likewise, sometime between September 20, 2018 and January 14, 2019, Mr. Cummings formally withdrew as a member from Cummings Manookian, as evidenced by the following facts:

a.     On September 20, 2018, Mr. Cummings formed Cummings Law, as reflected by the filings with the Tennessee Secretary of State attached as **Exhibit 7**;

b.     On or about September 26, 2018, Mr. Cummings filed at least six Notices of Change of Address & Firm Affiliation in pending cases, which reflected that he was then practicing by and through his new law firm, Cummings Law, as shown on **Exhibit 8**;

c.     On December 19, 2018, Mr. Cummings filed with the Tennessee Secretary of State paperwork removing himself as registered agent for Cummings Manookian, as shown by attached **Exhibit 9**; and

d.     On January 14, 2019, Mr. Manookian filed, on behalf of Cummings Manookian, its 2018 annual report showing that the number of members had dropped from two to one, as shown on attached **Exhibit 10**.

6

15.     However, notwithstanding Mr. Cummings withdrawal as a member, and the fact that Mr. Manookian cannot legally be that sole remaining member, Cummings Manookian continues to operate as a single member PLLC law practice.  The identity of that new member is not shown in the above referenced January 14, 2019 annual report filed with the Tennessee Secretary of State by Mr. Manookian.  On information and belief, that sole member now operating Cummings Manookian as a law practice is Mr. Manookian's wife, Ms. Hagh, as evidenced by the fact that *since* January 14, 2019, Ms. Hagh appears as counsel or co-counsel of record acting by and on behalf of Cummings Manookian. Attached as **Collective Exhibit 11** is a collection of docket sheets showing pending cases known to Plaintiffs as of the time of filing this Motion, in which Ms. Hagh continues to appear as counsel of record, along with copies of the recent pleadings or motions filed in those cases.  As shown in Exhibit 11, in one of these cases, Ms. Hagh's signature block does not use the name "Cummings Manookian" but does use the same address and the email address of "cummingsmanookian.com."   In the others, the name Cummings Manookian remains in her signature block.

16.     There are also many pending lawsuits that were initiated by one or more attorneys acting by and on behalf of Cummings Manookian and that, since Mr. Manookian's suspension and Mr. Cumming's departure from the firm, are now being handled exclusively either by former Cummings Manookian attorneys acting by and on behalf of other law firms, or by co-counsel in that litigation, or both. Some of these cases are being handled by Mr. Cummings on behalf of Cummings Law and/or Mr. Hammervold on behalf of Hammervold PLC and others are being handled by Ms. Hagh, possibly as a

7

sole practitioner. (See above referenced Exhibit 11). Attached as **Exhibit 12** is a list of such pending cases known to Plaintiffs at the time of filing this action. These are only the known cases to Plaintiffs at this time based on available online court records in various jurisdictions, and there well may be other cases in other jurisdictions.

17.     The cases still being handled by Ms. Hagh on behalf of Cummings Manookian and the cases initiated by Cummings Manookian and now being handled by Mr. Cummings and/or Mr. Hammervold are referred to herein collectively as the "**Pending Cummings Manookian Litigation**."

18.     Cummings Manookian is, and has been known primarily as, a plaintiff's medical malpractice firm, and the overwhelming majority of the cases comprising the Pending Cummings Manookian Litigation are healthcare liability cases. It is therefore highly likely that the fee arrangements for Cummings Manookian in these cases is a contingency fee. In any event, to the extent that professional fees owed under the fee agreements entered into with clients in the Pending Cummings Manookian Litigation are still due, in the form of delayed fixed fee payments, delayed hourly payments, contingency fees or otherwise, Cummings Manookian is entitled to such fees when and as due. Such rights to payment, and any other rights to payment from any source, constitute choses in action under Tennessee law, and are herein referred to, along with other rights discussed herein, as the "**Cummings Manookian Choses in Action**.

