# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | * |
| | *    CASE NO.: 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, | * |
| | *    CHAPTER 7 |
| Debtor. | * |

## OBJECTION OF GRANT, KONVALINKA & HARRISON, P.C. TO TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT

Comes Grant, Konvalinka & Harrison, P.C. ("GKH") and objects to the Trustee's Motion to Approve Compromise and Settlement (Doc. 108) in which the Trustee proposes to settle Claim No. 5 filed by Dean Chase, Sandra Chase and B. F. Chase, Inc. ("the Chase Parties") by allowing the Chase claim as a general unsecured claim in the amount of $250,000.00. The date to file responses or objections to the Trustee's Motion is July 27, 2021 and the date of the scheduled hearing is August 11, 2021.

## BACKGROUND

1. Cummings Manookian, PLLC ("Debtor") filed a Chapter 7 petition in this Court on November 6, 2019 and Jeanne Ann Burton was appointed as the Chapter 7 Trustee.

2. On March 30, 2020, the Chase Parties filed a secured claim in the amount of $806,927.04 based on a sanctions judgment against the Debtor, Brian Manookian, Mark Hammervold and Hammervold Law, PLC, jointly and severally.

3. Upon appeal of the sanctions judgment, the Tennessee Court of Appeals for the Middle Section of Tennessee vacated the sanctions judgment and remanded the matter for rehearing, primarily based on the determination that the trial court judge should have recused himself due to the appearance of bias.

1

4. The Chase Parties have appealed the Tennessee Court of Appeals' decision to the Tennessee Supreme Court which has not yet determined whether to accept certiorari.

5. The Trustee asserts that it is her opinion that approval of a settlement agreement with the Chase Parties to allow the Chase claim as an unsecured claim in the amount of $250,000.00 is in the best interest of the estate and should be accepted.

LAW AND ARGUMENT

Under the settlement proposed by the Trustee, the Chase claim will be allowed as an unsecured claim in the amount of $250,000 and the Trustee will waive any other cause of action the estate might have against the Chase parties in exchange for the Chase parties' agreement to dismiss the Debtor from the state court action and to release any other claims the Chase parties might have against the estate or the Trustee.

The Trustee asserts that approval of the settlement agreement with the Chase Parties is in the best interest of creditors based on several reasons. First, the Trustee asserts that a question exists as to whether the vacation of the sanctions order applies to the Debtor since the Debtor did not appeal the sanctions order and the appeal was specifically stayed as to the Debtor. Per the Trustee, it is arguable that the sanctions judgment might still be applicable to the Debtor since the Debtor did not appeal the decision. However, it is clear from the appellate records that the Court of Appeals considered Cummings Manookian to have been before the appellate court as the Court granted its Motion for Extension of Time to file its brief and recited in the Order remanding the case that Debtor filed a voluntary bankruptcy petition after briefing in the appeal. *Chase v. Stewart*, No. M2018-01991-COA-R3-CV, 2021 Tenn. App. LEXIS 42, at **2, *fn.* 1 (Tenn. Ct. App. Feb. 4, 2021); see copy of Order entered by the Tennessee Court of Appeals on June 21, 2019, attached hereto as Exhibit 1.

2

Secondly, the proposed settlement reduces the potential exposure of this estate by approximately $500,000.00 as it reduces their claim from potentially $748,769.20 to $250,000.00.

The third basis for the Trustee's opinion that the proposed settlement is in the best interest of the estate is that the expensive and time-consuming litigation that would be required if the estate had to engage in new litigation in the state court is not in the best interest of this estate or creditors, as the Trustee would require separate representation in the matter and additional fees and expenses would be incurred, possibly in an amount in excess of $150,000.00.

Finally, the Trustee asserts that it is in the best interest of the creditors and judicial economy to establish an amount for the Chase Parties' claims so that the Trustee can proceed with the pending adversary case against Hagh Law, PLLC, Afsoon Hagh and Manookian, PLLC and determine what claims in the estate are valid.

