# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, | ) Chapter 7 |
| | ) Judge Walker |
| Debtor. | ) |
| | ) |

## BRIAN MANOOKIAN'S OBJECTION TO
## PROPOSED CHASE CLAIM AND SETTLEMENT

Brian Manookian is an attorney and the sole member and owner of Cummings Manookian, PLLC. For the reasons articulated below, Mr. Manookian objects to the Chase Parties' proposed claim and settlement with the Bankruptcy Estate. The date to file responses or objections to the Trustee's Motion is July 27, 2021 and the date of the scheduled hearing is August 11, 2021.[1]

## I.    INTRODUCTION

The Chase Claim rests on a judgment in a state court contempt proceeding that has since been vacated by the Tennessee Court of Appeals.[2] After having their Petition for Rehearing denied, the Chase Parties offered to resolve their claims with Cummings Manookian in exchange for a $0 walk-away and mutual release.[3] Inexplicably, the Trustee now proposes to ***negotiate up*** that offer to $250,000.

---

[1] The parties have agreed to postpone the hearing date due to a scheduling conflict and will file a proposed agreed order for the Court's consideration after all objectors are identified and consulted.
[2] *Chase v. Stewart, et al.*, No. M2018-01191-COA-R3-CV (Tenn. Ct. App. 2021), attached as **Exhibit 1.**
[3] Correspondence from Charlie Malone, March 18, 2021, attached as **Exhibit 2**.

1

Because the Chase Claim arises entirely out of a vacated and facially frivolous contempt proceeding; because the established and negotiated value of the Chase Claim is zero dollars; and because the negotiations between the Chase Parties and Special Counsel to the Trustee are rife with actual conflict and the appearance of a *quid pro quo*, Mr. Manookian requests that the proposed settlement be rejected.

## II. FACTS

### A. The Underlying *Chase v. Stewart* Matter

In 2015, Brian Manookian agreed to represent six defendants, *pro bono*, in a Williamson County Circuit Court case styled *Chase v. Stewart* ("the Chase Matter"). The Chase Matter was a malicious prosecution suit brought by real estate developer David Chase. Mr. Chase had been arrested during the early morning hours of June 8, 2014 for domestic violence after beating his girlfriend. Upon being booked into the Davidson County jail, Mr. Chase contacted attorney Bryan Lewis, who in turn called General Sessions Judge Casey Moreland, who arranged for Mr. Chase to be released from jail – notwithstanding a mandatory hold period – at which time Mr. Chase returned to his home and assaulted his girlfriend a second time, leading to his immediate re-arrest, national headlines, and, ultimately the Chase Matter.

David Chase filed *Chase v. Stewart* contending that various individuals conspired to have him arrested for domestic violence for the purpose of ruining his reputation and depriving him of his burgeoning career in real estate development. Brian Manookian, a partner with the firm Cummings Manookian PLLC, agreed to represent six (6) of the eight (8) defendants in Mr. Chase's lawsuit, and moreover, to do so on a *pro bono* basis.

As part of his representation, Mr. Manookian set out to prove that the dismissal of the criminal charges against Mr. Chase were not on the merits, but rather secured as part of a release-dismissal agreement with the Davidson County District Attorney. Doing so would defeat a central element of a malicious prosecution claim, in that the underlying charge must be dismissed on the merits as opposed to resulting from a negotiated settlement.

Toward that end, Mr. Manookian subpoenaed targeted materials from David Chase's employers, business entities, and parents (hereinafter "the Chase Parties"). On August 31, 2015, the Chase Parties responded by filing a Motion for the Entry of an Agreed Limited Protective Order (hereinafter the "ALPO") covering a narrow, specifically defined set of materials that could potentially be viewed as confidential.

The Trial Court never entered the ALPO as submitted by the Chase Parties, and the Chase Parties themselves immediately disregarded its terms. As such, and in the absence of any Order to the contrary, Brian Manookian disseminated certain of the Chase Parties' discovery materials to Media Outlets, the U.S. Attorney's Office, and the Federal Bureau of Investigation.

The Chase Parties responded by petitioning the Trial Court to hold Brian Manookian and Cummings Manookian in contempt of court for purported "violations" of a protective order that did not exist at the time of Mr. Manookian's dissemination.

Deep into the pendency of the years-long contempt proceedings, the Trial Court Judge, Michael Binkley, revealed that he held a pervasive personal animus against Brian Manookian over its belief that Mr. Manookian had filed a complaint with the Board of Judicial Conduct that led to widespread media reporting of the Trial Court Judge's arrest for solicitation of prostitution.