## C. The Cummings Manookian "Jeweler Agreements"

19.     In addition to the fees owed to Cummings Manookian related to the Pending Cummings Manookian Litigation, it appears that Cummings Manookian may be owed substantial amounts of money pursuant to "Consulting/Engagement Agreements" entered into with one or more jewelers, as discussed below.

20.     In 2016, Mr. Manookian, Mr. Cummings, Cummings Manookian, Mr. Hammervold, and Hammervold PLC were sued by Diamond Consortium, Inc. d/b/a The Diamond Doctor (the "**Diamond Doctor**") in the United States District Court for the Eastern District of Tennessee (the "**Texas Lawsuit**"). A copy of the Consolidated Amended Complaint in the Texas Lawsuit is attached as **Exhibit 13**.

21.     In the Texas Lawsuit, the Diamond Doctor alleged that Mr. Manookian was engaged in a scheme of extortion whereby he would target jewelers with internet and social media campaigns in which Cummings Manookian would create websites that accused the target jeweler of cheating their customers through the sale of "overgraded" diamonds, and post messages on the newsfeed of the jeweler's Facebook page making accusations about cheating customers.  (See **Exhibit 13**, pp. 4-5, 7-10).  According to the complaint, Mr. Manookian would then contact the target jeweler and tell them that the campaign against the jeweler would stop if the jeweler would "engage" Cummings Manookian as its outside legal counsel for several years. (See *Id.*).  The Diamond Doctor alleged that Mr. Manookian proposed that the Diamond Doctor pay Cummings Manookian $25,000 a month over a 10-year period or an aggregate fee of $3 million.  (See *Id.* p. 10).

9

22.     The Diamond Doctor also alleged that after the initial conversation between Mr. Manookian and the owner of The Diamond Doctor, Mr. Manookian sent the Diamond Doctor a proposed Consulting/Engagement Agreement, which, according to the complaint, "was a version another jeweler . . . supposedly executed with critical information concerning the payment terms and length redacted." (See **Exhibit 13**., p. 26 19-20). According to the Texas Lawsuit, a copy of the proposed agreement is attached as **Exhibit 14**.

23.     Mr. Manookian and all of the other defendants in the Texas Lawsuit denied wrongdoing, and the case was ultimately resolved with an injunction that that prohibited the parties from disparaging each other. However, Mr. Manookian, Mr. Cummings, and Cummings Manookian did not deny the allegations that Cummings Manookian had entered into retainer agreements with a number of jewelers.

24.     For example, the complaint in the Texas Lawsuit alleges that "several" jewelers had agreed to engage Cummings Manookian as their outside counsel. (See **Exhibit 13**, p. 9). Attached as an exhibit to that complaint was the transcript of a conversation between Mr. Manookian and the owner of the Diamond Doctor. An excerpt of this transcript is attached as **Exhibit 15.** In this conversation, Mr. Manookian states that Cummings Manookian "represents twenty or twenty-five stores, total." (See **Exhibit 15**, pp. 1, 3). In their answer, Mr. Manookian and Cummings Manookian admitted that Mr. Manookian had made this statement. (See **Exhibit 16**, p. 21).

10

25.     According to an article in the *Dallas Morning News*, Genesis Diamonds of Nashville and/or its owner, Boaz Ramon, entered into an engagement agreement with Cummings Manookian. As the article states:

> After Manookian's law partner filed three customer lawsuits for overgraded diamonds against Genesis, Ramon hired Cummings Manookian to represent him and his store. That creates an attorney-client relationship that precludes Manookian and the firm from representing unhappy customers in legal actions against the jeweler.

(See **Exhibit 17**). [1]  In his conversation with the owner of The Diamond Doctor, Mr. Manookian confirmed that Cummings Manookian now represented Genesis Diamonds, which is owned by Ramon Boaz.  (See **Exhibit 15**, p. 2).  Mr. Boaz has been subpoenaed for a deposition by disciplinary counsel for the Tennessee Board of Professional Responsibility in one of the disciplinary actions currently being prosecuted against Mr. Manookian.  (See **Exhibit 18**).