The Trustee has filed its Motion to Approve Compromise and Settlement pursuant to Bankr. R. Civ. 9019 which provides that the Court "may approve a compromise or settlement." The standards which a court must consider evaluating a settlement include:

(1) the probability of success in the litigation;

(2) the likely difficulties in collection;

(3) the complexity of the litigation;

(4) the expense, inconvenience and delay necessarily attending it; and

(5) the paramount interest of the creditors.

*In re Martin*, 91 F.3d 389, 36 (3rd Cir. 1996); *In re Healthco Int'l, Inc.*, 136 F.3d 45 (1st Cir. 1998); *In re A & C Properties,* 784 F.2d 1377 (9th Cir. 1986).

Stated more generally, the standard for approving a settlement, whether it is in the best interest of the estate, entails an examination of the settlement's terms with the litigation's probable

cause and benefit. *In re Bond*, 16 F.3d 408 (4th Cir. 1994). Thus, the Court must determine the likelihood that the sanctions judgment will be reinstated against the Debtor as the principal of Mr. Manookian, the cost to the estate of further litigation to determine the Debtor's liability for Mr. Manookian's actions and the potential benefits the estate is waiving in giving up any potential claims the estate might have against the Chase parties. GKH asserts that it is unlikely that the trial court or any appellate court will assess liability against the Debtor for Mr. Manookian's violations of a court order as such actions should not be considered actions of any attorney acting within the scope of his employment, even if the trial court were to determine that Mr. Manookian should be sanctioned individually. Furthermore, the Motion is devoid of any explanation as to what potential claims against the Debtor the Trustee is waiving.

As reflected in the February 4, 2021, Tennessee Court of Appeals decision, the Chase parties sought findings of contempt and an award of damages - and alternatively, an award of sanctions by the State Court pursuant to Tenn. R. Civ. P. 37.02 - based on the alleged misdeeds of attorney Manookian and attorney Hammervold which the Chase parties contended were in violation of certain orders entered by the State Court. See *Chase*, 2021 Tenn. App. LEXIS 42, at **2-9. According to the vacated State Court July 20, 2021, order/judgment, the alleged grounds/basis for the State Court's determination that sanctions awarded should also purportedly be assessed against Cummings Manookian PLC is the State Court's finding that: "… Cummings Manookian, PLC is also in civil contempt based upon the knowing, willful, and intentional violations of Mr. Manookian acting as its agent for the law firm." [See the State Court's July 20, 2018 Memorandum and Order, p. 95].

**A. Tennessee state law standards for holding a party in contempt for violating a court order**.

In *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346 (Tenn. 2008), the Tennessee Supreme Court reiterated certain mandatory standards/restrictions applicable for a finding of contempt:

> … At common law, the contempt power was broad and undefined. *See Nye v. United States,* 313 U.S. 33, 43–47, 61 S.Ct. 810, 85 L.Ed. 1172 (1941). Concerned about the potential abuse of this power, the Tennessee General Assembly, like its counterparts in other states, enacted statutes to define and limit the courts' power to punish for contempt. *Black v. Blount,* 938 S.W.2d at 397. As a result, the courts' contempt power is now purely statutory. *Scott v. State,* 109 Tenn. 390, 394–95, 71 S.W. 824, 825 (1902); *State v. Galloway,* 45 Tenn. at 328–31; *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d 602, 611 (Tenn. Ct. App. 2006); *Derryberry v. Derryberry,* 8 Tenn. Civ. App. (Higgins) 401, 402 (1918).
>
> Tenn. Code Ann. § 16–1–103 (1994) currently provides that "[f]or the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code."[10] To give effect to this power, Tenn. Code Ann. §§ 29–9–101 to –108 (2000) further define the scope of the contempt power and the punishment and remedies for contemptuous acts.[11] Of particular relevance to this case, Tenn. Code Ann. § 29–9–102(3) specifically empowers the courts to use their contempt powers in circumstances involving "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." This provision enables the courts to maintain the integrity of their orders. *Wilson v. Wilson,* 984 S.W.2d 898, 904 (Tenn. 1998); *Thigpen v. Thigpen,* 874 S.W.2d 51, 53 (Tenn. Ct. App.1993); *State v. Sammons,* 656 S.W.2d 862, 869 (Tenn. Crim. App.1982).