Brian Manookian and Cummings Manookian quickly moved for the Trial Court's recusal. The Trial Court not only refused to do so but began swiftly entering orders finding Manookian in contempt of court and awarding $748,769.21 in civil contempt damages against him and his law firm.

Brian Manookian and Cummings Manookian promptly appealed the Trial Court's Orders; arguing that the Trial Court was required to recuse itself from the matter; that the Trial Court's findings were not based in fact or law, but rather on an extreme, impermissible personal biases; and that, in any event, Brian Manookian and Cummings Manookian could not be held in contempt for violating an Order that did not exist.

**B.     Appointment of Phillip Young as a Receiver in the State Action**

While the Chase Appeal was pending, the Chase Parties filed a collections action asking the Williamson County Chancery Court to create a receivership over Cummings Manookian's accounts receivable and to specifically appoint Attorney Phillip Young as the Receiver to collect the $748,769,21 awarded by Judge Michael Binkley. The State Court did so, and Philip Young immediately began placing liens on Cummings Manookian's receivables and levying them as they came due.

Mr. Young collected tens of thousands of dollars owed to Cummings Manookian, ultimately paying all of that money to himself, and, in the meantime, instituting new adverse proceedings against Cummings Manookian, including seeking monetary awards against Cummings Manookian and asking the Court to hold Cummings Manookian in contempt.

**C.     Appointment of Phillip Young as Special Counsel in this Bankruptcy Proceeding**

While Phillip Young was acting as Receiver in the State Court Action – and while

the Chase Appeal was still pending – Mr. Manookian filed for bankruptcy on behalf of Cummings Manookian; in part, to seek protection from the increasingly punitive actions Phillip Young was taking against Cummings Manookian at the request of the Chase Parties.

The Bankruptcy Trustee petitioned to have Phillip Young – the same attorney who was concurrently pursuing Cummings Manookian's receivables on behalf of the Chase Parties as well as pursuing new sanctions against Cummings Manookian in the State Action – appointed as her Special Counsel in the Bankruptcy matter. Her request was granted over Mr. Manookian's objection, and Phillip Young began serving dual roles as Counsel for the Trustee in Cummings Manookian's Bankruptcy as well as Receiver in the Chase Parties' state court lawsuit against Cummings Manookian; roles in which he continues to serve as of the time of this filing.

**D.     The Court of Appeals' Decision and Denial of Rehearing**

On February 4, 2021, the Tennessee Court of Appeals released its holding in *Chase v. Stewart*. The Court of Appeals vacated the judgment of $748,769,21, finding that Judge Michael Binkley should have recused himself as a result of an appearance of bias; and further finding that the bias had existed for so long as to justify his retroactive recusal.

The Chase Parties petitioned the Court of Appeals for rehearing. Their Petition was denied in a multi-page order issued on March 16, 2021.[4]

**E.     The Chase Parties' Offer of a Walk-Away**

Two days after the Tennessee Court of Appeals denied the Chase Parties' Petition for Rehearing, the Chase Parties sent a settlement letter to Counsel for Brian Manookian

---

[4] *Chase v. Stewart*, Order on Petition for Rehearing, attached as **Exhibit 3**.

offering to "walk-away" from their purported claims against Brian Manookian and Cummings Manookian in exchange for no payment and with all parties executing mutual releases. The letter indicated that the Chase Parties would seek agreement for the "walk-away" settlement on behalf of Cummings Manookian from the Trustee.

**F.     The Chase Parties' Unexplained Withdrawal from Negotiations and Simultaneous, Gratuitous Payment of Phillip Young's Fees in the State Action**

Days after offering a walk-away settlement on their now-vacated claims, the Chase Parties *sua sponte* and gratuitously announced they had agreed to pay all of Phillip Young's outstanding fees in the State Collections action. This was significant for Mr. Young. As the Receiver of a collections action where the underlying judgment had been vacated, Mr. Young stood the likelihood of not only having his outstanding fees unpaid, but also having Cummings Manookian and the other parties against whom he had seized receivables and which he remitted to himself as Receiver, seek reassessment and repayment.[5]

**G.     The Chase Parties New Proposed Settlement with State Receiver / Federal Bankruptcy Special Counsel Phillip Young**

Shortly after having gratuitously agreed to pay Receiver Phillip Young's outstanding fees in the State Action, the Chase Parties and Special Counsel Phillip Young in the Bankruptcy Matter entered into a new settlement which is drastically worse for Cummings Manookian than the previously proposed "walk-away," but provides a quarter-million-dollar windfall for the Chase Parties.