26.     If the alleged agreement with Genesis Diamonds and the other twenty or more jewelers (the "**Jeweler Agreements**") is similar to the agreement proposed by Mr. Manookian to The Diamond Doctor, they are all generating many thousands of dollars per month in income, and if the jeweler terminates the agreement, it must pay Cummings Manookian the fees owed for the remainder of the term in one lump sum payment.

27.     Cummings Manookian's right to payments under these agreements are likewise choses in action under Tennessee law, and therefore part of the Cummings Manookian Choses in Action.

---

[1] The complaint also specifically identifies Solomon Brothers in Atlanta Georgia as having entered into an agreement to pay Cummings Manookian $20,000 per month for a period of five years, totaling $1.2 million. (See **Exhibit 13**, p. 10).

### D.    Mr. Hammervold and Hammervold PLC

28.    Mr. Hammervold is a resident of the state of Illinois. He maintains a residence in Chicago.

29.    Hammervold PLC is listed with the Tennessee Secretary of State as a single member Tennessee limited liability company, with a principal place of business in Tennessee. (See **Exhibit 19**). However, in addition to the fact that Mr. Hammervold does not reside in Tennessee, there is every reason to think that this is a "phantom" address, based on the following facts:

     a.    The principal address given for Hammervold PLC is in fact a "virtual office" space known as "Intelligent Office" located in downtown Nashville, at Suite 1550 of the UBS Tower, 315 Deaderick Street. (See **Exhibit 20**).

     b.    Some customers lease space at this facility by leasing permanent offices, and others have the option of leasing generic spaces available to all tenants in hourly or daily increments. (See **Exhibit 21**).

     c.    Moreover, in the most recent annual report filed with the Secretary of State, Mr. Hammervold changed to the mailing address for Hammervold PLC to 1758 N. Artesian Ave, Chicago, Illinois, Mr. Hammervold's permanent residential address since at least 2012. (See **Exhibit 22**).

30.    Notwithstanding the absence of a genuine physical presence in Tennessee through which to operate its assets, Mr. Hammervold, acting by and through Hammervold PLC, is counsel or co-counsel of record in a number of cases pending in Tennessee. Attached as **Exhibit 23** is a chart showing such cases as are known to Plaintiffs at the time

of filing this lawsuit based on available online court records, in which Mr. Hammervold, acting by and on behalf of Hammervold PLC, is counsel of record (the "**Hammervold Pending Litigation**"). The exhibit also contains copies of the complaints in these lawsuits. As shown on **Exhibit 23**, the amount claimed in those lawsuits exceeds $25 Million. There may very well be other cases in other jurisdictions.

31.     Hammervold PLC is entitled to the entirety of the compensation for the legal services and expenses rendered by its agents (whether those services were provided by Mr. Mr. Hammervold or other agents) in the Hammervold Pending Litigation, either in the form of a fixed fee, hourly billable rate, contingency fee based on percentage of recovery for the client(s), or some other calculation. Such rights to payment, and any other rights to payment from any source, constitute choses in action under Tennessee law, and are herein referred to as the "**Hammervold PLC Choses in Action**".

**E.     Manookian PLLC**

32.     On January 14, 2019, after his indefinite suspension from the practice of law, Mr. Manookian created Manookian, PLLC, a single member entity with the same address as Cummings Manookian. (See **Exhibit 24**). Although the entity was created on January 14, 2019, it had a delayed effective date of February 1, 2019. Mr. Manookian cannot lawfully own or be a member of a PLLC as a result of his suspension from the practice of law, and since he holds no other professional license in Tennessee.   (See **Exhibit 25**)[2].

---

[2] Although Exhibit 25 only references a search under one category of professional licenses, all professional licenses of any type were searched.

Therefore, Mr. Manookian cannot himself legally be a member of Manookian, PLLC. See, e.g., Tenn. Code Ann. §48-249-1101 et. seq. The reason for the creation of Manookian PLLC is therefore unclear. However, the circumstances of this case- the formation of a PLLC by Mr. Manookian bearing his name, on the same date that he filed the new annual report of Cummings Manookian reducing its members from two to one, and the use of the same address as Cummings Manookian- raise a legitimate concern that the entity was created as a vehicle for the deposit of fees owed to Cummings Manookian.