\* \* \*

### III.

Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful."[12] Second, the order alleged to have been violated must be clear, specific, and unambiguous.[13] Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order.[14] Fourth, the person's violation of the order must be "willful."[15]

The threshold issue in any contempt proceeding is whether the order alleged to have been violated is "lawful." A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties. *Vanvabry v. Staton,*[16] 88 Tenn. 334, 351–52, 12 S.W. 786, 791 (1890);[17] *Churchwell v. Callens,* 36 Tenn. App. 119, 131, 252 S.W.2d 131, 136–37 (1952). An order is not rendered void or unlawful simply because it is erroneous or subject to reversal on appeal. *Vanvabry v. Staton,* 88 Tenn. at 351, 12 S.W. at 791; *Churchwell v. Callens,* 36 Tenn. App. at 131, 252 S.W.2d at 137. Erroneous orders must be followed until they are reversed. *Blair v. Nelson,* 67 Tenn. (8 Baxt.) 1, 5 (1874). … Naturally, the determination of whether a particular order is lawful is a question of law.

The second issue involves the clarity of the order alleged to have been violated. A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden. *Sanders v. Air Line Pilots Ass'n Int'l,* 473 F.2d 244, 247 (2d Cir.1972); *Hall v. Nelson,* 282 Ga. 441, 651 S.E.2d 72, 75 (2007); *Marquis v. Marquis,* 175 Md. App. 734, 931 A.2d 1164, 1171 (2007); *Cunningham v. Eighth Judicial Dist. Ct. of Nev.,* 102 Nev. 551, 729 P.2d 1328, 1333–34 (1986); *Petrosinelli v. People for the Ethical Treatment of Animals, Inc.,* 273 Va. 700, 643 S.E.2d 151, 154–55 (2007). The order must, therefore, be clear, specific, and unambiguous. *See Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 471; *Long v. McAllister–Long,* 221 S.W.3d at 14.[18]

Vague or ambiguous orders that are susceptible to more than one reasonable interpretation cannot support a finding of civil contempt. *City of Gary v. Major,* 822 N.E.2d 165, 170 (Ind.2005); *Judge Rotenberg Educ. Ctr., Inc. v. Comm'r of Dep't of Mental Retardation,* 424 Mass. 430, 677 N.E.2d 127, 137 (1997); *Ex parte Slavin,* 412 S.W.2d at 45. Orders need not be "full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague." *Ex parte Blasingame,* 748 S.W.2d 444, 446 (Tex.1988)(quoting *Ex parte McManus,* 589 S.W.2d 790, 793 (Tex. Civ. App. - Dallas 1979)). They must, however, leave no reasonable basis for doubt regarding their meaning. *Int'l Longshoremen's Ass'n, Local No. 1291 v. Phila. Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967); *Salt Lake City v. Dorman–Ligh,* 912 P.2d 452, 455 (Utah Ct. App. 1996).

Orders alleged to have been violated should be construed using an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed. *United States v. Bernardine,* 237 F.3d 1279, 1282 (11th Cir. 2001); *United States v. Young,* 107 F.3d 903, 907–08 (D.C. Cir. 1997). Ambiguities in an order alleged to have been violated should be interpreted in favor of the person facing the contempt charge. *Liberte Capital Group, LLC v. Capwill,* 462 F.3d 543, 551 (6th Cir. 2006); *Levin v. Tiber Holding Corp.,* 277 F.3d 243, 251 (2d Cir. 2002); *Town of Virgil v. Ford,* 184 A.D.2d 901, 585 N.Y.S.2d 559, 560 (1992); *Greene v. Finn,* 153 P.3d at 951. Determining whether an order is

sufficiently free from ambiguity to be enforced in a contempt proceeding is a legal inquiry that is subject to de novo review. *Davies v. Grossmont Union High Sch. Dist.,* 930 F.2d 1390, 1394 (9th Cir. 1991); *In re Leah S.,* 284 Conn. 685, 935 A.2d 1021, 1027 (2007); *City of Wisconsin Dells v. Dells Fireworks, Inc.,* 197 Wis.2d 1, 539 N.W.2d 916, 924 (1995).[19]