---

[5] Indeed, at least one other Defendant in the state collections case, Hammervold PLC, has asked the State Trial Court to refund its receivables which were ultimately paid to Phillip Young. That request is currently pending before the Court. Phillip Young, as Special Counsel in the Bankruptcy matter, has not asked the State Court to refund Cummings Manookian's money paid to Receiver Phillip Young.

In exchange for releasing the <u>vacated</u> claims which the Chase Parties had previously only required a non-payment and mutual release, Special Counsel Phillip Young now proposes to pay the Chase Parties $250,000.

### III. ARGUMENT

The proposed claim and settlement with the Chase Parties should be rejected. Cummings Manookian has no liability to the Chases. Cummings Manookian has prevailed twice on appeal. The Chase Parties have appropriately and recently valued their own claims at $0 by offering a walk-away. That walk-away was apparently scuttled by new, and dubiously-ethical, negotiations by a conflicted Special Counsel with a result highly suggestive of a *quid pro quo*.

Moreover, the Chases' "claims" which Special Counsel seeks to compromise are facially frivolous and will cost Cummings Manookian nothing to defend – if such claims are even pursued. The proposed settlement is, at best, not remotely in the interest of the Bankruptcy Estate and, at worst, the result of conflicted self-dealing on behalf of the Chase Parties and Mr. Young. Brian Manookian, as the sole owner and member of Cummings Manookian, objects to its terms.

**A. Cummings Manookian Has No Liability to the Chase Parties**

As a threshold matter, it bears emphasis that Cummings Manookian has zero current or likely liability to the Chase Parties. The Chase Parties "claim" is the threat of proceeding with a facially-frivolous contempt petition which has now been vacated and denied for rehearing. As a result, there is no existing judgment against Cummings Manookian for the Trustee to "compromise," nor is there likely to ever be one.

    *1. Cummings Manookian has Repeatedly Prevailed Against the*
       *Chase Parties on Appeal*

The Chase Parties' Claim, as originally filed in this bankruptcy action, consisted of a $748,000 judgment from the Williamson County Circuit Court. That judgment has now been vacated, and the petition for rehearing has been denied. The only legally-binding basis for the Chase's assertion that Cummings Manookian once owed them money no longer exists. At best and at present, the Chase Parties are left with a set of unproven allegations in a state court contempt proceeding; an action that may not even be currently prosecuted against Cummings Manookian.

    2.    *The Chase Parties Existing "Claim" is Properly Valued at a Walk-Away*

As recognized by the Chase Parties, the proper value of their existing "claim" is zero.[6] Following the denial of their Petition for Rehearing with the Tennessee Court of Appeals, the Chase Parties sought to compromise their "claim" against Cummings Manookian and the other parties involved in the contempt proceeding in exchange for a mutual release and walk-away.

The Chase Parties sought a walk-away, in part, because they justifiably now fear being sued for damages by Cummings Manookian to recover the funds that were levied by State Court Receiver Phillip Young. Stated alternatively, Cummings Manookian has legitimate and cognizable claims against the Chase Parties as a result of their seizing funds through Receiver Phillip Young for which they no longer hold a judgment.

The idea that Cummings Manookian would pay any sum of money to the Chase Parties – much less $250,000 – after (1) the underlying judgment has been vacated, (2) the Chase Parties have nevertheless seized funds belonging to Cummings Manookian

---

[6] *See* **Exhibit 2**.

without returning them post-vacated judgment, and (3) the Chase Parties have offered a $0 walk-away and mutual release is farcical. Rather than act in the Bankruptcy Estate's interest, Special Counsel for the Trustee proposes to negotiate *up* Cummings Manookian's liability from $0 to a quarter of a million dollars.

3.  *The Underlying Chase Claims are Facially Frivolous*

In any event, the underlying claims in the contempt proceeding are facially frivolous. The gravamen of the Chases' Contempt Proceeding is a claim that Brian Manookian violated a protective order by disseminating discovery materials to the media and law enforcement. But the protective order had not been entered at the time of Mr. Manookian's dissemination. It is axiomatic that one cannot violate an order that does not exist. Likewise, one cannot be held in contempt for taking otherwise lawful actions that have not been proscribed by a Court. Finally, the Chase Parties have conceded they have no damages from Mr. Manookian's actions other than incurring attorney's fees in pursuing the contempt proceeding itself. The underlying, unproven, and unproveable "claims" the Trustee proposes to settle are facially frivolous.