## F.    MR. MANOOKIAN'S HISTORY OF VIOLATING COURT ORDERS

33.    In addition to the multiple violations of court orders that led to the Sanctions Judgment, Mr. Manookian has demonstrated in other litigation a willingness to defy court orders. On August 3, 2017, Mr. Manookian was sanctioned by the United States District Court in the Texas Lawsuit after the Court found that Mr. Manookian had "acted in bad faith and disrupted the litigation process." (**See Exhibit 26**). The Magistrate Judge found that Mr. Manookian had "engaged in a pattern of obfuscation," had failed "to provide credible explanations" about matters before the court, and had engaged in conduct that "essentially amounted to a flouting the Court's Orders." (See *Id.*). The Magistrate's Report and Recommendation was subsequently approved by the District Court Judge. (See **Exhibit 27**).

34.    Mr. Cummings was also counsel of record in *Shao v. HCA Health Services*, No. 16C2469, in which the Davidson County Circuit Court found that Mr. Manookian "has repeatedly ignored the clear directives of this Court and, at best, conducted himself in a

14

reckless manner." A copy of the Order imposing the sanctions and suspending Mr. Manookian practicing in Davidson County is attached as **Exhibit 28**.


## II. ARGUMENT

**A.     This Motion is Appropriate Even in this Early Stage of the Litigation**

Ordinarily, as judgment creditors against the Judgment Debtors as a result of the Sanctions Judgment in the David Chase Action, Plaintiffs would have filed this as a post-judgment motion in that case, as the Court has the inherent power to enter appropriate orders necessary for enforcement of the Court's judgment. *See, e.g. Cantrell v. Tolley*, No. W2010-02019-COA-R3-CV, 2011 Tenn. App. LEXIS 433, at *20 (Ct. App. Aug. 11, 2011). However, in *First American Trust Co. v. Franklin-Murray Development Company, L.P.*, 59 S.W.3d 135 (Tenn. Ct. App. 2001), the Tennessee Court of Appeals held that a trial court lacks jurisdiction to appoint a receiver for the collection of a judgment while a case is on appeal, even where the defendant has not filed a supersedeas bond or otherwise obtained a stay of execution. The *First American* court suggested that in order to have a receiver appointed while the case is on appeal, a judgment creditor should file a new lawsuit. *See Id.*, 59 S.W.3d at 142 n.10. Accordingly, Plaintiffs have no choice but to file a separate lawsuit to seek the relief that, absent an appeal, would be available by post-judgment motion in the Prior Lawsuit.

However, while the relief must, under the circumstances, be initially sought via this separate lawsuit, there is nothing that would prohibit this court from granting the entirety of the relief on motion, just as it could if filed under the caption of the David Chase Action

15

but for the pending appeal. Since no additional monetary damages are sought at this time as to any of the defendants in this lawsuit, no aspect of the relief sought in the complaint requires a trial to determine the rights or remedies available to Plaintiffs. The rights and remedies sought herein are, as set forth below, rights and remedies afforded to Judgment Creditors as a matter of statutory law. Judgment execution efforts otherwise normally effectuated by motion do not lose that character merely by being sought in a separate lawsuit. Likewise, the injunctive relief sought herein is available at any stage of litigation pursuant to Tenn. R. Civ. Proc. 65.

**B.      The Court Should Issue a *Writ of Execution and Distringas/Fieri Facias* and Appoint a Receiver to Collect on the Choses of Action of Cummings Manookian and Hammervold PLC**

In aid of execution, this Court can issue a *Writ of Distringas* pursuant to Tenn. Code Ann. § 26-1-105, which provides that:

> The party, in whose favor a judgment or decree is rendered against a corporation, may sue out a distringas or fieri facias, to be levied as well on the choses in action as on the goods, chattels, lands, and tenements of the corporation, and, in case of a levy on choses in action, the court may appoint a receiver to collect the same.