The third issue focuses on whether the party facing the civil contempt charge actually violated the order. This issue is a factual one to be decided by the court without a jury. *See Pass v. State,* 181 Tenn. 613, 620, 184 S.W.2d 1, 4 (1944); *Sherrod v. Wix,* 849 S.W.2d 780, 786 (Tenn. Ct. App. 1992). The quantum of proof needed to find that a person has actually violated a court order is a preponderance of the evidence. *Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 474. Thus, decisions regarding whether a person actually violated a court order should be reviewed in accordance with the standards in Tenn. R. App. P. 13(d).

The fourth issue focuses on the willfulness of the person alleged to have violated the order. …

In the context of a civil contempt proceeding under Tenn. Code Ann. § 29–2–102(3), acting willfully does not require the same standard of culpability that is required in the criminal context. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d at 612. Rather, willful conduct

> consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

*State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d at 612 (citations omitted). … Determining whether the violation of a court order was willful is a factual issue that is uniquely within the province of the finder-of-fact who will be able to view the witnesses and assess their credibility. Thus, findings regarding "willfulness" should be reviewed in accordance with the Tenn. R. App. P. 13(d) standards.[21]

After determining that a person has willfully violated a lawful and sufficiently clear and precise order, the court may, in its discretion, decide to hold the person in civil contempt. *See Robinson v. Air Draulics Eng'g Co.,* 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964). …

… Discretionary decisions must take the applicable law and relevant facts into account. *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn.1996). Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs

reasoning that causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ.,* 134 S.W.3d 121, 131 (Tenn.2004); *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn.2003).

*Konvalinka*, 249 S.W.3d at 354-358. (Footnotes omitted; emphasis added).

**B.     Under what circumstances can a law firm – when the firm is not a party to the action - be held in contempt for violating a court order and/or be assessed sanctions based on the conduct of one of the law firm's attorneys?**

In *Phuc Quang Le v. Humphrey*, 703 F. App'x 830, 835-36 (11th Cir. 2017), the Court stated:

> In an appropriate case, of course, a law firm can be sanctioned. *See, e.g., In re Mroz*, 65 F.3d 1567, 1575-76 (11th Cir. 1995) (inherent powers); *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (28 U.S.C. § 1927). And Rule 11 requires a district court to bind a law firm "[a]bsent exceptional circumstances." Fed R. Civ. P. 11(c)(1). But here the district court never returned to the issue of Merritt Watson's liability following the September 2012 hearing, and Mr. Le did not ask the court for clarification. Under the circumstances, Merritt Watson reasonably believed that it was off the hook.

However, the issue of whether a law firm should be subject to sanctions/contempt, because of misconduct of one of its attorneys, pursuant to 18 U.S.C § 1927 and/or under the authority of a federal court's "inherent powers" to police "bad faith" conduct in proceedings before it was assessed differently in *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp.)*, Nos. 02-02250, 04-10459, 2010 Bankr. LEXIS 2689 (Bankr. D.D.C. Aug. 9, 2010). In *Alberts*, one of the defendants in a bankruptcy court adversary proceeding (Epstein Becker & Green P.C) moved for an award of attorneys' fees and expenses against the attorneys **and law firm** that represented the plaintiff (Sam J. Alberts, Trustee for the DCHC Liquidating Trust) pursuant to § 1927 and/or the court's inherent powers. *Alberts* 2010 Bankr. LEXIS 2689, at *2. In granting Epstein Becker's motion in part and imposing sanctions against Sam J. Alberts as counsel for the plaintiff with respect to litigation

8

pursued after the court granted Epstein Becker's motion for summary judgment, the *Alberts* Court stated, in relevant part:

> Based upon the evidence submitted to the court and the representations made by counsel, there was no good faith basis for Alberts to assert that a settlement agreement existed, and thus no valid ground upon which to move to have summary judgment vacated and discovery reopened. Alberts' motion was frivolous, unreasonable, and in bad faith, having been based upon facts he knew to be false. His conduct was based on an obstinate refusal to acknowledge that the entry of the summary judgment order had brought the claims against Epstein Becker to an end with a finality that Epstein Becker had repeatedly made clear it desired.