**B.  THE TRUSTEE HAS FAILED TO INVESTIGATE THE CHASE CLAIM**

It is additionally worth emphasizing – because it is emblematic of a consistent issue in this case – that the Trustee appears to have made little to no effort to investigate the Chase Claim or subject it to minimal scrutiny. Special Counsel for the Trustee, Phillip Young, did not even contact the attorneys who represented Cummings Manookian in the appeal or underlying contempt proceedings to evaluate the merits of the claim.

Indeed, it is difficult to address the Trustee's reasoning for proposing a quarter million-dollar settlement with the Chase Parties because no reasoning is ever articulated

in its proposal. The Trustee appears to suggest that there is some uncertainty as to whether the Court of Appeals' opinion impacts the judgment against Cummings Manookian. This is either a deliberate attempt to mislead this Court or a display of profound misunderstanding of basic litigation. The only judgment against Cummings Manookian was the same order that the Court of Appeals entirely vacated.

Likewise, the Trustee appears to suggest that because the underlying contempt proceeding dragged on for a number of years that Cummings Manookian *could possibly* incur costs in defending a renewed proceeding. Preliminarily, this presumes that the Chase Parties will renew the proceeding, which Mr. Manookian believes is highly unlikely. But moreover, it fails to consider (and the Trustee, in fact, failed to even inquire into) Cummings Manookian's costs in defending the prior action: $0.

Cummings Manookian's liability to the Chase Parties is entirely derivative. Cummings Manookian may only be held liable if its agent, Brian Manookian, is found liable. Brian Manookian has – and will continue to – vigorously defend any action by the Chase Parties at no expense to Cummings Manookian.

In sum, the Trustee has neither adequately scrutinized the Chase Claim or articulated any bases in the interest of the Bankruptcy Estate for a significant payment; or why that payment should be $250,000 as opposed to any other randomly selected number. Instead, the Trustee bizarrely frames her proposal as a negotiation down from a vacated $750,000 judgment when, in reality, she has negotiated up from the currently existing $0 obligation and the contemporaneously proposed $0 walk-away.

### C. SPECIAL COUNSEL HAS NEGOTIATED A DEAL RIFE WITH ACTUAL CONFLICTS AND HIGHLY SUGGESTIVE OF A *QUID PRO QUO*

As articulated above, Special Counsel Phillip Young has significant, ongoing actual conflicts that are particularly egregious in his dealings on behalf of the Bankruptcy Estate with the Chase Parties. Prior to the Bankruptcy Filing, the Chase Parties sued Cummings Manookian and asked the Court specifically to appoint Phillip Young as the Receiver to levy Cummings Manookian's receivables. In that role, Receiver Phillip Young has seized money belonging to Cummings Manookian, paid himself that money, and pursued new punitive actions against Cummings Manookian. The position staked out by Mr. Young as Receiver is undeniably and expressly adverse to Cummings Manookian and beneficial to the Chase Parties – and it continues to be.

In his concurrent role as Special Counsel in Cummings Manookian's bankruptcy, Phillip Young has declined to institute any action to recoup the Cummings Manookian money paid to Receiver Phillip Young in fulfillment of a now-vacated judgment. And in what is highly suggestive of a *quid pro quo* (and conclusive of an actual conflict), Special Counsel Phillip Young proposes to pay the Chase Parties $250,000 of Cummings Manookian's funds in the Bankruptcy Proceeding shortly after the Chase Parties gratuitously agreed to pay Receiver Phillip Young's fees in the Cummings Manookian collections action. Particularly in light of their days-earlier offer of a walk-away, this arrangement gives the appearance that the Chase Parties have secured a payment of Cummings Manookian's funds from Special Counsel Phillip Young in exchange for making a payment to Receiver Phillip Young.

Brian Manookian will shortly be filing a comprehensive Motion to Disqualify Phillip Young following receipt of certain materials in the state collections action. In the

interim, Mr. Manookian objects to the proposed settlement negotiated by Phillip Young serving dual roles as both Receiver and Special Counsel.

## IV. CONCLUSION

For all of the foregoing reasons, Mr. Manookian objects to the proposed claim and settlement with the Chase Parties.

Date: July 27, 2021

Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Manookian PLLC and Brian Manookian*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed July 27, 2021 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*