As the text of Tenn. Code Ann. § 26-1-105 plainly states, the Court is authorized to appoint a receiver to collect the choses in action and other assets of a corporate judgment debtor. Additional authority supporting the court's power to appoint a receiver to collect corporate assets as a form of judgment execution levy is found at Tenn. Code Ann. § 26-3-103, which states:

16

An execution against a corporation may be levied on its choses in action, as well as on the goods and chattels, lands and tenements, of such corporation; and in case of a levy on choses in action, the court may appoint a receiver to collect or conserve the same.

The cases interpreting these statutes are few, and thus there is little guidance from the courts regarding the circumstances supporting the availability of a *writ of distringas* and a receiver under the statutes. On their face, the statutes appear to justify a writ and a receiver whenever there is a corporate judgment debtor with any assets, which is certainly the case here. Though the text of this section only specifically references such a remedy against corporations, that is because other forms of limited liability entities did not exist at the times that statute was enacted, and courts have regularly contemplated its use in recent years as to other types of limited liability vehicles. See, e.g., *First American Trust Co.* v. *Franklin-Murray Development Co., L.P.*, 59 S.W.3d 135, 142, fn.9 (Tenn. Ct. App. 2001)(contemplating receivership for effectuating distringas warrant as to limited partnership) and *D-Med, Inc., et al. v. Mid America Energy, Inc.*, et al, No. 3:07-cv-419 (M.D. Tenn. 2008)(allowing distringas warrant and appointment of receiver as to multiple entities in same action, including LLCs and LLPS).

There are many circumstances in the instant action that justify the issuance of a *Writ of Distringas/Fieri facias* and the appointment of a receiver to collect, keep safe, manage and distribute the Choses in Action of the corporate Sanctions Judgment Debtors. These circumstances include the following:

1.      Judgment execution efforts against each of the Sanctions Judgment Debtors have been returned, which efforts have not satisfied the Sanctions Judgment in full or even in part.

17

2.     The primary assets of Cummings Manookian and Hammervold PLC appear to be their Choses in Action, as set forth above. The receiver requested in this matter, or an alternative receiver with equal qualifications appointed by this court, is necessary to ensure that these assets are properly collected and administered, to wit:

(a)     Although Plaintiffs also request injunctive relief in this motion, Mr. Manookian and Mr. Hammervold have demonstrated a clear willingness to violate court orders. Injunctive relief, therefore, is not sufficient by itself to protect Plaintiffs' interests;

(b)     Based on the nature of the Pending Cummings Manookian Litigation and Hammervold Pending Litigation, and the business model of law firms that tend to practice in these practice areas, it is reasonable to assume that a substantial portion- if not all- of the Pending Litigation is being handled on a contingency fee basis, in which the law firm receives its fee based on a percentage of amounts recovered for clients, and only at the conclusion of the litigation;

(c)     The potential recovery to Cummings Manookian and Hammervold PLC in their Pending Litigation is substantial;

(d)     Regardless of whether Cummings Manookian and Hammervold PLC are being compensated on an hourly basis or a contingency fee basis, absent the appointment of a receiver to control any payments on these Choses in Action, there is a substantial risk that payments arising out of fees earned in the pending lawsuits could be redirected in such a way as to circumvent payment

18

to Plaintiffs of the Sanctions Judgment. This risk is accentuated given the ongoing participation in many of these lawsuits by Mr. Cummings, acting by and through his law firm, Cummings Law as co-counsel, neither of which are Sanctions Judgment Debtors. As the former law partner of Mr. Manookian, and a long term colleague of both Mr. Manookian and Mr. Hammervold as shown by the number of cases in which they have appeared as co-counsel, it is reasonable to believe that there is a serious risk that any monies to be received as legal fees in any of these cases could be redirected among the lawyers by agreement in such a way as to be paid entirely to Mr. Cummings and/or Cummings Law, who could in turn remit to any of the Sanctions Judgment Debtors their portion of the fees, outside the purview of this court;

(e) Likewise, the Jeweler Agreements, to the extent that they exist, are potentially generating hundreds of thousands of dollars of monthly income to Cummings Manookian or Mr. Manookian. It is also necessary that a receiver be appointed to determine the existence of any Jeweler Agreements, to make sure that Cummings Manookian is performing its obligations under the agreements, and to properly collect and account for the fees generated by such agreements, for the benefit of Plaintiffs.