\* \* \*

IV.
Sanctions under § 1927 are only appropriate against Alberts. Under 28 U.S.C. § 1927, the court has the authority to sanction "any attorney or other person admitted to conduct cases in any court of the United States or any Territory" that committed the offending conduct. *Claiborne v. Wisdom*, 414 F.3d 715, 722-24 (7th Cir. 2005), holds that sanctions under § 1927 may not be imposed against a law firm, and I adopt the reasoning of that decision on that point. Although the Court of Appeals for this circuit upheld an award of sanctions against a law firm under § 1927 in *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 905, 330 U.S. App. D.C. 386 (D.C. Cir. 1998), the law firm failed to raise the issue of whether a law firm, and not only those attorneys of the law firm who conducted the litigation, could be sanctioned under § 1927, and the decision in *LaPrade* thus did not decide the issue. Limiting the award of § 1927 sanctions to one against only Alberts, however, does not address his law firm's vicarious liability for the award if Alberts fails to pay the award. *Claiborne v. Wisdom*, 414 F.3d at 724.

V.
Under its inherent authority, the court may sanction a party's law firm. *In re Mroz*, 65 F.3d at 1574; *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1228 (3d Cir. 1995) (upholding sanctions—beyond Rule 9011 sanctions imposed against one attorney, who had signed the offending paper—against law firm pursuant to the court's inherent power because the **trial court concluded that other attorneys at the law firm were primarily responsible for the sanctionable conduct)**. *See Wallace*, 964 F.2d at 1218. Here, the sanctionable conduct was committed in the filing of the motion to vacate the order and reopen discovery. (*See* DE No. 313, p. 6.) Alberts signed and litigated that motion, and sanctions against him under the court's inherent authority are appropriate as to him. **There is no evidence that anyone else in his law firm bore any responsibility for that course of conduct**. In the exercise of my discretion, I do not believe it appropriate to impose sanctions for bad faith litigation against the White & Case law firm as a whole. *See Wolters Kluwer Fin. Servs., Inc. v.*

*Scivantage*, 564 F.3d 110 (2d Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 625, 175 L. Ed. 2d 501 (Nov. 16, 2009). In *Scivantage*, an attorney, Peters, engaged in bad faith conduct, and the district court imposed sanctions against her law firm. The court of appeals declined to uphold such sanctions against the law firm, finding that the district court imputed Peters's bad faith to the law firm because the law firm failed to prevent what she did. The court of appeals explained:

> we have held that "[b]ad faith is personal" and "may not automatically be visited" on others. *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir.1977). Accordingly, absent other specific evidence of [the law firm's] bad faith, a sanction under the court's inherent power is unjustified.

In this court, the local rules provide for an attorney to enter his or her appearance on behalf of a client, although the attorney's law firm is also understood to be representing the client. To impose sanctions against the law firm personally appears unwarranted when the law firm, as an institution, has not engaged in any conduct leading to the bad faith conduct. *See Claiborne*, 414 F.3d at 724 (contemplating sanctions on a law firm where previous litigation and events had put the law firm on notice that the attorney's litigation practices were questionable and warranted monitoring). Nevertheless, this does not address the issue of whether White & Case LLP can be held vicariously liable for the sanctions award if Alberts does not satisfy the award.

Because Alberts, in his capacity as counsel, signed and litigated the motion to vacate the summary judgment order, the sanctions, the amount of which will be determined at a later hearing, are imposed upon Alberts in his capacity as counsel for the plaintiff. This will require him "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See* 28 U.S.C. § 1927.

*Alberts*, 2010 Bankr. LEXIS 2689, at *66, 69-73.