A receiver is therefore necessary to preserve the rights of Cummings Manookian and Hammervold PLC in these Choses in Action, for the benefit of Plaintiffs. However, that receiver must necessarily be an attorney who would otherwise qualify as receiver for

19

an impaired, suspended or disbarred attorney under Tenn. S. Ct. Rule 9, § 29.[3] That is

because, in order to review the documentation necessary to prepare for filing any such

notices of attorneys' liens and take other necessary actions to collect any fees due

Cummings Manookian and Hammervold PLC in all pending litigation, and to protect and

enforce the rights of Cummings Manookian under the Jeweler Agreements and any other

agreements, the receiver would necessarily have to review certain of records containing

privileged attorney-client communications or other confidential information.

35.     Accordingly, Plaintiffs request not only request the issuance of a Writ of

Execution and Distringas/Fieri Facias as to the Cummings Manookian and Hammervold

PLC Choses in Action, and also as to all other goods, chattels, lands and tenements of

Cummings Manookian and Hammervold PLC as are allowed under Tenn. Code Ann. §26-

6-105, but also for the appointment of a receiver to collect on all choses in action, said

receiver to be vested with the usual powers, duties, rights of receivers appointed in similar

cases, including specifically the following:

a.      On-sight viewing (in native format) and making copies of all records of

Cummings Manookian and Hammervold PLC related to any and all cases in

which Cummings Manookian and/or Hammervold PLC have not yet

received all compensation they are owed, including but not limited to the

specifically identified Pending Litigation of both, and the Jeweler

---

[3] Tenn. Sup. Ct. Rule 9, §29 is not directly applicable in this case and is therefore not invoked as the basis for requesting a receiver here, since it provides the guidelines by which a court may appoint a receiver to protect primarily the interests of the *clients* of a lawyer no longer able to practice, whether by reason of disbarment, suspension, impairment or other similar reason. Nonetheless, it provides persuasive guidance in the factors that a court should consider in terms of the appointment of a receiver in this case.

Agreements and any other contract, as the Receiver, in his sole discretion, deems appropriate, from time to time, on demand and without advance notice to agents of Cummings Manookian, Hammervold PLC, or anyone else;

b.  On sight viewing (in native format) and making copies of all contracts and financial records of Cummings Manookian and Hammervold PLC as the receiver, in his sole discretion, deems appropriate, from time to time, on demand and without advance notice to agents of Cummings Manookian, Hammervold PLC or anyone else;

c.  The right to file notices of attorney' liens in any pending lawsuits and to collect payment of any amounts due Cummings Manookian and/or Hammervold PLC, their agents, assignees and assigns, from any pending litigation, and to deposit same in a trust account established by the receiver and held for said purposes related to the scope of the receivership;

d.  The right to contact clients, co-counsel, or opposing counsel of Cummings Manookian and Hammervold PLC to discuss any and all issues related to the matters in which Cummings Manookian were or are engaged including, but not limited to, status of proceedings, status of settlement discussions, fees structure and fees owed;

e.  The right to make demand on any obligee owing money to Cummings Manookian and/or Hammervold PLC for any reason, and to collect said money or property, by judicial action, if necessary, in the name of Cummings Manookian and/or Hammervold PLC.

21

f.    The right to hire such consultants, accountants and other agents as the receiver, in his reasonable discretion, deems necessary to perform his duties; and

g.    The right of the receiver to collect his hourly rate for services from proceeds collected, upon application made to this court after appropriate notice to all interested parties.