The above-stated principles as to whether misconduct of an attorney can be attributed and/or should be automatically attributed to such attorney's law firm are consistent with the holdings in *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009), *cert. denied*, 558 U.S. 1037, 130 S. Ct. 625, 175 L. Ed. 2d 501 (Nov. 16, 2009) which the *Alberts* Court relies upon – in part – as precedential authority for its holdings. In asserting such principles, the *Wolters Kluwer Fin. Servs., Inc.* Court stated:

The district court imposed two non-monetary sanctions on Dorsey & Whitney as a firm: one for voluntarily dismissing the Wolters Kluwer suit in the Southern District, and one for using the deposition transcripts [which had been designated by the opposing party as for "Attorney Eyes Only" pursuant to a Protective Order in the New York action] in the Massachusetts action. Both sanctions must be overturned.

\* \* \*

In seeking reversal of the sanction, Dorsey advances two arguments: (1) the district court's finding that Dorsey lawyers acted with an improper purpose was not accompanied by a finding that the firm itself acted in bad faith; and (2) … .

With regard to bad faith, the only passage in the district court's opinion touching on culpability of the firm itself is in a footnote to its conclusion, in which the court wrote that the firm's culpability "stems not only from Ms. Peters, but also from the firm's inability ? to adequately supervise its attorneys, as well as its decision to leave Ms. Peters in charge of the litigation while she was on vacation." This passage reflects that the district court imputed Peters's bad faith to Dorsey because Dorsey failed to prevent what she did. But we have held that "[b]ad faith is personal" and "may not automatically be visited" on others. *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir. 1977). **Accordingly, absent other specific evidence of Dorsey's bad faith, a sanction under the court's inherent power is unjustified.**

*Wolters Kluwer Fin. Servs.*, 564 F.3d at 114.[1]

---

[1] The New York federal district court decision at issue in *Wolters Kluwer Fin. Servs., Inc.* also addressed these same principles regarding the imposition of sanctions against law firms because of the misconduct of its individual attorneys. For example, the district court stated:

> … a finding of bad faith is a prerequisite to sanctions under 28 U.S.C. § 1927. *Oliveri v. Thompson*, 803 F.2d 1265, 1273. It should also be noted that sanctions imposed under 28 U.S.C. § 1927 may only be imposed on counsel, not the client. See *Oliveri v. Thompson*, 803 F.2d at 1273. In addition, "[b]ecause the statute is penal in nature…and is to be strictly construed, no vicarious liability should be imposed on third parties, such as uninvolved partners of violators or law firms. To extend liability beyond violators would not conform with the punitive nature of the statute." Joseph, SANCTIONS TREATISE at 380.

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 525 F. Supp.2nd 448, 538 (S.D.N.Y. 2007); see also *CPR Assoc., Inc. v. Se. Pa. Chapter of Am. Heart Ass'n*, CIVIL ACTION No. 90-3758, 1992 U.S. Dist. LEXIS 13703, at \*30-31 (E.D. Pa. Sep. 3, 1992) (citing G. Joseph, *Sanctions: The Federal Law of Litigation Abuse* at 320 (1989), "Because the statute is penal in nature, however, and is to be strictly construed, no vicarious liability should be imposed on third parties, such as uninvolved partners of violators or law firms. To extend liability beyond violators would not conform with the punitive nature of the statute or the requirement that it be strictly construed.").

With respect to the imposition of sanctions against law firms because of the misconduct by one of the firm's attorneys by a court through its inherent powers, the district court stated, "…a finding of bad faith is personal to the offender and thus cannot be attributed to another, such as an offending attorney's client or law firm, through such legal doctrines as vicarious liability. Joseph, SANCTIONS TREATISE at 446." *Id.*