Plaintiffs propose as the Receiver Mr. Phillip Young, a Williamson County attorney in good standing, who would qualify as a receiver for an attorney if this matter were presented under Tenn. S. Ct. Rule 9, §29. Mr. Young has agreed to serve in this role and has substantial experience in receiverships generally, and specific experience in the context of representing the bankruptcy equivalent of a receivership for an attorney. Mr. Young's resume is attached hereto as **Exhibit 29**. Mr. Young's hourly rate would be $325 per hour.

## C.    Injunctive Relief is Necessary to Prevent Interference with the Receiver's Duties in Aid of the Execution of this Court's Final Judgment

As already shown, Plaintiffs are entitled to the issuance of a *Writ of Execution and Distringas/Fieri Facias* and the immediate appointment of a receiver. The purpose of the preliminary injunction is to provide the receiver with the means for implementing the purposes of the receivership - execution of this Court's Judgment.

Rule 65.04 the Tennessee Rules of Civil Procedure provide that a temporary injunction is available where "the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the

22

adverse party will tend to render such final judgment ineffectual." In addition to these factors, Tennessee courts generally hold that when determining whether to grant injunctive relief, the trial court should consider such factors as the adequacy of other remedies, the benefit to the plaintiff, the harm to the defendant, and the public interest. *See, e.g. Humphries v. Minbiole*, No. M2011-00008-COA-R3-CV, 2012 Tenn. App. LEXIS 776, at *15 (Ct. App. Nov. 8, 2012). These factors weigh heavily in favor of granting injunctive relief in the instant case.

### 1. <u>Irreparable Harm/Effectiveness of Final Judgment</u>

In this case, Plaintiffs can show that immediate and irreparable harm is likely to occur without the issuance of a preliminary injunction, and/or the acts or omissions of Defendants will tend to render the Sanctions Judgment ineffectual. Plaintiffs are suffering irreparable harm because the assets of Judgment Defendants, including cash and the proceeds of such assets, may be dissipated, concealed, or removed from this Court's jurisdiction. The findings of fact made in the Sanctions Judgment alone demonstrate a legitimate concern about whether Messrs. Manookian and Hammervold will abide by court orders in this case any more than they have abided by prior court orders. As such, it is necessary that this court likewise grant injunctive relief against *all* of the defendants in this case, in order to prevent effectuation of this order by any of the other persons under the control or influence of Messrs. Manookian and Hammervold. Absent injunctive relief against all Defendants in this lawsuit, Plaintiffs' ability to collect the Sanctions Judgment will be substantially impaired, thus rendering the Sanctions Judgment ineffectual.

23

2.    **Adequacy of Other Remedies**

There are no other adequate remedies.  The receiver cannot adequately perform the receiver's duties if the Defendants interfere with the receiver or usurp the receiver's authority by collecting fees and not turning them over to the receiver.

3.  **Harm to Defendants and the Public Interest**

There is no foreseeable harm to Defendants from injunctive relief or appointment of the receiver. A preliminary injunction and receivership merely will maintain the status quo. More importantly, the granting of temporary injunctive relief and appointment of a receiver will protect Plaintiffs' and the public's interests, including those of other creditors, in the assets of the Sanctions Judgment Debtors - the only means of satisfaction of the Judgment awarded Plaintiffs. It is likely that the assets will be irretrievably transferred and substantially greater harm will occur if the Receiver is not appointed or sufficiently fortified with the authority necessary to make safe, collect, manage and dispose of the property of the Sanctions Judgment Debtors than may occur if the injunctive relief or receiver are granted.

Most significantly, injunctive relief and a receiver will substantially benefit the public interest.  The Sanctions Judgment - against two lawyers and their firms – resulted from conduct consisting not only knowing, willful, and intentional violations of this Court's orders, but a prolonged effort to "defraud" this Court. It was primarily the cover-up by the Sanctions Judgment Debtors that caused Plaintiffs to spend more than $700,000 in attorneys' fees. The Court should employ whatever powers are available to make the

consequences of this type of conduct tangible, as a deterrent to future misconduct by lawyers practicing in this – or any – Court.