Although not in the context of whether a "law firm", together with one of its attorneys, can also be found in contempt and/or subject to sanctions based upon such attorney's misdeeds, the following case addressed whether certain types of misdeeds by an attorney should be imputed pursuant to vicarious liability principles. In *Barrett v. Jones, Funderburg, Sessums, Peterson & Lee, LLC*, 27 So. 3d 363 (Miss. 2009), the Mississippi Supreme Court addressed the propriety of a trial court's imposition of sanctions against all then existing members of the Scruggs Katrina Group (SKG), a joint venture, along with attorney Don Barrett and attorney Richard Scruggs individually, based upon the misconduct of Richard F. Scruggs, who pleaded guilty to conspiracy to bribe the trial judge in the underlying fee dispute lawsuit over attorneys' fees filed by a former co-venturer, the law firm of Jones, Funderburg, Sessums, Peterson & Lee, LLC (the Jones Firm). *Id*. at 364. On appeal of such sanctions, the Barrett Firm; Don Barrett, individually; and the Lovelace Firm contended, *inter alia*, that: the imputation of Richard Scruggs's bad-faith misconduct to the appellants exceeded the circuit court's inherent power to sanction**; and the court erred by sanctioning the appellants because Richard Scruggs had acted outside the ordinary course of business of the joint venture**. *Id*. at 364-365. As to those contentions, the Mississippi Supreme Court determined that the trial court had the discretionary authority to impose sanctions against SKG based upon the acts of a single partner that occurred in the ordinary course of business of SKG; however, the Court concluded that the trial court erred by finding that Richard Scruggs's misconduct occurred in the ordinary course of SKG's business and reversed the order of sanctions against the appellants/defendants. *Id.*

GKH asserts that the Trustee has failed to establish that the proposed settlement with the Chase parties is in the best interest of the bankruptcy estate and the Trustee's Motion to Approve Compromise and Settlement should not be approved. Neither the legitimate creditors of the Debtor,

12

Case 3:19-bk-07235    Doc 111    Filed 07/27/21    Entered 07/27/21 15:10:42    Desc Main
Document      Page 12 of 14

including GKH, nor this Court can determine the extent of the benefit the estate will receive by waiving potential defenses the estate might have against the Chase parties' claims.

Furthermore, for the Chase parties to have a claim against the estate, and currently they have no claim, specific evidence of the Debtor's bad faith must be shown, rather than simply imputing Mr. Manookian's bad faith to his law firm. *Wolters Kluwer Fin. Servs.*, 564 F.3d at 114. A finding of bad faith is personal to the offender and cannot be attributed to another, such as an offending attorney's client or law firm, through such legal doctrines as vicarious liability. G. Joseph, *Sanctions: The Federal Law of Litigation Abuse at 446*. Mr. Manookian's misconduct in violating a lawful court order, even if true, is not an act taken within the scope of his authority as a licensed attorney and cannot be used to bind his employer, the Debtor.

GKH submits that it is likely that no sanctions will be awarded against the Debtor and the Chase parties will have no claim in the bankruptcy estate. As the Trustee has estimated that litigation expenses might "possibly" exceed $150,000,[2] it is not in the best interest of the estate to allow the Chase claim in an amount exceeding that expense.

For the foregoing reasons, GKH submits that the Trustee's Motion to Approve Compromise and Settlement should be denied.

---

[2] GKH is willing to consider defending the Trustee in any claim by the Chase parties with a limitation as to the maximum amount that the Trustee would have to pay.

Respectfully submitted,

GRANT KONVALINKA & HARRISON, P.C.

By:    s/John P. Konvalinka
      John P. Konvalinka (BPR #001780)
      Harry R. Cash (BPR #009385)
      633 Chestnut Street, Suite 900
      Chattanooga, TN 37450-0900
      jkonvalinka@gkhpc.com
      hcash@gkhpc.com
      (423) 756-8400
      (423) 756-6518 (*facsimile*)

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2021, a true and exact copy of the foregoing Objection to Trustee's Motion to Approve Compromise and Settlement was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the Notice of Electronic Filing. In addition, a copy was sent by regular U.S. mail with sufficient postage thereon to deliver same to the following:

Jeanne Ann Burton, Trustee
Jeanne Ann Burton, PLLC
4117 Hillsboro Pike, Suite 103-106
Nashville, TN 37215

United States Trustee
701 Broadway
Customs House, Suite 318
Nashville, TN 37203

Phillip G. Young, Jr.
Thompson Burton PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, TN 37067

                                    /s/ John P. Konvalinka