**D.     The Court Should Grant the Rights Available to Plaintiffs under Tenn. Code Ann. § 26-4-101 *et. seq.***

Tennessee law provides for a remedy designed for situations just like the one presented by this case, in the form of what is known as a "Bill to Subject Property." Specifically, Tenn. Code Ann. § 26-4-101 et. seq. provides:

> The creditor whose execution has been returned unsatisfied, in whole or in part, may proceed in the court granting the judgment, or may file a complaint in a court of general jurisdiction against the defendant in the execution and any other person, to compel the discovery of any property, including stocks, choses in action or money due such defendant, or the defendant's interest in property held in a trust for the defendant, except when the trust is exempt from the claims of the defendant's creditors under §§ 35-15-501 -- 35-15-509 of the Tennessee Uniform Trust Code.

A request for such a Bill to Subject has been made in this Lawsuit. Upon filing of a Creditor's Bill, Tenn. Code Ann. § 26-4-102 provides that

> The court has power to compel the discovery, and to prevent the transfer, payment, or delivery of the property, and to subject the same to the satisfaction of the judgment or decree, whether such property could, if in the defendant's possession or with the title vested in the defendant, be levied upon by execution or not.

Furthermore, pursuant to Tenn. Code Ann. § 26-4-103, "[t]he Court is empowered to order all such bonds and other instruments to be executed by either the complainant or

defendant, and all such transfers to be may be necessary to carry the jurisdiction into complete effect."

Pursuant to this statutory authority, Plaintiffs request, as to each and every Defendant, an order: (1) compelling the defendant to identify and turn over to Plaintiffs (or, as appropriate to any Receiver appointed by this Court) all documents related to any property encompassed within Tenn. Code. Ann. § 26-4-101 in which any of the Sanctions Judgment Debtors have an interest; (2) preventing the transfer, payment or delivery of said property to anyone else; and (3) ordering the immediate transfer of that property to Plaintiffs or, as deemed appropriate, to a receiver appointed by the court.

***THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF FILED IN THIS MATTER***

26

Respectfully submitted,

_(signature)_

Daniel H. Puryear, No. 18190
Puryear Law Group
104 Woodmont Boulevard, Suite 201
Nashville, TN 37205
(615) 630-6601 – Telephone
(615) 630-6602 – Facsimile
dpuryear@puryearlawgroup.com

_(signature)_

Gregory H. Oakley, BPR #16237
104 Woodmont Boulevard, Suite 201
Nashville, Tennessee 37205
(615) 209-9814
goakley@oakley-law.com

Counsel for Plaintiffs

**THIS MOTION IS SET TO BE HEARD ON** _May 21, 2019_
**AT** _9:00_ **O'CLOCK (A̶M̶/PM] ON THE CIRCUIT COURT MOTION
DOCKET HEARD AT THE WILLIAMSON COUNTY COURTHOUSE. IF NOT
WRITTEN RESPONSE TO THIS MOTION IS FILED AND SERVED IN THE
TIME SET BY THE LOCAL RULES OF PRACTICE, THIS MOTION MAY BE
GRANTED WITHOUT A HEARING.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document is being served on the following via hand delivery, along with the summons and complaint in this action:

Cummings Manookian PLC
c/o Cummings Manookian PLC
45 Music Square West
Nashville, TN 37203

Manookian PLLC
c/o Manookian PLLC
45 Music Square West
Nashville, TN 37203

Hammervold PLC
c/o Incorp Services, Inc., Registered Agent
216 Centerview Dr Ste 317
Brentwood TN 37027

Brian Philip Manookian
2016 Sunset Hills Terrace
Nashville TN 37215

Mark Hammervold
1758 N Artesian Ave
Chicago IL 60647

Cummings Law, LLC
c/o Brian Cummings, Registered Agent
1901 Wildwood Avenue
Nashville TN 37212

Brian Cummings
4235 Hillsboro Pike Ste 300
Nashville TN 37215

Afsoon Hagh
2016 Sunset Hills Terrace
Nashville TN 37215

Dated: April 25, 2019

Greg Oakley