# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)

IN RE:                              .  Case No. 19-07235
                                    .  Chapter 7
CUMMINGS MANOOKIAN, PLLC,           .
                                    .
                                    .
                Debtor.             .
. . . . . . . . . . . . . . .       .

JEANNE ANN BURTON,                  .  Adv. No. 20-90002
                                    .
                Plaintiff,          .
                                    .
        v.                          .
                                    .
HAGH LAW, PLLC, et al.,             .  701 Broadway
                                    .  Nashville, TN 37203
                Defendants.         .
                                    .  Wednesday, September 29, 2021
. . . . . . . . . . . . . .         .  1:15 p.m.

    TRANSCRIPT OF TRUSTEE'S MOTION TO STRIKE BRIAN MANOOKIAN'S
OBJECTION TO AND TO PRECLUDE HIS PARTICIPATION IN THE SEPTEMBER
        29, 2021 HEARING FOR LACK OF STANDING [136];
        MOTION FOR COMPROMISE AND SETTLEMENT [108];
        BEFORE THE HONORABLE CHARLES M. WALKER
        UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

For Jeanne Ann Burton,    Thompson Burton PLLC
Chapter 7 Trustee:        By:  PHILLIP G. YOUNG, ESQ.
                          One Franklin Park
                          6100 Tower Circle, Suite 200
                          Franklin, TN 37067
                          (615) 465-6008

Chapter 7 Trustee:        Jeanne Ann Burton, PLLC
                          By:  JEANNE ANN BURTON, ESQ.
                          4117 Hillsboro Park, Suite 103-116
                          Nashville, TN 37215
                          (615) 678-6960

APPEARANCES CONTINUED.

Audio Operator:           Tanja Brewer, ECR

Transcription Company:    Access Transcripts, LLC
                          10110 Youngwood Lane
                          Fishers, IN 46048
                          (855) 873-2223
                          www.accesstranscripts.com

        Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

For Brian Manookian:          Spragens Law PLC
                              By:  JOHN T. SPRAGENS, ESQ.
                              311 22nd Avenue North
                              Nashville, TN 37203
                              (615) 983-8900

For Grant, Konvalinka        Grant, Konvalinka & Harrison, PC
& Harrison:                  By:  JOHN P. KONVALINKA, ESQ.
                              633 Chestnut Street
                              Chattanooga, TN 37450
                              (423) 756-8400

Also Present:                Bass, Berry & Sims
                              By:  CRAIG V. GABBERT, JR., ESQ.
                              150 Third Avenue South, Suite 2800
                              Nashville, TN 37201
                              (615) 742-6277

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 3 of 119

# I N D E X
## 9/29/21

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| FOR BRIAN MANOOKIAN: | | | | |
| Jeanne Ann Burton | 7 | 30 | 39 | 45 |
| | | | | |
| FOR THE TRUSTEE: | | | | |
| Jeanne Ann Burton | 59 | 82 | 102 | -- |

| | Page |
|---|---|
| CLOSING ARGUMENT BY MR. YOUNG | 109 |
| CLOSING ARGUMENT BY MR. KONVALINKA | 111 |

ACCESS TRANSCRIPTS, LLC    1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235  Doc 158-1  Filed 10/28/21  Entered 10/28/21 22:52:18  Desc
Exhibit 9/29/2021 Hearing Transcript  Page 4 of 119

1    (Proceedings commence at 1:15 p.m.)

2        THE CLERK:  Your Honor, the next cases we have are

3  Case Number 20-90002, <u>Burton v. Hagh Law, PLLC</u>.  Case Number

4  19-07235, <u>Cummings Manookian, PLLC</u>.

5        MR. YOUNG:  Good afternoon, Your Honor.  Phillip

6  Young on behalf of the Trustee, Jeannie Burton.

7        MR. SPRAGENS:  Good afternoon, Your Honor.  John

8  Spragens on behalf of Brian Manookian.

9        MR. KONVALINKA:  Good afternoon, Your Honor.  This is

10  John Konvalinka on behalf of Grant, Konvalinka & Harrison.

11        THE COURT:  All right.  Good afternoon.  Obviously,

12  the -- as you've seen from the order the Court entered, we're

13  going to bifurcate today's matters.  The first thing we're

14  going to take up is standing for Mr. Manookian.  And we'll go

15  forward with that matter, unless there is any housekeeping or

16  other questions that any party has for the Court.

17        MR. YOUNG:  Your Honor, Phillip Young here on behalf

18  of the Trustee.  I would like to raise just one issue, and that

19  is the issue of (audio interference) 7 of the Rules of

20  Professional Conduct.  The Court knows I've been listed as a

21  potential witness for Brian Manookian.  I think the Court's

22  ultimately going to find that he lacks standing in (audio

23  interference), but I just need to know that the Court will

24  allow me to argue the standing issue on behalf of the Trustee,

25  despite my name being listed as a possible witness.  If the

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 5 of 119

1 Court wants to reserve the rest, that's fine, but at least as
2 far as the standing issue, I believe that I need a ruling from
3 the Court that I can proceed on behalf of counsel -- or as
4 counsel for the Trustee, at least as to that portion, and not
5 violate Rule 3.7.

6        THE COURT:  All right.  Because we bifurcated these
7 hearings and standing is the threshold question we need to
8 address, absent objection that the Court would address, the
9 Court will allow you to testify -- or the Court will allow you
10 to represent the Trustee in this phase of the hearing.

11        MR. YOUNG:  Thank you, Your Honor.

12        THE COURT:  All right.  Let's go forward.

13        MR. SPRAGENS:  Your Honor, I would call the Trustee,
14 Jeannie Burton, on behalf of Mr. Manookian.

15        MR. YOUNG:  Your Honor, I think that puts the cart
16 before the horse here.  I think there's an issue about whether
17 or not Mr. Manookian can even call witnesses, as the Court
18 knows, and as we fully briefed, so I'm not going to go over
19 that.  Mr. Manookian has repeatedly taken the position that
20 there is no -- there could be no surplus in this case, because
21 the Trustee causes of action are not valid.  I think the law is
22 pretty well settled that not only can he not testify to the
23 contrary, he can't even make an argument to the contrary.  So
24 the only way he has standing in this case is if he can prove,
25 and it's his burden of proof, a surplus here, and I think that

1  he's judicially estopped from even taking that position.  So I

2  don't believe that Mr. Manookian is even permitted to present

3  testimony in that regard.

4          THE COURT:  Mr. Spragens, if you could respond to

5  that?

6          MR. SPRAGENS:  Yes, Your Honor.  This Court issued an

7  order five days ago stating that you would hear all evidence

8  and argument on the subject of standing.  I believe that the

9  Court is entitled to take evidence on a threshold question such

10  as standing, to the extent of its constitutional implications

11  and due process implications, and if we have the burden of

12  proof, as Mr. Young has asserted repeatedly throughout this

13  proceeding, I think we're entitled to put that proof on before

14  the Court, through examination of witnesses.

15          THE COURT:  And the Court's going to allow

16  Mr. Manookian to call the Trustee.  With everything that you've

17  cited, Mr. Young, if there are consequences down the road, so

18  be it, but part of this -- the whole heart of this is

19  Mr. Manookian having the ability to show that there is excess

20  funds available or likely to be available.  The Trustee is the

21  person who is in charge of the estate and best able to testify

22  to that, so we're going to allow that at this time, and we'll

23  go ahead and swear Ms. Burton in.

24          THE CLERK:  Please raise your right hand.

25          JEANNIE BURTON, BRIAN MANOOKIAN'S WITNESS, SWORN

1          THE CLERK:  So please state your full name for the

2   record.

3          THE WITNESS:  Jeannie Ann Burton.

4                    DIRECT EXAMINATION

5   BY MR. SPRAGENS:

6   Q    Good afternoon, Ms. Burton.  We met some time ago, but my

7   name is John Spragens, and I represent Brian Manookian in this

8   matter.  Can you hear me okay today?

9   A    I can.

10  Q    Obviously, we're on Zoom, so if you have any problems

11  understanding something I've said, just let me know or raise

12  your hand, and I'm happy to repeat it, or fix whatever I've

13  done wrong.  Is that okay?

14  A    Yes, sir.

15  Q    I'm going to have some additional questions for you later,

16  if the Court allows me to ask them, but at this time, I'm going

17  to limit my questions to the topic of whether Mr. Manookian has

18  standing to object to your proposed settlement of the Chase

19  parties' claim.  Do you understand that?

20  A    Yes, sir.

21  Q    Just as a housekeeping matter, you're not any relation to

22  an attorney named Walt Burton of the Thompson Burton Law Firm,

23  are you?

24  A    I am not.

25  Q    And you're the Trustee in this matter?  Is that correct?

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 8 of 119

1  A    Yes.

2  Q    As the Trustee, you have a fiduciary duty on behalf of

3  Cummings Manookian Law Firm?  Is that correct?

4  A    Correct.

5  Q    You're also an attorney.  Is that right?

6  A    That's correct.

7  Q    You have the right to speak for Cummings Manookian in this

8  proceeding?  Is that fair?

9  A    I do, but I have retained counsel to represent me in this

10  matter.

11  Q    And that counsel is Mr. Young, who's on the Zoom hearing

12  today?

13  A    Yes.

14  Q    You have the authority, with the Court's oversight, to

15  control the assets of Cummings Manookian?  Is that correct?

16  A    That's correct.

17  Q    And as part of your duties as Trustee, you've

18  investigated, to the extent you're able, the assets of Cummings

19  Manookian?

20  A    Yes.

21  Q    Brian Manookian doesn't have any authority to speak on

22  behalf of Cummings Manookian now, does he?

23  A    No.

24  Q    As Trustee, you're familiar with the bankruptcy claims

25  asserted against the Cummings Manookian estate in this

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
            Exhibit 9/29/2021 Hearing Transcript   Page 9 of 119

1  proceeding?

2  A    Yes.

3  Q    There's the -- in terms of claims that are active right

4  now, there's the claim asserted by Mr. Konvalinka?  Is that

5  right?

6  A    Correct.

7  Q    And what's the value that you ascribe to that claim?

8  A    I believe it's over $295,000.

9  Q    For purposes of round numbers, I'm going to call it

10  $300,000, but I don't mean to dispute your number there.

11      And what about the Chase parties' claim as you're

12  proposing to settle it right now?  What's the value of that

13  claim?

14  A    They filed a claim for -- a secured claim for 800 -- over

15  $800,000, and I'm proposing to allow the claim at 250,000.

16  Q    And then there's a claim by Ms. McDaniel?  Is that

17  correct?  Do I have the name wrong?  Was there another claim --

18  A    McCarthy?  McCarthy?  I don't --

19  Q    McCarthy, thank you.

20  A    -- recall the first name.

21  Q    And if you recall, what's the value that you've ascribed

22  to the McCarthy claim?

23  A    It's -- I would say, $71,000, or it could be more than

24  that.  It's 10 percent of the recovery of any fee due Cummings

25  Manookian recovered for the benefit of Cummings Manookian in

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 10 of 119

1  the Fitzgerald case.

2  Q    And we'll talk about the Fitzgerald case in a minute, but

3  are there any other claims that are currently pending against

4  Cummings Manookian?

5  A    Not that are allowed.

6  Q    So if we add up just the ballparking, 300 on behalf of

7  Konvalinka, 250 on behalf of the Chase parties, and 70-ish on

8  behalf of Ms. McCarthy, that adds up to about $620,000.  Is

9  that right?

10 A    Correct.

11 Q    There's no chance that the claim -- that it's more than

12 $750,000, the total value of claims that are currently pending

13 against the bankruptcy estate?

14 A    I'm sorry.  Ask me that again?

15 Q    Is there any chance in your mind that the total value of

16 these claims is greater than $750,000?

17 A    Well, it could be.  You know, if the Chase claim is not

18 allowed at $250,000, and upon a rehearing, they're granted a

19 sanctions judgment for an amount, you know, greater than

20 $250,000, then the claims could be significantly higher.

21 Q    But as of right now, the underlying judgment in the Chase

22 parties -- that the Chase parties' claim is based on, that

23 judgment's been vacated.  Is that right?

24 A    That's right.  So they still have a contingent claim in

25 the case.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 11 of 119

1  Q     But currently, there's no judgment against Cummings

2  Manookian.  Is that fair?

3  A     That's correct.  It's been vacated and remanded for

4  rehearing with a new judge.

5  Q     So you think the $250,000 value that you've given to that

6  claim, we agree that the total value of those claims against

7  the bankruptcy estate equals about $620,000?  Is that fair?

8  A     I think that's in the right range.  I don't have my

9  calculator in front of me, but that sounds right.

10  Q     And as you probably know, I went to law school because I

11  can't do math, so that's I need to check my numbers on this.

12       Do you know if the -- if your special counsel, Mr. Young,

13  has attorney's fees, and what they total as of this date?

14  A     I do, and I think it's -- probably now over $100,000.

15  Q     So as of now, 620 plus another 100,000.  Is that fair?

16  A     Correct.

17  Q     Now as the Trustee, you directed the filing of an

18  adversary proceeding on behalf of Cummings Manookian.  Correct?

19  A     Correct.

20  Q     And you reviewed and approved the allegations in the

21  complaint in the adversary proceeding?

22  A     Yes.

23  Q     And you made the allegations in the adversary proceeding

24  because they're true?

25  A     I believe that they are true.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 12 of 119

1  Q    In that proceeding, you represented that Cummings

2  Manookian is entitled to payment for attorneys' fees in

3  multiple cases.  Is that right?

4  A    Correct.

5  Q    The one you mentioned earlier, the Fitzgerald case, is

6  that true?

7  A    Correct.

8  Q    And in that case, it's true that Cummings Manookian is

9  entitled to $1.35 million?  Is that right?

10  A    That was the attorney fee that was awarded -- or -- well,

11  not awarded, but that was the attorney fee based on the

12  agreement, contingency fee agreement, with the Fitzgeralds.

13  Q    And your position is that Cummings Manookian is entitled

14  to $1.35 million from that fee?

15  A    Yes.

16  Q    Manookian PLLC, the newer legal entity, it doesn't have

17  any entitlement to the Fitzgerald fee, does it?

18  A    Did you Manookian, PLLC?

19  Q    Yes, ma'am.

20  A    I don't believe so.

21  Q    That's all Cummings Manookian's money, is what I'm trying

22  to get at.

23  A    Yes.

24  Q    You agree that that single $1.35 million fee exceeds all

25  of the claims that have been asserted against Cummings

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 13 of 119

1  Manookian?

2  A    I have to do my math again, but if the contingent claim of

3  the Chase parties was the seven -- seven or $800,000, then the

4  claims could exceed that amount.

5  Q    So then the claims -- if I've got this right, if we add

6  500,000 to the 250,000 of the Chase parties, that would be

7  750,000 plus 300 for the Konvalinka claims, so that's 1.05

8  million, plus 70,000 for Ms. McCarthy, plus 100,000 for

9  Mr. Young.  Have we gotten to 1.35 million yet?

10 A    Well, there would be Trustee compensation on whatever the

11 amount that the Trustee collects and disburses, so that's

12 dependent on the amount that is recovered for the estate, and

13 then there would be additional attorney fees for the adversary

14 proceeding, and then also if the settlement's not approved, and

15 we go down to state court to start that proceeding over, then

16 the Trustee, I would have to employ counsel to represent the

17 estate in the -- in that proceeding.

18     So there would be attorney fees.  In that, I think I

19 estimated that attorney fees in that instance could be as much

20 as $150,000, and then for the adversary proceeding, depending

21 on whether -- depend -- I think you're getting that, assuming

22 that the Chase claim is not settled.  Then that could be

23 another $100,000 in bankruptcy adversary in fees, because the

24 scope of the litigation would be more, because we might -- we

25 wouldn't know, and I might need more money to pay all the

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 14 of 119

1  claims.

2       So that was one of the reasons that it made sense to

3  consider, you know, a settlement or some type of liquidation of

4  the Chase claim.

5  Q    Okay.  I want to try to unpack a few of the fees that you

6  just mentioned there.  With respect to Trustee's fees, is there

7  a number in your mind that you're thinking of for the Trustee's

8  fees?

9  A    Well, it is a -- it's a computation, it's a percentage,

10 and I have to have my software to do that, but if I had

11 $800,000 in the case, and the -- that figure is comprised of if

12 I'm successful in the adversary proceeding, and whether I get a

13 judgment for the 1.3 or the 715, I feel comfortable, because

14 the Court and the $715,00 that's on deposit with the Court,

15 that would come into the estate.  I currently have about

16 $85,000 in the estate bank account.

17      So the Trustee's compensation or commission by statute on

18 that would be $43,000.

19 Q    And one thing that's important to note here is that when

20 you're figuring the size of the bankruptcy estate, you're

21 taking into account the adversary proceeding.  Is that correct?

22 A    I don't think I understand your question.

23 Q    Well, these numbers that you've been giving me, including

24 the Trustee's fee that you just mentioned and the attorney's

25 fees, you've included the attorney's fees to prosecute the

1  adversary proceeding.  So --

2  A    Correct.

3  Q    Okay.  So when you look at the bankruptcy estate value,

4  you are taking the adversary proceeding into account, in

5  valuing the estate.  Is that right?

6  A    Correct.  Trying to look at what I think the assets are of

7  the estate, and what I might be able to recover and collect to

8  pay the claims of creditors.  That's my main job.

9  Q    And I'd like to talk about the assets of the estate in

10 just a second, but while we're talking about these fees, you

11 mentioned attorneys' fees, you know, for the Trustee and for

12 the prosecution of the adversary proceeding.  Those fees would

13 be paid to Mr. Young.  Is that correct?

14 A    That is correct.

15 Q    Now, when you mentioned the attorneys to represent

16 Cummings Manookian in the state court proceeding, have you

17 investigated or retained an attorney to represent Cummings

18 Manookian in that proceeding?

19 A    I haven't retained an attorney, but I have estimated what

20 I thought, and the difficulty.  But I've estimated what I

21 thought the attorney fees would be, or could be, in that state

22 court proceeding.

23 Q    Are you aware whether that state court proceeding has been

24 assigned to a judge at this point?

25 A    I do not know.  I don't know.  I know there have been

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 16 of 119

1 motions filed, several motions already filed, but I don't know

2 if any judge has been assigned.

3 Q    You know there's a motion for summary judgment pending

4 that Mr. Manookian filed in that case?

5 A    I do.

6 Q    When you estimate $150,000 in attorneys' fees to, you know

7 -- to defend Cummings Manookian in the event that that civil

8 contempt judgment were restored, are there particular types of

9 attorneys that you're contemplating hiring, or can anybody do

10 that?

11 A    Well, I would want somebody who has state court

12 experience, somebody who's experienced in Williamson County

13 state court.  It's -- and it would probably -- it would help,

14 because this is one of the difficulties, I only have $85,000 in

15 the case.  The attorney has -- you know, it doesn't work like

16 it does outside of bankruptcy.  I have to get somebody to

17 agree, they have be approved by the bankruptcy court, their

18 compensation will have to be approved by the bankruptcy court,

19 so it's not as though the attorney can just send me a bill each

20 month and me pay it, unless I get some type of permission from

21 the Court to do that.  So it will have to be somebody who has

22 an understanding of what it means to represent a bankruptcy

23 Trustee in a case, because you may not get paid, or you may not

24 get paid until, you know, later in the case, or at the end of

25 the case.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 17 of 119

1  Q    Now Mr. Young was the receiver, a court-appointed receiver

2  for the Chase parties in the underlying initial proceeding in

3  the state court.  Is that right?

4  A    Correct.

5  Q    And he's special counsel now to the Trustee in this

6  proceeding.  Is that right?

7  A    Correct.

8  Q    Have you given any thought to hiring him to represent

9  Cummings Manookian in the remanded proceeding?

10  A    Well, I thought about it.  I don't know, you know, that's

11  another big chunk to take on.  I certainly think he would be,

12  you know, capable and competent, but it, you know, frankly we

13  met -- I met with a lot of resistance in wanting him as special

14  counsel.  I think, I don't know, if I asked him to do it, he

15  might do it.  But it's a lot more to add and still not be

16  compensated anything in the case thus far.

17  Q    And have you given any thought to whether he has conflicts

18  of interest in representing various entities in various stages

19  of these proceedings?

20  A    I'm sorry.  Ask me that question again?

21  Q    Have you given any thought to whether he might have a

22  conflict of interest representing Cummings Manookian on remand,

23  and having represented the Chase parties as receiver, and

24  representing the Trustee as special counsel?

25            MR. YOUNG:  Object to form.  He represented that I

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 18 of 119

1 represent the Chase parties, which is inaccurate.

2          MR. SPRAGENS:  Excuse me.  Let me modify that.

3 BY MR. SPRAGENS:

4 Q    Representing -- being the court-appointed receiver to

5 collect the fee in the underlying state action, as well as

6 being special counsel to the Trustee, and then representing

7 Cummings Manookian on remand, have you given any thought to

8 whether it would be appropriate for him to do all those?

9 A    I haven't really thought it through like that as far as

10 the -- on remand, representing Cummings Manookian in the state

11 court.  I don't know who would -- the Chase parties might very

12 well raise that.  So that's a possibility.  That's a

13 possibility, so --

14 Q    Okay.  So suffice it to say, attorneys' fees in two

15 proceedings totaling $250,000, a Trustee's fees of under

16 $50,000, that gets you to about $300,000 on top of the $720,000

17 you identified earlier, and then as you also stated, if you

18 imagine that the Court restored the full amount of the civil

19 contempt award, that could put you above $1.35 million.  Is

20 that what you're saying?

21 A    It could.  And also, remember, I have to be able to

22 collect 1.3, and so there's 715 that's being held by the

23 Clerk's Office that if I'm successful in the litigation would

24 be paid over to the estate, but the remainder of any other

25 judgment would have to be collected.  You know, we may have to

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 19 of 119

1  hire -- and that costs money to collect.  I don't know if

2  defendant is solvent.  I know she's married.  If there's issues

3  with, you know, collecting from a dependent who may own things

4  (indiscernible) entirety, so you know, that was another --

5  yeah, another consideration, but certainly, I believe that if

6  I'm -- if the estate is entitled to the 715, it's entitled to

7  1.3, but will I be able to collect that?  I don't know.  I

8  don't know.  I think -- I don't know.

9  Q    Well, you have been receiving payments from Mr. Cummings

10 for his portions of fees that the Trustee has asserted Cummings

11 Manookian is entitled to, right?

12 A    That's right.  That's where most -- I guess all of that

13 85,000 has come from.

14 Q    Just in the last couple of weeks, Mr. Cummings has sent

15 you another payment for a case that he settled that you have

16 represented that Cummings Manookian has an interest in.  Is

17 that right?

18 A    I haven't received anything, and -- I have received an

19 email that honestly, I was sick last week, and so there's a lot

20 that I haven't been able to catch back up on, but I haven't

21 received any other monies.  My recollection is that -- and

22 Mr. Young would be able to correct me if I'm wrong, or you can,

23 if you have the information.  I think it's nine or $10,000 and

24 I believe that that may be the end of the cases that

25 Mr. Cummings took over when he left the firm to which Cummings

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 20 of 119

1  Manookian is entitled to a portion of those fees and costs.

2  Q    In the adversary proceeding, in the complaint, you listed

3  about 16 cases that Cummings Manookian has an interest in, and

4  is owed payment in.  Is that right?

5  A    That's correct.

6  Q    That's in addition to the $1.35 million that you've

7  alleged that Cummings Manookian is entitled to in the

8  Fitzgerald case?

9  A    That's correct.

10 Q    You also agree that Cummings Manookian is entitled to

11 payment for a bunch of physical and intangible assets that

12 you've alleged were used by Manookian PLLC and Afsoon Hagh and

13 Hagh Law.  Is that right?

14 A    That's correct.

15 Q    And you've said they used the premises without paying

16 Cummings Manookian.  Right?

17 A    Correct.

18 Q    They used furniture without paying Cummings Manookian.

19 Right?

20 A    Correct.

21 Q    They used equipment without paying Cummings Manookian?

22 A    Correct.

23 Q    They used intellectual property without paying Cummings

24 Manookian?

25 A    Correct.

ACCESS TRANSCRIPTS, LLC                1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 21 of 119

1  Q    And there are certain costs that Cummings Manookian is

2  entitled to recover also in excess of the $1.35 million

3  Fitzgerald fee.  Is that right?

4  A    Costs?

5  Q    Yes.

6  A    Possibly.  Obviously, those 12 cases have to be won by --

7  they originated with Cummings and Manookian, but they're all in

8  various stages of litigation, and so whether Cummings Manookian

9  will receive any fee will be dependent upon how those cases

10 eventually pan out over time.

11 Q    But you've alleged in the adversary proceeding that the

12 estate should include the $1.35 million Fitzgerald fee, plus

13 the fees from the 16 cases you listed -- excuse me.  I think

14 it'd be 15 cases in addition to the Fitzgerald case.  Plus

15 premises, furniture, equipment, intellectual property, and

16 other costs.  Is that right?

17 A    Correct.

18 Q    Have you made any estimate of the total value of the

19 premises, the furniture, the intellectual property, and the

20 other attorneys' fees?

21 A    No.

22 Q    No doubt that would be well in excess of $1.35 million?

23 Is that correct?

24 A    I do not know.

25 Q    If the allegations in your case are true, isn't it a

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 22 of 119

1 virtual certainty that the estate would be worth more than

2 $2 million?

3 A    It's possible.  But we would have to collect.  We'd have

4 to collect those(indiscernible).  You know, that's what the

5 litigation is about, is whether Cummings and Manookian is

6 entitled to fees and in what amount, and it won't be 100

7 percent of -- it may not be 100 percent of those allocations

8 where other attorneys, you know, have worked on cases.  So --

9 and then, collecting.  Collecting those.  But yes, those

10 allegations are there.  And --

11 Q    And you're --

12 A    -- got a good case.

13 Q    And you're so confident that the allegations in the

14 adversary complaint are true, that you've asked this Court to

15 allow you to hire special counsel to prosecute the adversary

16 proceedings so you could prove those claims and find those

17 assets.  Isn't that right?

18 A    I'm confident that we -- that I have a good case, and it

19 is part of my duty as a Trustee is to pursue assets, you know,

20 that I think will produce money to pay creditors.

21 Q    Cummings Manookian is also entitled to pre- and

22 post-judgment interests.  Is that right?

23 A    I'm sorry.  Ask me that again?

24 Q    In the adversary proceeding, you've asserted that Cummings

25 Manookian is entitled to collect pre- and post-judgment

1  interests?

2  A    Yes.

3  Q    Is that right?

4  A    I think.

5  Q    Also punitive damages as a result of their malicious and

6  fraudulent conduct.  Is that right?

7  A    Yes.

8  Q    And Cummings Manookian is entitled to have their

9  attorneys' fees paid as a result of the adversary proceeding.

10 Is that right?

11 A    That's all subject to court approval, but yes.

12 Q    That's what you've alleged?

13 A    Yes.

14 Q    Does Cummins Manookian have any claims against third

15 parties that could increase the value of the estate?

16 A    I'm not -- not that I know of.  I know that there has been

17 some -- in the receivership proceeding, Mark Hammerfold

18 (phonetic) had asked the Court to have the Chase parties pay

19 money that was collected out of his accounts receivable to him

20 now that the judgment was vacated, and I've been monitoring

21 that to see what the outcome of that was, to see if the estate

22 might have any recourse to seek the same relief, but the judge

23 in that case has -- he's stayed that until the Chase litigation

24 is concluded.

25 Q    So just to make sure --

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
        Exhibit 9/29/2021 Hearing Transcript   Page 24 of 119

1 A    Other than that, I don't -- other than that -- on -- I

2 don't know of anything else.

3 Q    Make sure I'm understanding.  Mr. Hammerfold was

4 co-counsel and also subject to the civil contempt order in the

5 underlying state court proceeding.  Is that right?

6 A    Correct.

7 Q    And now that that award of damages, or that civil contempt

8 award has been vacated, Mr. Hammerfold is suing the Chase

9 parties, or at least moving the Court to order the Chase

10 parties to return some of the funds to him that they collected

11 on a now vacated judgment.  Is that right?

12 A    Right.  Right.

13 Q    And in fact, Mr. Young, in his role as receiver, collected

14 some of those funds too, didn't he?

15 A    As a receiver, he was collecting the -- he got appointed

16 by the Court to be receiver, and he was collecting the judgment

17 funds.

18 Q    And some of those funds were paid to him in compensating

19 him for his role as receiver?

20 A    I believe he made application to the Court, and was

21 awarded fees.

22 Q    And Cummings Manookian has not filed a similar motion in

23 the state court case.  Is that right?

24 A    No.

25 Q    And you said you're monitoring that?

1 A    I am.  I think there's about $25,000 maybe that was

2 collected from Cummings Manookian.  I think that's about -- I

3 think that's right, because all the other money had been turned

4 over to the bankruptcy estate, so -- I could tell that the

5 judge -- I thought the judge was going to just stay that

6 proceeding until the outcome of the Chase -- what I call the

7 Chase litigation, and so I didn't think that it was worth the

8 expense to the estate to file a similar motion.

9      I think if it turns out that Chase had to return those

10 funds to Mr. Hammerfold, then -- you know, at the time, I was

11 thinking I would make the same request, or file a similar

12 motion, but again, that's -- you know, that will be part of

13 what will be covered in the claims settlement with the Chase

14 parties.

15 Q    Well, in fact, in that settlement, which maybe we'll be

16 allowed to talk about later, Cummings Manookian would be

17 waiving any claims against the Chase parties.  Is that right?

18 A    Right, it's -- would be mutual releases, and Chase would

19 be waiving the reservation of rights that they retained in an

20 order when they turned over $25,000 to the bankruptcy estate

21 that I took the position that was a preference, and so it

22 should be paid over to the bankruptcy estate.  So it has been,

23 but there's an order reserving their rights to claim an

24 execution lien or something else.

25 Q    Did you rely on anyone else to make the decision not to

1  join that motion to attempt to recover the funds that were paid

2  to the Chase parties, or to Mr. Young --

3  A     The --

4  Q     Just let me finish real quick.

5  A     Oh, I'm sorry.  I'm sorry.

6  Q     That's okay.  In the state court proceeding?

7  A     I'm sorry.  Ask me the question again?

8  Q     Did you rely on anyone else's advice in making that

9  determination?

10 A     No.

11 Q     But you don't think that it would give the motion a little

12 bit more force if Cummings Manookian also joined and said, we

13 are also in the same position as Mr. Hammerfold, and would like

14 to recover our funds?

15 A     No, I didn't think that.

16 Q     And in any event do you think that that would increase the

17 value of the bankruptcy estate by about $25,000, if you

18 prevailed on that motion which you have not filed?

19 A     If I prevailed, and collected it, yes.

20 Q     And in any event, the proposed settlement of the Chase

21 parties would moot that whole issue?

22 A     Correct.

23 Q     I'm going to -- I don't want ask you more about the Chase

24 settlement in detail, because I think we need to limit this

25 portion of our conversation to Mr. Manookian's standing.  I do

1 | have some other questions for you later about that, but who is

2 | the sole member of Cummings Manookian?

3 | A    At the time that the bankruptcy petition was filed, it was

4 | Brian Manookian.

5 | Q    And do you know who it is today?

6 | A    Well, it would be Brian Manookian.

7 | Q    And if you prevail on your claims on the adversary

8 | proceeding, wouldn't Brian Manookian be entitled to the surplus

9 | recovered by the Trustee?

10 | A    If there was a surplus -- actually, I think it would

11 | probably go to -- there's a charging order, and there's some

12 | orders in bankruptcy court about that, but obviously, we would

13 | be paying that.  I won't pursue that, but the surplus, that

14 | would be paid to Brian Manookian or to his creditor that has

15 | the charging order against him.

16 | Q    And where is that charging order pending?

17 | A    In bankruptcy court.  I filed an objection to the claim,

18 | there were two claims, actually, because the judgments -- both

19 | claims were based on judgments against Mr. Manookian, and

20 | possibly others, I can't remember, but Mr. Manookian

21 | personally, and not against Cummings Manookian.

22 | Q    And what's the total amount subject to the charging order?

23 | A    I don't recall.  I don't know.

24 | Q    But if you prevailed on your claims in the adversary

25 | proceeding, and collected all the 16 attorneys' fees, one of

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 28 of 119

1  which is $1.35 million, and the value of all the property

2  you've alleged that was stolen from Cummings Manookian, as well

3  as the punitive damages and attorney's fees, and interests that

4  you've alleged Cummings Manookian is entitled to, Mr. Manookian

5  would receive the proceeds of that surplus.  Isn't that true?

6  A    If there was a surplus, then he would receive the surplus.

7  I just don't believe that this is going to be a surplus case,

8  but I'm certainly going to do everything I can to collect all

9  of the assets of the estate, or that are necessary to pay the

10 claims of the creditors.

11 Q    In your believe that this is not to be a surplus case, you

12 don't have an inventory of the hard property, intangible

13 property, and attorneys' fees that Cummings Manookian is

14 entitled to recover?

15 A    I don't.  You know, we're -- we were conducting discovery,

16 and then the discovery's been stayed.  In the adversary

17 proceeding, there's discovery disputes.  I've gotten some

18 information, so, no.  I don't have complete information on all

19 of that.

20 Q    And you've asked to stay the discovery in the adversary

21 proceeding.  Isn't that right?

22 A    Right.  Right.

23 Q    Through your counsel, Mr. Young?

24 A    Correct.

25 Q    And you've done that multiple times?

1  A    I believe so, yeah.  Yes.

2  Q    So that lack -- the lack of an inventory of the actual

3  value of, you know, the assets in the estate, you are at least

4  in part responsible for not having that inventory.  Isn't that

5  fair?

6  A    Well, I think we -- I think I, with the assistance of my

7  counsel, compounded written discovery in again, that we don't

8  have answers to, but I also for the economy and to save the

9  estate attorney -- you know, administrative costs and expenses,

10 to stay all of that pending the resolution of the case claims

11 or whenever the case claim was fixed, so that we -- that I

12 would know how the scope, or how much I needed to proceed

13 against in the adversary proceeding.

14         MR. SPRAGENS:  Your Honor, I want to respect the

15 Court's time and your bifurcation order, and so while I do have

16 some other questions, I think they get more to the merits of

17 the objection, and so I'll pass the witness at this time.

18         THE COURT:  Thank you for monitoring yourself on

19 that.  The Court was going to give you some latitude, and I

20 think you used about as much of it as I was willing to give you

21 on (indiscernible) so appreciate that.

22         Mr. Young?

23         MR. YOUNG:  Yes, Your Honor.  Just for the record,

24 Phillip Young on behalf of the Trustee.

25                    CROSS-EXAMINATION

ACCESS TRANSCRIPTS, LLC        ⚖        1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 30 of 119

1  BY MR. YOUNG:

2  Q    Ms. Burton, I want to ask you not hypothetical questions,

3  but questions grounded in reality.  Is Brian Manookian a

4  creditor of this estate?

5  A    No.

6  Q    Did Brian Manookian file a proof of claim in this estate?

7  A    No.

8  Q    Is Brian Manookian listed as a creditor in the schedules?

9  A    No.

10 Q    Who signed those schedules?

11 A    Brian Manookian.

12 Q    What's Mr. Manookian's only role in this case?

13 A    Well, he's the representative of Cummings and Manookian.

14 He signed the bankruptcy schedules, and I believe he's chief

15 manager.  He's the debtor representative.

16 Q    So his only role in this case is as the former principal

17 of the debtor.  Is that right?

18 A    Correct.

19 Q    Can you say with any degree of certainty that this estate

20 will be a surplus estate?

21 A    No.

22 Q    Why not?

23 A    Well, for the reasons that I've already stated.  I can go

24 through that again, but I'd have to pursue the adversaries, go,

25 you know, it's basically, maybe take it in the adversary

ACCESS TRANSCRIPTS, LLC  1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 31 of 119

1  proceeding sum, and then in the Chase matter.  So I would have

2  to be successful on, you know, all counts of the adversary

3  proceeding, which would obviously incur administrative costs,

4  and then I would have to be able to collect all of -- you know,

5  any award, any judgment, be able to collect that, pay the cost

6  of collection of that.

7      On the Chase side of it, there would be, obviously,

8  attorney fees involved in providing representation to the

9  estate, and if that goes back for -- to start at the very

10  beginning, and, you know, that's no guarantee that there won't

11  be a like judgment, a sanctions judgment in that case again,

12  which would likely go up, you know, on appeal again.

13  Q    So is it safe to say that there are a lot of variables at

14  play in this case?

15  A    Yes.  Yes.

16  Q    There are variables in the amount of claims to the estate.

17  Right?

18  A    Correct.

19  Q    There are variables in administrative expenses of the

20  estate, right?

21  A    Correct.

22  Q    There are variables in litigation, whether you're

23  successful in litigation or not.

24  A    That's correct.

25          MR. SPRAGENS:  Your Honor, I appreciate that you gave

1  me latitude in my examination, but I do object to the leading

2  questions of his own witness.

3          MR. YOUNG:  Your Honor, this is a cross-examination.

4          THE COURT:  (Audio interference) witness, so you

5  called the Trustee.  Mr. Young obviously, you know, this is

6  bankruptcy court, we do allow a little bit of latitude in the

7  interest of time, but allow the witness to testify as best she

8  can.

9          MR. YOUNG:  Yes, Your Honor.

10 BY MR. YOUNG:

11 Q    How much are you currently holding in this estate today?

12 A    85,000, a little over 85,000.

13 Q    Is this a surplus estate today?

14 A    No.

15 Q    Can this be a surplus estate without you being successful

16 in the adversary proceeding?

17 A    No.

18 Q    I want to walk through some numbers.  You've gone through

19 some of these, but I want to walk through these in a way that

20 sort of maybe makes it a little easier for the Court to digest.

21      You said you're holding $85,000.  How much is being held

22 by the Court Clerk?

23 A    715.

24 Q    And as we sit here today, are you entitled today to the

25 $715,000?

1  A    No.

2  Q    What would have to happen in order for you to get this

3  money?

4  A    A judgment in the adversary proceeding.  Or a settlement.

5  If there was a settlement.

6  Q    If the Court grants you those funds, then, the 715 plus

7  the 85, that's about 800,000, right?

8  A    Correct.

9  Q    Okay.  And just repeat for us, how much was the Grant

10  Konvalinka claim?

11  A    Close to 300, 295-something.

12  Q    Is that a secured or an unsecured claim?

13  A    It's an unsecured claim.

14  Q    What about Ronette McCarthy?

15  A    71,500.  Ten percent of -- so it could be 71,5, or it

16  could be 100 and -- what would that be?  Three -- ten percent

17  of the amount that's recovered from the -- in the Fitzgerald

18  case.  Because he was an attorney, a co-counsel, or conferring

19  attorney, or -- in that case.

20  Q    If the Court approves the settlement before it, how much

21  would the Chase claim be allowed as?

22  A    250,000.

23  Q    And would that be secured or unsecured?

24  A    That would be unsecured.

25  Q    And if the Court denies this settlement, will you have

ACCESS TRANSCRIPTS, LLC                1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 34 of 119

1 extra expenses?

2 A    Yes.

3 Q    And why is that?

4 A    Well, I would have to employ counsel to represent the

5 estate in the state court with respect to the Chase claims, and

6 so that's an expense, and then as I've discussed, there would

7 be additional expense, administrative costs and attorney fees

8 involved in the adversary proceeding, because I wouldn't be

9 able to just limit pursuing the recovery of the Fitzgerald

10 fees.  I would have to pursue, not knowing what the claims

11 were, because they're not fixed, and calculating on the high

12 end of the claims, I would have to -- there would just be a lot

13 more cost in pursuing all of the other assets or causes of

14 action as you will, in that adversary that were raised in the

15 adversary proceeding.

16 Q    And those legal fees.  Would they be unsecured claims or

17 administrative claims?

18 A    They're administrative claims.

19 Q    What priority would they have, vis-a-vis the unsecured

20 claims?

21 A    They get paid before the unsecured claims.

22 Q    I believe you testified earlier -- I think Mr. Konvalinka

23 said that his math was $620,000 roughly unsecured claims if the

24 Chase claim settlement is allowed, and I think you agreed with

25 that number.  Is that right?

1  A    I think that's right.

2  Q    And if you're successful in collecting the 715, in the

3  estate, that 715 plus the 85, that would be about 800,000,

4  right?

5  A    Eight what?

6  Q    About 800,000?

7  A    Yes.

8  Q    If you distribute $800,000, I think you testified to this

9  earlier, what would your Trustee compensation be?

10  A    43,000.

11  Q    And I think you testified earlier that you believe the

12  estate has already incurred legal fees in excess of $100,000?

13  Was that your testimony?

14  A    Correct.

15  Q    How much do you think in legal fees will be spent just to

16  recover the Fitzgerald fees?

17  A    I think in discussing with my counsel, and what --

18  estimate about $50,000.

19  Q    And if you have to pursue all causes of action in the

20  adversary proceeding, that would go up?

21  A    I think -- yes, probably more than double.

22  Q    And then obviously if the Chase claim, the settlement's

23  not allowed, and it goes back to state court, that number could

24  go significantly above 250, right?

25  A    The amount of subsequent judgment?

ACCESS TRANSCRIPTS, LLC      1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 36 of 119

1  Q    Right.

2  A    Yes.

3  Q    With admin expenses, plus the $620,000 of unsecured

4  claims, do you think that amount is more or less than $800,000?

5  A    Probably more than -- more than 800 -- now, more than

6  $800,000.

7  Q    And you get to the 800 only if you collect the 715 being

8  held by the Court, right?

9  A    Correct.

10 Q    So what would have to happen in order for this to be a

11 surplus case?

12 A    It'd have to be successful really in probably -- well,

13 again, I don't know, because of the -- I would have to pursue

14 all of the claims, all of the other accounts receivable, if you

15 will, in the case to which Cummings and Manookian might be

16 entitled to attorney fees that are -- that they would be

17 entitled to for representation of plaintiffs in lawsuits.

18     So I guess, first of all, all of those would have to be

19 decided in favor of the -- or settled in favor of the

20 plaintiffs, and then Cummings and Manookian and -- or there

21 would be an award of an attorney, not an award, but there's an

22 agreement between the plaintiff and the law firm, Cummings

23 Manookian, about the amount of the percentage of an attorney

24 fee, and then there would have to be a determination then in

25 the adversary, how much of that Cummings and Manookian would be

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 37 of 119

1  entitled to.  Is it 100 percent?  Is it 50?  Is it some other

2  formula, like there was with Brian Cummings?

3      So all of that, you know, would have to be successful in

4  recovering the attorney fees, and I don't know what those

5  amounts would be, and how much Cummings and Manookian would be

6  entitled to, and then spending the money to get to that, and

7  then, you know, spending the money to collect it if it wasn't

8  voluntarily paid over to the estate.

9      And then on the -- and then in the Chase case, for it to

10 be -- on that, for it to be a surplus case, that claim would

11 have to be disallowed or allow -- or disallowed -- it would

12 have to be a whole lot less, I think, than $800,000, you know,

13 and it could be more.

14 Q   Is litigation ever a certainty in your experience as

15 Trustee?

16 A   No.

17 Q   Litigation expenses?

18 A   No.  No.  I mean, we try to estimate, and, you know, we

19 try to be a good -- good stewards, and, you know, but no.  I

20 mean, things happen, and you have to do what you have to do in

21 your cases.

22 Q   I'm not certain you understood my question.

23 A   Oh.

24 Q   Is litigation expenses -- is it expensive?

25 A   Oh, I'm sorry.  You cut out there for a minute.  Is

1 litigation expensive?  Oh, yes.  Yes.

2 Q    Let's talk about collections for a minute.  In your

3 experience, how difficult is it to collect from individuals?

4 A    It just depends.  I mean, it depends on their insolvent --

5 you know, whether they're solvent or insolvent.  If you have to

6 chase them and their assets, if they're, you know, if they own

7 property jointly with someone else, you know, finding assets,

8 or what the bank accounts are, that sort of thing, so it can be

9 difficult.

10 Q    Do you know whether or not Ms. Afsoon Hagh is solvent?

11 A    I do not.

12 Q    Is she married?

13 A    Yes.

14 Q    In your experience, what's the impact of marital status on

15 collections?

16 A    It makes it a lot harder, because, in the -- you know,

17 what the defendant owns is a survivorship interest in assets,

18 and those -- you know, those aren't very valuable.  You know,

19 it's hard to liquidate jointly owned property, or to sell, you

20 know, a survivorship interest to anybody.

21 Q    Are you aware of any other outstanding sanctions against

22 Ms. Hagh?

23 A    I'm aware that there's a $60,000 sanctions charging or --

24 sanctions judgment, and there's a charging order.

25 Q    In your opinion as a Trustee and as an attorney, how

ACCESS TRANSCRIPTS, LLC              1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 39 of 119

1  likely is it that you will be able to collect a judgment

2  against Ms. Hagh beyond the $715,000 held by this Court?

3  A    I hate to say it's not likely, but it -- it may not be

4  likely.

5  Q    And then would the estate have to incur legal fees for

6  that collection?

7  A    Yes.  And we would incur -- I would incur legal fees

8  whether we were able to collect it or not, because, you know,

9  you have to try.  You know, you have to -- whether it's

10 post-judgment discovery or whatever, you have to try to

11 collect.

12 Q    Based on all the variables that you've explained today, do

13 you think it's likely that this will be a surplus case?

14 A    I don't.  I don't.

15        MR. YOUNG:  Those are the only questions I have.

16 Thank you, Your Honor.

17        MR. SPRAGENS:  All right, just a couple of quick

18 questions to follow up.

19                    REDIRECT EXAMINATION

20 BY MR. SPRAGENS:

21 Q    Ms. Burton, the cases that you listed in Paragraph 23 of

22 the adversary proceeding, do you know the status of any of

23 those cases now?

24 A    It has been a while since in the course of the adversary

25 proceeding that we have checked the status of those, but we

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 40 of 119

1 periodically check docket sheets and that sort of thing, so to

2 answer your question, I do not know the status of each one of

3 those cases.

4 Q    And I think you testified earlier that you don't have

5 values assigned to those cases on any internal tracking charts?

6 A    No.

7 Q    So you can't say whether or not Mr. Cummings is about to

8 send you a check for $500,000 or $1 million as a result of one

9 of those cases settling?

10 A    On those -- no.  But I think that's the last of them, of

11 the Cummings, the cases where I would be getting any money from

12 Mr. Cummings.  I think that's a -- I think that was the last

13 one, the one that I'm supposed to be getting.

14 Q    So Cummings Manookian would be entitled to the entire fee

15 in the rest of those cases?

16 A    I don't have a list of those in front of me.  I think --

17 I'm not sure if Mr. Cummings is involved in -- there's the

18 Vanderbilt case.  I'm not sure if Mr. Cummings is involved in

19 that and if any money would be coming through him on that.  But

20 I don't have any -- I don't have any other recollection without

21 looking at records on that.

22 Q    And between the $715,000 in the court clerk's registry and

23 the $85,000 you already hold, you've got, potentially, access

24 to $800,000 in cash, right now.  Is that fair?

25 A    No.  I wish.  I would have to be -- get a judgment in the

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 41 of 119

1  adversary proceeding where the Court says that the Cummings

2  Manookian, the bankruptcy estate, was entitled to $715,000.

3  Q    Or settlements approved by the Court.  Is that what you

4  testified earlier?

5  A    Right.

6  Q    And that potential for $800,000 is measured against

7  $620,000 in claims right now.  Is that right?

8  A    If the Chase claim is approved, yes.

9  Q    $43,000 in Trustee's fees.

10  A    Yes.

11  Q    $100,000 in legal fees.  Is that right?

12  A    I think it would be more than $100,000, plus the

13  additional attorney fees that were being heard in the adversary

14  proceeding.

15  Q    And what's your estimate of those fees?

16  A    It depends.  Fifty to a hundred or more thousand dollars.

17  It depends, again, is where -- I'm just looking at the

18  Fitzgerald case and funds and --  or have to pursue all the

19  other causes of action, all the other cases, all the other

20  causes of action in the adversary.

21  Q    In your estimate, that I think you testified with

22  Mr. Young, is it would cost you $50,000 to pursue the

23  Fitzgerald fees, to recover $1.35 million.  Is that right?

24  A    To judgment, not the collection of all of that.  But to

25  complete the discovery, 50,000 is what I estimated after

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 42 of 119

1  talking to Mr. Young.

2  Q    And if you don't do that, as of -- if your legal fees are

3  what they are right now, that would total less than $800,000.

4  Is that right?

5  A    Go back through the numbers.

6  Q    Sure.  So you got $180,000.  That's the difference between

7  620,000 and 800,000, right?

8  A    Right, right.

9  Q    And then between, you know, current Trustee's fees and

10 current legal fees, you got $143,000, right?

11 A    Right.

12 Q    So as you sit here right now, that would leave $37,000.

13 Is that right?

14 A     It would help if I could write things down.  Can we start

15 back over with those numbers?  And then, of course, there's --

16 there are other administrative costs.  There's accountant fees,

17 there's bank fees that come out of the bankruptcy banking

18 account every, every month.

19      But to talk about the just the ones that we have mainly

20 been talking about, the $370,000 in claims that include the

21 Konvalinka and the McCarthy claim, 250,000 if that was

22 approved, that would be the 600-something thousand dollars.

23      Then $50,000 more in the adversary, $43,000.  I feel like

24 I'm leaving out something.  But I, but I think when I was

25 looking at all of the figures, it was like, if I ended up in

1  all of that -- if I collected 800-and-something thousand

2  dollars and I could limit the expenses to around that, then I

3  would be able to pay all the claims in the case if we settled

4  for the $250,000.  But it could be, you know, it may be likely

5  that there could be those additional attorney fees that we

6  talked about.

7  Q   But if the adversary proceeding were conceded today and

8  you didn't have to pay Mr. Young anything further, you've got

9  more at your disposal -- you have $800,000 at your disposal

10 against $743,000 in expenses that you testified to.  Isn't that

11 right?

12 A   So if -- you're saying if we were -- if I was to reach an

13 agreed settlement with the defendants in the lawsuit for

14 $715,000.

15 Q   Yes.

16 A   Okay.  And then so where the $715,000 was paid to the

17 estate, the claims of Chase were --

18 Q   Sorry, before you get there --

19 A   Pardon me?

20 Q   I'm sorry.  Before you get there, plus the $85,000 that

21 you're already holding

22 A   Right.

23 Q   So that totals --

24 A   So that'd be the 800, right?

25 Q   Eight hundred.  So the math problem I'm trying to do is

ACCESS TRANSCRIPTS, LLC            1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 44 of 119

1  800 minus 620,000, that leaves 180,000, correct?

2  A    I'm totally confused here.

3  Q    The value of the claims, as you've ascribed value to them

4  today, is $300,070-ish, and $250,000.  Would you say --

5  A    Which would be --

6  Q    Total $620,000.

7  A    That's correct.  That's right.

8  Q    So I'll just represent to you that that is $180,000 less

9  than $800,000.

10  A    So then on top of the claims, it'd be 680, and there's

11  100,000 of outstanding, or more outstanding already attorney

12  fees, 43,000 in Trustee compensation.  Yeah, so I think the

13  only thing we would be backing out there was the $50,000 and if

14  we didn't have to incur any of the other money in the adversary

15  proceeding.

16  Q    That's right.  And 620,000 plus 143,000 is less than

17  800,000.

18  A    Yes.

19  Q    So as it stands, if that case were to resolve today in

20  your favor, it would be a surplus.  Wouldn't it?

21  A    Oh no.  I don't know what the accountant fee is going to

22  be.  I don't know that we're -- I don't think we're going to

23  have any tax liability in the case, but I don't know that.

24  Q    But as you sit here today, you can't tell the Court that

25  those fees would total greater than $37,000.  Can you?

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 45 of 119

1 A    I don't know.  I don't know.

2        MR. SPRAGENS:  I don't have anything further at this

3 time, Your Honor.

4        MR. YOUNG:  Your Honor, may I be permitted to ask

5 just a couple of follow up questions on those kind of new

6 items?

7        THE COURT:  I'll allow it since you're in unchartered

8 territory right now.

9                    RECROSS-EXAMINATION

10 BY MR. YOUNG:

11 Q    Ms. Burton, Mr. Spragens was just asking you about what

12 would happen if this adversary proceeding ended today.  Has

13 there been any sort of suggestion that the defendants would

14 just give you the 715 today?

15 A    No.

16 Q    And in fact, the only way using Mr. Spragens's

17 hypotheticals, that there would be a surplus in this case is if

18 they settled the AP, and if the Chase claim settlement were

19 approved by this Court, which Mr. Manookian has opposed, right?

20 A    Correct.

21        MR. YOUNG:  Those are the only questions I have, Your

22 Honor.

23        THE COURT:  Anything else?

24        MR. SPRAGENS:  No, Your Honor.  I'm happy to argue

25 the standing issue whenever the Court is ready to hear

1  argument.

2       (Witness excused)

3            THE COURT:  All right.  Mr. Young, any additional

4  evidence?

5            MR. YOUNG:  No, Your Honor.  Thank you.

6            THE COURT:  All right.  Proceed.

7            MR. SPRAGENS:  Your Honor, I'm not going to belabor

8  this too much because we've done a lot of math today.  I do

9  think that, you know, by any fair measure, including the

10 testimony that Ms. Burton just gave to Mr. Young, if she has to

11 proceed further, she spends another $50,000, and that's a fee

12 that Mr. Young is giving her.

13           I mean, I a lot of this -- these estimates happen to

14 add up to just beyond what the available funds are, which is a

15 tough position to put an objector to a settlement in when it

16 all adds up to just beyond what the corpus of the estate is as

17 the Trustee has valued it.

18           It is a difficult situation to be in as an objector

19 when the Trustee doesn't have an inventory of the value of the

20 assets in the estate, that she's alleged are worth a lot,

21 including a lot of settlements that could total in the millions

22 of dollars.

23           But she has testified that you know, based on where

24 things stand right now, she's $37,000 shy of the $800,000

25 threshold.  She also testified that she'd have to spend another

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 47 of 119

1 $50,000 to prosecute the adversary proceeding, just to get the

2 one fee that she says is worth $1.35 million.

3       That's a no-brainer for a plaintiff lawyer like me,

4 at least. That's a good investment. And if she does that,

5 then she has increased the value of the estate, of the estate

6 substantially. It certainly becomes a surplus case at that

7 time.

8       So in my view, whether you calculate it as we sit

9 here today, or you calculate it based on the reasonable

10 expectation of what will happen if all of the allegations that

11 she's made in the adversary proceeding are credited and proved,

12 and she has, you know, now testified under oath that they are

13 true.

14       Then you know, either way, it's a surplus case.

15 Whether it's based on what's been spent to this date, or what

16 will be spent if she pursues the, frankly, millions of dollars

17 of claims that she believed the estate had, or the assets, if

18 she recovered the millions of dollars of assets, that she

19 believed the estate has.

20       The fact that the Trustee doesn't have an inventory

21 of these assets that I can ask her about, after she has put off

22 prosecuting the adversary proceeding all these times, and now

23 seeks to estop us from making arguments about the propriety of

24 the $250,000 settlement, it's a pretty difficult situation

25 further for an interested party to be put in.

ACCESS TRANSCRIPTS, LLC     1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 48 of 119

1    So the doctrine of standing is not meant to prevent

2  the Court from looking at the substantive issues in a case,

3  whether it's a bankruptcy case, or any other case.  The

4  showing, you know, if it is the plaintiff's burden to show, I

5  put on the Trustee herself, not a friendly witness or Mr.

6  Manookian to testify.

7    I put on the Trustee and asked about her allegations

8  and her valuation of the claims in the estate.  And the best

9  that Mr. Young could get her to say is that she may not be

10 likely to collect the judgment.

11    You know, that's -- we're in a preponderance of the

12 evidence world, and this is a threshold issue of whether the

13 Court is entitled to entertain objection to the propriety of a

14 settlement where, as we can discuss later, perhaps, you know, a

15 zero dollar judgment that was vacated at the highest levels has

16 now -- is being proposed to be settled for $250,000, and there

17 are people involved who have been on different sides of that

18 transaction, all here asking the Court to approve it, and to

19 prevent somebody from raising an objection to it, so the Court

20 doesn't have the opportunity to consider it on its merits.

21    The Doctrine of Judicial Estoppel that Mr. Young

22 raised in his papers is not appropriate here.  It's not meant

23 to estop someone who hasn't affirmatively come into Court and

24 made a bunch of representations about the value of all these

25 assets, and the value of the estate, that the Trustee has, has

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235    Doc 158-1    Filed 10/28/21    Entered 10/28/21 22:52:18    Desc
Exhibit 9/29/2021 Hearing Transcript    Page 49 of 119

1 made.

2        And the Trustee is the one who speaks on behalf of

3 Cummings Manookian. Mr. Manookian doesn't have the ability to

4 do that right now. The Trustee is the one who is charged with

5 knowledge of the estate, and the fact that she cannot tell the

6 Court the status of all these cases that Cummings Manookian is

7 entitled to collect fees in and then uses that ignorance as a

8 shield and then further as a sword to try to prevent

9 Mr. Manookian from objecting to a settlement, that is not the

10 way judicial estoppel works.

11        She is the one who's taken positions in this case,

12 and now her argument asks this Court to rely on the opposite

13 positions in this case. But she's the one who initiated the

14 adversary proceeding and purports to be able to prove all of

15 those and, as she sits here today, still testified that she'll

16 prove all of those.

17        So for all these reasons, I believe that, you know,

18 we've shown that this is a surplus case, it falls into that

19 exception. It is more likely than not to be a surplus case,

20 and that's whether you measure it at this time, or after Mr.

21 Young pursues the adversary proceeding to its fullest and

22 recovers 1.35 million, or maybe, you know, 10.35 million,

23 depending on what they prove in the adversary case.

24        But it would not be appropriate for them to take one

25 position in the adversary proceeding, and then ask this Court

ACCESS TRANSCRIPTS, LLC   ⚖   1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235 Doc 158-1 Filed 10/28/21 Entered 10/28/21 22:52:18 Desc
Exhibit 9/29/2021 Hearing Transcript Page 50 of 119

1 to let them take the opposite position here, and thus not reach

2 the merits on its own objection.

3        I'm happy to answer any questions Your Honor has or

4 just be quiet.

5        THE COURT:  You mentioned judicial estoppel.  Did

6 Mr. Manookian sign the petition?

7        MR. SPRAGENS:  He did sign the petition to initiate

8 the bankruptcy, yes, Your Honor.  That's my understanding.

9        THE COURT:  And with that petition, he made certainly

10 representations about the assets and the value of those assets

11 at that time, on the schedules.  Is that correct as well?

12        MR. SPRAGENS:  Yes.  That's my understanding.

13        MR. YOUNG:  Yes, Your Honor, thank you.  Phillip

14 Young on behalf of the Trustee.  Let me start where the Court

15 left off.  Not only did Mr. Manookian sign the schedules, he

16 doubled down by signing an affidavit in the adversary

17 proceeding saying that the Trustee's cause of action had no

18 value.

19        That they were without merit and I pointed that out

20 in one of our briefs, and we'd ask the Court to take judicial

21 notice of that affidavit, as well as the petition.

22        And I also want to point out that Mr. Spragens is not

23 exactly correct.  The Trustee has never taken a position in

24 this case, that there'd be a surplus.  He's taking the position

25 that there are meritorious claims, and we still take that

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 51 of 119

1 position.

2          But that's a far cry from saying that there's a

3 surplus and the Trustee walked the Court through that, and

4 through all the variables.  But -- and I'm going to try to

5 short circuit this.  Mr. Manookian simply isn't a creditor in

6 this case.

7          He's the, he's the former principal, the debtor, so

8 there's only two ways he'd get standing.  One is if this issue

9 involves the debtor's exemption.  It clearly does not.  The

10 second is if he proves, that it's his burden to prove, with

11 concrete evidence, that's what the Court said -- the case law

12 says, is he proves with concrete evidence that this is likely

13 to be a surplus estate.

14          And I'll re-raise the issue I raised at the very

15 beginning of this, which is he's estop from even taking that

16 position.  He's not just estop from testifying to that, because

17 he's already testified to the opposite, he's estop from taking

18 that position, from making that argument.

19          We don't think he even gets through the courthouse

20 doors, so to speak, on proving his burden, that this is a

21 surplus estate.

22          Furthermore, the only, the only evidence offered

23 interview he case was the testimony of the Trustee who said

24 bluntly that she does not believe this would be a surplus

25 estate.  She's walked the Court through the -- all the

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 52 of 119

1  variables.  There are a lot of variables.

2       And as we cited in our plea, I know the Court has

3  read our pleadings, as we cited in our pleadings, case law says

4  when there's contingent litigation like this, you have to

5  discount that greatly.  You can't just say, hey, the Trustee

6  sought $1.3 million, therefore, this is going to be a $1.3

7  million estate.

8       You have to discount that for risk of litigation, for

9  cost of litigation, for risk of collection, for cost of

10  collection, and in a case like this, and maybe especially a

11  case like this, where we've got very litigious parties, where

12  collection of anything beyond 715 is far from guaranteed.

13       The Court needs to take that into consideration when

14  weighing all this, and I think the Trustee's testimony that

15  there is no surplus -- will be no surplus in this case, is spot

16  on and I think it should carry the day.

17       So, Mr. Manookian is not only estopped from arguing

18  that he, that he's got standing because there's going to be a

19  surplus.  In fact, the only proof he put on proved the

20  opposite.

21       So he's neither carried his burden, nor can he

22  overcome the estoppel.  So for that reason, we believe the

23  Court should find that he has no standing.

24       THE COURT:  All right, thank you.  The Court

25  appreciates both parties argument today.  Appreciate the

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 53 of 119

1 Trustee's testimony. Hard to be the Trustee when you're
2 testifying against yourself in some respect. But I appreciate
3 the credibility in the Trustee today.

4 And the Court makes special note of that, that the
5 Trustee's testimony is credible with respect to the uncertainty
6 going forward in the case, and the many factors that go into
7 whether, in fact, certain monies are collected for judgments,
8 are in fact collected. And so the Court will make special
9 mention of the Trustee's credibility.

10 I examined the papers that have been filed, and we're
11 here today to determine whether Brian Manookian has standing to
12 prosecute his objection to the Trustee's settlement. After
13 reviewing the case, hearing the testimony from the Trustee and
14 the arguments of counsel, the Court finds that Brian Manookian
15 does not hold a claim against this estate as already expressed
16 by Mr. Young, and confirmed by the papers and pleadings, the
17 petition, statements, and schedules that have been at issue in
18 this case.

19 Mr. Manookian, to date, has not offered any concrete
20 evidence, and I'll use that same word that Mr. Young has used,
21 that this is a surplus case. What has been shown is there are
22 many variables. As I've already mentioned, that go into
23 determining the exact monetary value of bankruptcy estate.

24 In this instance, the burden was on Mr. Manookian to
25 produce something tangible and concrete that the Court could

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 54 of 119

1  rely on in making a determination that the it's a high

2  likelihood that this case would be a surplus case.

3          In fact, what we have is a case that is ripe with

4  potential expenses to pursue assets and obtain judgments, and

5  ultimately, collect money, that clearly has a dollar figure to

6  it.

7          The Bankruptcy Court is well aware through thousands

8  of cases, that a judgment is something, but collecting it is

9  something else.  And in fact, in this case, where there's been

10 no evidence that there will be an easy win on anything, the

11 estimates for legal fees, the Court will take, while they seem

12 quite reasonable, if not underestimated based on what has been

13 seen so far in this case, and what historically Chapter 7

14 Trustees have expended on similar or same cases, to actually

15 collect monetary judgments.

16         So for these reasons, the Court finds that Brian

17 Manookian does not have standing to object to the Trustee's

18 motion for approval of the settlement, with the Chase

19 claimants.  Therefore, that objection is moot.

20         The Court would further point that the Court is

21 addressing that issue in the second phase of this hearing, in

22 which there is a party withstanding, who has objected.  So in

23 fact, Mr. Manookian, he doesn't get his day in court, but the

24 issue gets its day in court.

25         So in fact, even if there were harm to Mr. Manookian,

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 55 of 119

1  there is no harm to Mr. Manookian because the Court still is

2  addressing the sufficiency of the settlement agreement in which

3  the Trustee is attempting to enter into.

4         With that said, Mr. Young, if you could prepare the

5  appropriate order, which finds Mr. Manookian does not have

6  standing, and that his objection is therefore moot.

7         MR. YOUNG:  Yes, Your Honor.

8         THE COURT:  All right.

9         MR. SPRAGENS:  One housekeeping question about the

10 next part of the hearing.  I would just ask, for the record,

11 that I be allowed to examine any witnesses for the purpose of

12 proper -- for any appeal.  I just wanted to get a ruling from

13 the Court on that.

14        THE COURT:  Court, Mr. Young, I'll let you respond to

15 that.

16        MR. YOUNG:  Your Honor, we would object to that.  The

17 Court's already found that there is no standing.  So Mr.

18 Spragens has no role in this, from this point forward.

19        THE COURT:  The Court will not allow additional

20 questioning since we resolved your client's role in this

21 proceeding.  Then the standing issue, I think, is definitive of

22 your ability to ask questions in the second phase of this

23 hearing.

24        MR. SPRAGENS:  Thank you, Your Honor.

25        MR. YOUNG:  Your Honor, if I may, I'd like a little

ACCESS TRANSCRIPTS, LLC     1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 56 of 119

1 bit of clarity on one point the Court just raised.  And that is

2 the extent, and I just need to know this so that I can present

3 the appropriate evidence on direct, the extent to which the

4 Court will allow Mr. Konvalinka to essentially argue Mr.

5 Manookian's objection.

6          Obviously, there were very different things raised in

7 the two motions.  So I just need to know if the Court, and

8 frankly, most of the stuff in Mr. Manookian's -- if not all the

9 things in Mr. Manookian's objection are going to be

10 inadmissible under Federal Rule of Evidence 408, but I just

11 need to know what kind of direct -- wants me to go ahead and

12 address the issue in direct, of Mr. Manookian's objection.

13          THE COURT:  Don't construe anything from my comment.

14 I was merely -- the subject is being addressed, not the merits

15 or the particularities that Mr. Manookian raised.  And I think

16 Mr. Konvalinka is well aware that he needs to stick to what

17 he -- what his objections are, since there's been no notice to

18 you as to anything outside of that.

19          We ruled on Mr. Manookian's standing issue.  So we'll

20 take up the objections that are before the Court at this time.

21          MR. SPRAGENS:  And the only reason I raise that, Your

22 Honor, is because on the witness and exhibit list, Mr.

23 Konvalinka filed on Monday, he listed Mr. Manookian as a

24 potential witness, and said that he intended to call Mr.

25 Manookian to testify as to these issues about the prior offers

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 57 of 119

1 back with the Chase claimants.

2    And so I would just like to note, if the Court's
3 going to let him go beyond the four corners of its own
4 objection, and argue Mr. Manookian's objection, then you know,
5 I need to put on the appropriate evidence.  If the Court's
6 going to require Mr. Konvalinka to stick to the four corners of
7 his own objection, then we can obviously expedite this
8 considerably.

9    THE COURT:  Mr. Manookian's objection is mooted.
10 Therefore, Mr. Konvalinka, your objection is the only objection
11 before the Court.

12    MR. SPRAGENS:  And I hear the Court.  But the only
13 thing I will respond is, so there is notice in the sense that I
14 did give notice of Mr. Manookian's appearance in connection
15 with this matter, as a witness.  And I did not know all the
16 things that were alleged in Mr. Manookian's objection, because
17 I became aware of those when I listed him as a witness.

18    And to suggest that somehow, just because the
19 objection that I filed, which I think is meritorious in and of
20 itself, that I am amenable with regards again, a situation in
21 which I should be allowed to call a witness that I have
22 identified, and have indicated to counsel that I was going to
23 do so.

24    And suggesting I have not done so is incorrect by
25 reason of the facts, that I've actually listed the witness and

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 58 of 119

1  I've actually listed the topics as well.

2        THE COURT:  And the Court will say you're free to

3  call which witness you want to call, and Mr. Young's free to

4  object to the questions you ask that witness.  And the Court

5  will rule on them, if we have to rule one by one, we'll rule

6  one by one.

7        MR. SPRAGENS:  All right.

8        MR. YOUNG:  Your Honor, I'm ready to proceed with

9  calling Ms. Burton, and I'd suggest to the Court, for

10 efficiency's sake that we proffer her testimony.  I'll offer

11 that to the Court.

12       MR. SPRAGENS:  And Your Honor, I would object to

13 that.  I have not had an opportunity to cross-examination this

14 witness, and I would like to have that opportunity with regard

15 to what her testimony is going to be, as opposed to Mr. Young's

16 testimony.

17       THE COURT:  Well, you'd still have the opportunity to

18 cross examine her, but you're objecting to the proffer all

19 together?

20       MR. SPRAGENS:  Yes, I am.

21       THE COURT:  I will sustain the objection.  Call your

22 witness, Mr. Young.

23       MR. YOUNG:  Thank you, Your Honor.  I'll call Jeanne

24 Burton.  And Your Honor, just as a matter of housekeeping, can

25 I ask Mr. Konvalinka to use his microphone because there's some

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 59 of 119

1 background noise there.  Thank you.

2          I think Ms. Burton's already been sworn in, so I

3 don't know if she needs to be sworn in again.

4          JEANNE ANN BURTON, TRUSTEE'S WITNESS, SWORN

5          THE COURT:  You're still under oath, Ms. Burton.  We

6 won't re-swear you.  But you are still under oath.

7          THE WITNESS:  Yes, Your Honor.

8          MR. YOUNG:  And again, for the record, my name's

9 Phillip Young.  I'm counsel for Ms. Burton.

10                    DIRECT EXAMINATION

11 BY MR. YOUNG:

12 Q    Ms. Burton, what's your occupation?

13 A    Chapter 7 Trustee and attorney.

14 Q    How long have you been serving as a bankruptcy Trustee in

15 this district?

16 A    Twenty-four years.

17 Q    Were you appointed to serve as the Trustee for Cummins

18 Manookian, PLC?

19 A    Yes.

20 Q    Do you remember when that was?

21 A    November the 6th, 2019.

22 Q    Are you still serving in that capacity today?

23 A    Yes.

24 Q    When you were first appointed Trustee in this case, what

25 were some of the major issues that you identified as central

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 60 of 119

1  issues in this case?

2  A    There was a judgment that had been entered in favor of

3  what I would call the Chase parties, that was on appeal, and

4  oral argument was set for the Court of Appeals in January,

5  early January, like January 6th, or January 8th, early January.

6        And then there was also a receivership proceeding because

7  while the judgment was on appeal, the collection had not been

8  stayed.  So a receiver had been appointed and there was a

9  contested matter regarding that 715 -- well, actually more than

10 $715,000 because the -- there was going to be a contested

11 proceeding as to whether or not the Court, the State Court

12 would continue to hold those monies or if that would be

13 released.

14 Q    Did the Chase parties ultimately file a claim in this

15 case?

16 A    They did.

17 Q    How much was that claim?

18 A    It was a secured claim for 806-something thousand dollars.

19 Q    And tell the Court what the basis of that claim was.

20 A    It was an award, a contempt and sanctions award which was

21 the amount of the attorney fees that the Chase parties proved

22 were -- that they had expended in revealing who disclosed what

23 was potentially, or they considered, or was confidential

24 information to news media and other, other entities at the

25 time, in a nutshell.

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
          Exhibit 9/29/2021 Hearing Transcript    Page 61 of 119

1 Q    Who were the judgment debtors under that sanction

2 judgment?

3 A    Brian Manookian, Cummings Manookian, Mark Hammerfold, and

4 Mr. Hammerfold's law firm.  I think it was Hammerfold, LLC.

5 Q    Did you review any documents to inform yourself about the

6 sanctions judgment?

7 A    Yes.

8 Q    What documents did you review?

9 A    All the documents that were available off of the Court of

10 Appeals website.  The Cummings Manookian, and Brian Manookian's

11 brief, appellate brief.  The Chase parties brief.  I did review

12 the State Court judgment order.

13 Q    You just mentioned the Court of Appeals.  When the case

14 first got filed, were you aware that the sanctions judgment had

15 been appealed to the Court of Appeals?

16 A    Yes, because I was contacted about was I going to be

17 released on this day for that to go forward, because oral

18 argument was set in January, and the case was filed in

19 November.

20 Q    Had exaction on the sanctions judgment been stayed?

21 A    No.

22 Q    Had Cummings Manookian appealed the sanctions judgment?

23 A    It did not.  It didn't.  That was one of the things --

24       MR. SPRAGENS:  Objection, Your Honor, as to

25 foundation and as to her know with regard to that.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 62 of 119

1          MR. YOUNG:  I'm sorry, Your Honor, I didn't hear your

2   response.

3          THE COURT:  And your response to the objection?

4          MR. YOUNG:  Yes.  I'm asking her about her, if she

5   was involved in this as the Trustee for one of the judgment

6   debtors and I'm asking her whether she was aware whether or not

7   they had appealed the sanctions judgment.

8          THE COURT:  As a panel Trustee in charge of this

9   case, she's in the best position, and clearly has knowledge, so

10  I'll allow the testimony.

11         MR. SPRAGENS:  Again, just let me note for the record

12  that I do object and there is obviously an appeal that was

13  filed on behalf of Cummings Manookian, as evidenced by the

14  notice of appeal that was filed.

15         MR. YOUNG:  I'll continue.

16  BY MR. YOUNG:

17  Q   Ms. Burton, you already answered that question.  What

18  about Brian Manookian?  Had he appealed the sanctions judgment?

19  A   He did.  And I communicated with Mr. Konvalinka because it

20  appeared that Cummings Manookian, and Brian Manookian appealed

21  the order, one of the orders for recusal.

22      But only Brian Manookian appealed the sanctions judgment

23  and Mr. Konvalinka, who represented Cummings and Manookian at

24  -- during part of that, and actually, an attorney in that

25  appeal, until he withdrew.  He said he didn't recall.

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 63 of 119

1  Q    Did the Court of Appeals -- well, let me go back.  He

2  didn't recall what?

3  A    He didn't recall if the, if the Cummings Manookian

4  appealed the sanctions judgment.

5  Q    Did the Court of Appeals ultimately make a ruling on the

6  sanctions judgment?

7  A    Not on the -- well, not really on the sanctions judgment.

8  It ruled that the judge should have recused himself and based

9  on that, they vacated the sanctions judgment, for it to go

10 back, be assigned to a new judge and reheard.

11 Q    And when was that order issued by the Court of Appeals?

12 A    February 20, '21 maybe.  I think that's right.

13 Q    Did the Court of Appeals make any finding regarding

14 whether the sanctions were actually warranted?

15 A    No.

16 Q    Did any part appeal the Court of Appeals' decision to the

17 Supreme Court?

18 A    The Chase parties did.

19 Q    And did the Supreme Court accept cert?

20 A    It did not.

21 Q    So now that the judgment's been vacated, what's your

22 understanding of what's going to happen to the sanction issue

23 involving the Chase partners?

24 A    A new judge --

25         MR. SPRAGENS:  Again, Your Honor.  I object to

ACCESS TRANSCRIPTS, LLC            1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 64 of 119

1  hearsay and foundation.

2          MR. YOUNG:  Your Honor, I'm asking her opinion as a

3  lawyer and Chapter 7 Trustee records, in the interest of (audio

4  gap).

5          THE COURT:  I will allow the testimony.

6  BY MR. YOUNG:

7  Q   Let me ask that question again, Ms. Burton.  Now that the

8  judgment's been vacated, what's your understanding of what's

9  going to happen to the sanctions issue involving the Chase

10  parties?

11  A   That the -- that a new judge will be appointed and it will

12  start basically all over from the beginning.  I think there was

13  a, there was a motion to rehear, or for clarification filed by

14  the Chase parties about -- well, there's something about

15  retroactive vacation of the, of the judgment.  But anyway, the

16  Court of Appeals from what -- the way I read the order, was

17  that it would go back and start over.  That the new judge would

18  need to see new witnesses, you know, not just decide something

19  on the record, review of the record and make a decision.  That

20  it would start over.

21  Q   To the best of your knowledge, has a new judge been

22  appointed?

23  A   I know things have been filed, but I don't know anything

24  about a new judge being appointed yet.

25  Q   Do you know how long it took to try the sanctions issue

1  originally?

2  A    I think just the sanctions issue, which is a, kind of a

3  case within another case, I think that was over two and a half

4  years, two years, two and a half years.

5  Q    Based on that and your experience in this case, do you

6  think the rehearing is likely to be lengthy?

7  A    I'm sorry.  I --

8  Q    Let me ask the question again.  Based on that, and based

9  on your involvement in this case, do you expect the rehearing

10 to be lengthy litigation?

11 A    I think, I mean, I do, unless the parties decide something

12 different.  But I don't, I don't expect that to happen, so I do

13 expect that it will start over from the very beginning.

14 Q    I want to ask about your process of reviewing claims in

15 this case.  When did you start reviewing claims in this case?

16 A    Well, I reviewed claims when they're filed.  You know, I

17 always take a look at them and see if there's, you know, if

18 they're lacking something or you know, there's no attachment,

19 or anything like that.

20      But I really started addressing the claims once, once the

21 Court of Appeals vacated the judgment, because now, the Chase

22 claim was not, it wasn't liquidated, and so I started, you

23 know, trying to figure out, okay, what are we going to do about

24 that.  What are the other claims that should be allowed?

25      I already knew that there were claim objections that, that

1 needed to be filed and those objections resolved.

2 Q    And approximately when did you start that evaluation?

3 A    It was probably March.  It was after the appellate court.

4 I think the objections that I filed were in May, but I started

5 looking at all of that probably March, March, April.

6 Q    And so you did file some claim objections in this case.

7 A    Correct.

8 Q    When did you first begin discussing a potential settlement

9 with counsel for the Chase parties?

10 A    It was early April.

11 Q    So had the Court of Appeals ruled at that time?

12 A    It had.

13 Q    Had the Supreme Court ruled at that time?

14 A    No.

15 Q    In your opinion, did you think --

16 A    No, but it hadn't been appealed to the Supreme, the

17 Supreme Court yet at that, at that time

18 Q    So this was after the Court of Appeals had ruled, but

19 before any brief had been filed with the Supreme Court, right?

20 A    Yes.  When I first started discussing settlement, yes.

21 Q    At that time, did you think it was likely that the Supreme

22 Court would overturn the Court of Appeals decision?

23 A    No.  I didn't.  I didn't.

24 Q    So in your settlement discussions, did you ever make the

25 presumption that the Supreme Court was going to take cert?

ACCESS TRANSCRIPTS, LLC        ⚖        1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 67 of 119

1    A    I think it was generally thought that, at least from my

2    perspective, that the Supreme Court, I can't say for the Chase

3    parties, but that the Supreme Court would not.  But it could

4    have, but I didn't think so.  It seems kind of a little low bar

5    that the, that just the appearance of bias was enough to

6    reverse a recusal order, and vacate the judgment.

7         There were some interesting issues.  There were other

8    issues but I generally did not think that the Supreme Court

9    would accept cert.

10   Q    And just for clarity, that was, that was your opinion, not

11   necessarily anybody else's.

12   A    Correct.  Correct.

13   Q    Who had the majority of the settlement discussions with

14   the Chase parties?

15   A    I did.

16   Q    Directly?

17   A    Not with the Chase parties, but with their attorney.

18   Q    Who did you talk to?

19   A    Dan Puryear and Charlie Malone.

20   Q    When did ask special counsel to get involved in those

21   discussions?

22   A    Really when it came time to like formalize the settlement

23   offer and what the terms of the settlement would be, I guess

24   you'd say when we get ready to, to paper it, or to make, you

25   know, the final offer of settlement.

ACCESS TRANSCRIPTS, LLC        ⚖        1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 68 of 119

1  Q    You had already made the decision at that point.

2  A    That's correct.

3  Q    Who made the decision to offer to allow the Chase claimant

4  $250,000?

5  A    I did.

6  Q    And who communicated that to counsel for the Chase

7  parties?

8  A    The formal offer came from me, but I had had discussions

9  with the attorneys for the Chase parties about it.

10 Q    And did counsel assist you in drafting that settlement?

11 A    Yes, she did.

12 Q    Let's talk about the terms of that settlement.  You're

13 proposing to allow the Chase claim what amount?

14 A    $250,000.

15 Q    Is that a secured claim or an unsecured claim?

16 A    As an unsecured claim.

17 Q    How was the claim filed?  Secured or unsecured?

18 A    It was filed as a secured claim.

19 Q    And are mutual waivers included in the settlement

20 agreement?

21 A    Yes.

22 Q    Can you explain to the Court why it was important for you

23 to get a waiver from the Chase parties?

24 A    Well, it's just always good practice, you know, when

25 you're -- just like in any settlement, you don't always know

ACCESS TRANSCRIPTS, LLC  1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 69 of 119

1  what possibly might be out there, what somebody might come up

2  with, and every settlement agreement that I have been presented

3  with in my time as Trustee, always asks for release of the

4  other party, and I just always make sure that it's a mutual

5  release of the, of the parties.

6      But I also want to do it to, you know, include anything

7  else that would, that would come up, or that was pending in a

8  case, like the order that reserves their rights to challenge

9  whether or not $25,000 that was paid to the estate, that I

10 claimed was a preference.

11     They reserved their rights to dispute that, but did agree

12 that it could be turned over to the bankruptcy estate.

13 Q   So getting a release of that reservation rights, did you

14 consider that to be beneficial to the estate?

15 A   It was.

16 Q   I want to discuss with you what factors you considered

17 when agreeing to the proposed settlement.  Just walk the Court

18 through some of the factors that you considered.

19 A   Okay.  So you're looking at assets, we've kind of been

20 through that, what you think your assets are.  And then what

21 the claims are, and you know, what the cost of everything is,

22 and trying to maximize or be able to make, you know, a, a

23 meaningful, try to make a meaningful distribution to the

24 creditors.

25     And so there were, there were several things.  There was,

1  obviously, the Chase claim did not -- was -- did not get

2  liquidated, and so it's going back, and the estate was, in

3  order to have to have counsel, and in that matter, to take the

4  interest of the estate and really the other creditors because

5  you know, that had claims, that had allowed claims.

6       And to maximize what, you know, what I would be able to

7  pay creditors.  And what amount, that Mr. Konvalinka made a

8  statement about, the numbers were so close, well, it's because

9  I'm trying to figure out what the, you know, what exactly these

10 expenses would be.

11      What did I think that they, you know, the least amount

12 that I would be willing to offer to the Chase parties to settle

13 a disputed claim, and still be able to pay the claims of the

14 other, the other allowed, the other allowed claims.

15      And so you know, 250 kind of came up, you know, with that.

16 Kind of lined all of that up, but also taking into

17 consideration that, that State Court litigation and what the

18 cost would be, and what the risk would be, that there can be

19 another hefty sanctions judgment against Mr. Manookian and

20 Cummings Manookian, that would just, you know.

21      And then they're the biggest creditor in the case with the

22 lion's share of the money going to them, and you would have --

23 now would have, you know, incurred all of those expenses, and

24 since we talked about, you know, how that impacted -- would

25 have impacted the adversary expenses in that case, as it went

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 71 of 119

1  forward.

2        And you know, and the big elephant in the room, I had

3  $85,000 in the case, and already over $100,000 in just attorney

4  fees, not to mention Trustee compensation.  I still had to

5  hire, you know, employ an accountant and all of those things,

6  just getting administrative costs.

7        And then having to consider employing counsel to represent

8  the estate in that State Court action, and how to compensate

9  that attorney and, you know, when.  Find somebody that would

10 agree to that.

11       So yeah, I think that that's pretty much the -- sorry if

12 that was jumbled, but that was sort of my thought process of

13 all of it.

14 Q    No, that's fine.  One of the things you mentioned just a

15 minute ago was risk.  Did you consider the likelihood of

16 whether you thought a new judge would issue sanctions against

17 Brian Manookian and Cummings Manookian?

18 A    I did.

19 Q    What was your conclusion?

20 A    Anything can happen, but looking at the briefs, the

21 appellate briefs of both parties, and the, the State Court

22 order, and the Court of Appeals order, you know, that says, you

23 know, it didn't make any comment about the sanctions.

24       The Court did say that the judge had done a thorough or

25 complete analysis of the very serious allegations.  And that

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 72 of 119

1  the judge had been exceedingly, or extraordinarily patient with

2  the parties.

3       And so I just -- the facts are going to be the same.  I

4  think everybody, when you go back and retry something,

5  everybody's trying to up their game, and you know, cover things

6  that may not have been covered before.

7       But in my view, it was likely that a new judge would issue

8  a similar sanctions judgment.  That's a risk, that was the

9  risk.

10 Q   In your view, is there any chance that the sanctions

11 amount could increase at the rehearing?

12 A   Well, it could, but I mean it could because based on

13 attorney fees that the Chase parties had expended in proving

14 the grounds for the sanctions, obviously, they had incurred,

15 you know, other attorney fees after that, after that time.

16      So I don't know if the Court -- it's possible, but I don't

17 know if the Court would allow them their additional, additional

18 fees or not.  But it's a possibility.

19 Q   In your view, after considering all this that you just

20 described to the Court, do you think there's a substantial risk

21 that the sanctions awarded as Cummings Manookian could exceed

22 250,000 on rehearing?

23 A   I think it could have.  I think it could have.

24 Q   Did you give any -- well, I think you mentioned earlier

25 that you considered expenses that might be involved to the

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 73 of 119

1  estate regarding the rehearing, right?

2  A    Right.

3  Q    What was your conclusion about what expenses could be for

4  the rehearing?

5  A    Well, litigation is very expensive.  That was, you know,

6  both parties, the Chase parties and the Manookian parties, and

7  Hammerfold, that you know, it was, it was very, it was very

8  aggressively litigated by, by both sides, and I think it's safe

9  to assume that it would be again, and that, you know, it would

10 be, it would be expensive for everybody again.

11      It would be expensive for the Trustee to employ an

12 attorney.  There'd be a long, you know, it'd be, probably be

13 another long period of time.  I don't know if it'd be two and

14 a half years, but I think it would be substantial.

15      And that was, sorry if I digress, that was another

16 consideration in trying to work out a settlement with the Chase

17 parties was the efficient administration of the estate, and the

18 time to get the estate that administration concluded, and

19 distribution to creditors.

20      But anyway, it would be expensive, and --

21 Q    I want to come back to the efficient administration issue

22 in just a minute.  But I want to say on sort of the expense

23 issue with regard to the rehearing.  Did you come up with an

24 estimate, a legal expense estimate of what it would cost to

25 rehear the case?

1  A    I estimated about $150,000.

2  Q    Would you have to retain special counsel to represent you

3  in that case?

4  A    Yes.

5  Q    That would have to be approved by the Court?

6  A    Yes.

7  Q    How much does the estate currently have in its bank

8  account?

9  A    $85, $86,000.

10  Q    And you already have attorney fees that the estate will

11  owe in this case.  Is that right?

12  A    Yes.

13  Q    How would you pay for counsel in the State Court?

14  A    That's a good question.  I would have to work out an

15  agreement with that attorney, my other counsel, my other

16  professionals in the, in the case, because you know, there are

17  already fees that have been incurred, and so it would probably

18  have to be an attorney who was, you know, willing to, to fund

19  the way and payment, obviously, it's not the type of setting

20  that somebody -- it's not something that would be taken on a

21  contingency fee basis.

22       It would be an hourly rate type thing.  So it would be --

23  I try to do what I have to do, but it would be difficult.

24  Q    You mentioned earlier that you considered the efficient

25  administration of the estate, and I think in that testifying,

ACCESS TRANSCRIPTS, LLC        ⚖        1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 75 of 119

1 you mentioned how long it might take to make distributions.  Is

2 that fair?

3 A    Right.  Right.

4 Q    Did you consider the impact on the pending adversary

5 proceedings as part of that?

6 A    I did.

7 Q    What was your conclusion?  Talk to the Court.

8 A    Yeah.  Those from a time standpoint, and also from a you

9 know, expense standpoint, that the Chase claim is uncertain,

10 and it's being litigated, then if we are, you know, if the

11 parties in the court decide we're going forward with the

12 adversary litigation, then you know, I don't know, I don't know

13 how much money I need, you know, to pay 100 percent case.

14      So I would -- there would just be more expense in pursuing

15 all the other causes of action and collecting.  If I was

16 successful in those.

17      Yeah, but first considering, obviously, you've got -- I

18 would have to be successful in getting a judgment in the -- in

19 Fitzgerald, with regard to the Fitzgerald account receivable.

20 Q    And would it be easier on your administration at that

21 adversary proceeding, if the settlement's approved?

22 A    Easier is a relative term.  But yes, obviously.  I can't

23 always anticipate what's going to happen in the adversary but

24 yes, as far as the discovery, you know, you would have to be

25 deposed, and you know, just from a discovery standpoint, yes, I

1 think it would be -- it would take less time and be less
2 expensive.
3 Q    If the proposed settlement is rejected, what's your
4 opinion of the impact that will have on the time and the
5 expense associated with the adversary proceeding?
6 A    I think it's going to, you know, a lot more expensive for
7 the reasons that I've already discussed, and I can, I can go
8 into those again, but just more expensive, more discovery, more
9 you know, because there'd be other, you know, other cases,
10 other accounts receivable.

11       And also you got to wait for those other cases to settle
12 out or for a judgment to be obtained, because you know,
13 Cummings Manookian is not the, the current attorney of record
14 in those, in those cases.

15       So not only do you have to determine -- there has to be
16 some type of fee for their, you know, then to be a
17 determination of how much of that in Cummings and Manookian
18 entitled, entitled to.
19 Q    And you testified about risk, and you testified about
20 expenses.  And you testified that you considered the efficiency
21 of the administration of the estate.  After having considered
22 all those factors, what's your business judgment concerning the
23 proposed settlement?
24 A    I think the proposed settlement is in the best interest of
25 the estate and of the creditors of the estate.

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 77 of 119

1 Q    I want to ask you some specific questions about the
2 objection filed by Grant Konvalinka in this case.  Have you
3 reviewed that objection?

4 A    I have.

5 Q    Explain to the Court what your understanding of the nature
6 of that objection is.

7 A    Is that there's a possibility that Cummings Manookian
8 would -- if there is a sanction judgment awarded by the new
9 judge upon a rehearing that Cummings Manookian may not be
10 responsible for that or the actions of Brian Manookian.

11 Q    In your opinion, as an attorney and the Trustee, what do
12 you think the likelihood is the state court would decide that
13 Cummings Manookian is not responsible for Mr. Manookian's
14 actions?

15        MR. KONVALINKA:  Objection, Your Honor.  It calls for
16 qualifying her as an expert.  I think we need a little
17 clarification as to her experience with regard to this
18 particular topic.

19        MR. YOUNG:  I can clarify that I believe, to take
20 care of that issue, Your Honor.

21 BY MR. YOUNG:

22 Q    As the Trustee of Cummings Manookian, what's your opinion
23 of the likelihood that the state court will find that Cummings
24 Manookian is not responsible for Brian Manookian's actions?

25        MR. KONVALINKA:  (Indiscernible) my objection, Judge,

1 as well, because I don't think there's a foundation laid.

2          THE COURT:  All right.  The Court's going to allow

3 it.  She's the Trustee in the case.  She's an attorney and has

4 been on the panel for 24 years.  So, clearly, she can form an

5 opinion and should form an opinion as part of her fiduciary

6 duty as administering this estate.  So the Court's going to

7 allow that testimony.

8          THE WITNESS:  As you pointed out, Mr. Young,

9 obviously, they've the right, you know, to make that argument.

10 But I don't think that would be successful.  The -- Mr.

11 Manookian was one of two members of Cummings Manookian.

12 Cummings Manookian was the law firm in this matter.  And Mr.

13 Manookian was signing the pleadings.  He was, you know, he was

14 involved in it -- in everything within that sanctioned

15 proceeding.

16 So it's not like, you know, a case where maybe we have a big

17 firm where some attorney goes rogue or, you know, does

18 something that everybody else doesn't know about.  So based on

19 that, I didn't consider that to be a valid or successful

20 argument.  And in the end, as the judge said, "You're arguing

21 against yourself."  But I don't see that happening.

22 And the file court judge, of course, you know, the court

23 appeals said there was a recusal that the trial court judge did

24 make a finding that in issuing the sanction judgment against

25 Cummings Manookian, that Mr. Manookian was acting on its

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235    Doc 158-1    Filed 10/28/21    Entered 10/28/21 22:52:18    Desc
Exhibit 9/29/2021 Hearing Transcript    Page 79 of 119

1 behalf.

2 BY MR. YOUNG:

3 Q    Was Mr. Manookian authorized to make decisions on behalf

4 of Cummings Manookian?

5 A    Yes.

6          MR. KONVALINKA:  And, Your Honor, let me object to

7 the foundation with regard to that as to what knowledge she

8 would have with regard to what Mr. Manookian was authorized to

9 do.

10          MR. YOUNG:  Your Honor, she's the Trustee for the

11 entity we're asking about.

12          THE COURT:  I think if you ask the question based off

13 of her perspective as a Trustee.  But just asking a question

14 without some foundation, I think Mr. Konvalinka's correct.  And

15 narrow it to what you're trying to ask as far as period and how

16 she came to know that information.

17          MR. YOUNG:  Sure, Your Honor.  I can set that up.

18 BY MR. YOUNG:

19 Q    Ms. Burton, who signed the petition in this case?

20 A    Brian Manookian.

21 Q    From your review of records associated with this case, did

22 you find that Brian Manookian made financial decisions on

23 behalf of the law firm?

24 A    Yes.  He would -- you're talking about in the bankruptcy

25 case?

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 80 of 119

1  Q    Prior to the bankruptcy case.

2  A    Right.  He was listed as the chief, I think, the chief

3  managing officer in the -- on the bankruptcy petition.

4  Q    You mentioned a few minutes ago that the state court judge

5  made a finding that Mr. Manookian was Cummings Manookian's

6  agent.  Do you know any basis for a new fact-finder to reach a

7  different conclusion?

8  A    No.

9  Q    Are the facts still the same?

10 A    Yes.  I would say.  Yes.

11 Q    Are you aware that the Grant Konvalinka objection also

12 questions why you would allow the Chase claim at 250,000 is

13 you'd estimate the cost of defense to be $150,000?

14 A    Yes.

15 Q    Are there other factors that went into your

16 decision-making beyond simply the cost of defense?

17 A    I was trying to get that claim paid, you know.  I mean, in

18 a perfect case scenario, I would be able -- I would have close

19 to enough money to pay the claim.  So I took that into

20 consideration that in addition to the, you know, 150,000, that

21 was just one claim of that because that was just estimated

22 attorney fees that it would cost in that.

23 And also, allaying the risk of a substantial sanction judgment

24 being awarded, which would then be, you know, a bigger claim

25 and reduce the claims including the Konvalinka claim and the

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 81 of 119

1  McCarthy claim.  And then also the impact on -- the potential

2  impact on the expense in the adversary proceeding.  All of

3  which those expenses are administrative expenses that get paid

4  ahead of any unsecured claims.

5  Q    And would that include the Grant Konvalinka claim that

6  would be subordinate to administrative claims?

7  A    Yes.

8  Q    Are you also aware that Grant Konvalinka mentioned in a

9  footnote that it might be willing to represent the estate with

10 some litigation cap?

11 A    Yes.

12 Q    Has any offer like that been extended to you?

13 A    No.

14 Q    Do you have any details on how that might work?

15 A    No.

16 Q    Or whether they would be willing to do that?

17 A    No.  Other than what Mr. Konvalinka put in his footnote.

18 Q    Or whether you would be willing to retain them in that

19 matter?

20 A    That's correct.

21         MR. YOUNG:  Your Honor, I think those are the only

22 questions I have with this one reservation.  I'd like to

23 reserve the right to question her again regarding any issue

24 that might come up regarding the Brian Manookian objection if

25 the Court allows that testimony.  But beyond that, that's the

ACCESS TRANSCRIPTS, LLC  1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 82 of 119

1 extent of my direct examination.

2       MR. KONVALINKA:  And, Your Honor, at this time, could

3 I take a three to five-minute break and come back?  I just need

4 to step across the hall.

5       THE COURT:  Let's go ahead and take -- we've been at

6 this for a while.  Let's take a ten-minute break.  We'll come

7 back at -- well, that's seven minutes.  Let's keep it even and

8 come back at 3:30.

9       (Recess taken at 3:23 p.m.)

10      (Proceedings resumed at 3:31 p.m.)

11      THE CLERK:  Court is back in session.

12      MR. KONVALINKA:  May I proceed?

13      THE COURT:  Okay.  Just for everyone's edification

14 here.  I've got a hard stop at 4:30.  And I'll need to make

15 about a 30-minute break, hopefully, less than that at 4:30.

16 And then we'll come back if we're not done, and we'll go until

17 at least 5:30 or 6 tonight unless the parties want to go

18 longer.

19      And you may --

20                    CROSS-EXAMINATION

21 BY MR. KONVALINKA:

22 Q   Ms. Burton, with regard to the court of appeals, let me

23      MR. KONVALINKA:  Your Honor, can I -- I think -- am I

24 entitled to share something on the screen?

25      THE COURT:  I don't know what you're sharing.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 83 of 119

1          MR. KONVALINKA:  Well, it's the court of appeals

2     opinion, the first page of it.

3          THE COURT:  Any objection?

4          MR. YOUNG:  Your Honor, I'm not going to object even

5     though this party didn't upload it.  I uploaded it, so no

6     objection.

7          THE COURT:  Mr. Konvalinka.

8          MR. KONVALINKA:  All right.  So I don't see any share

9     button on my screen.  I apologize, so.

10          THE COURT:  I think we'll have to make you some type

11     of co-host.

12          MR. KONVALINKA:  Oh.

13          THE CLERK: Your Honor, he should be able to, at the

14     bottom of his screen, share his screen.

15          Try --

16          MR. KONVALINKA:  Okay.  I think I've -- all right.

17     Let me try this.

18          THE CLERK:  Just, please, make sure you just share

19     what you're trying to share, not your entire computer.

20     BY MR. KONVALINKA:

21     Q    And do you see, on your screen, Ms. Burton, in the Court

22     of Appeals of Tennessee at Nashville, January 7, the 2020

23     session?

24     A    I see that top -- the top part of it, but I don't see the

25     whole page.

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 84 of 119

1 Q   Okay.  Well, it was filed on February 4.  Is this what you

2 -- a portion of what you viewed in connection with making your

3 determinations?

4 A   Can you (audio interference)?

5 Q   Sure.  And I don't know if you can scroll?  Oh, I have to

6 scroll, but this is --

7 A   Can you reduce the percentage of it, so I can -- I don't

8 know if that's going to make it too small, but can you do that

9 so I can see the whole document?

10 Q   No.  I can't do the whole document, but I can scroll if

11 you want.

12 A   Okay.

13 Q   Let me know when you're finished reading that, and I'll

14 scroll to the next -- I'll scroll below.

15 A   Okay.  Go back up to the top so I can see the court of

16 appeals.  Okay.  I see that.

17 Q   And did you read that first paragraph, or do you want me

18 to go --

19 A   Yeah.  You can go.  I did.

20 Q   Okay.  That's fine.

21 A   Yes.

22 Q   Okay.  Do you recognize what's shown on the screen, the

23 first page of the court of appeals decision that you read in

24 making your review?

25 A   Yes.  you

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 85 of 119

1  Q    Now, if you will look, do you see where it states Brian P.

2  Manookian?

3  A    Yes.

4  Q    And he was there on behalf -- he was recognized as Brian

5  P. Manookian for the appellant, Cummings Manookian, PLLC.

6  Isn't that correct?

7  A    Correct.

8  Q    And he's referred to as an appellant.  Is he not?

9  A    Yes.

10 Q    And so based upon your earlier testimony in which you said

11 they were not part of the appeal, isn't it a fair statement

12 that at least that the court of appeals recognized him as an

13 appellant?

14 A    The court of appeals prepared that.  And they were an

15 appellant in the recusal of the -- the recusal issue, which is

16 what the court was ruling on there.

17 Q    And it also -- they aired the contempt and damage orders

18 too, did they not in this same opinion?

19 A    Right.  Because as you say, where it says, "and because

20 retroactive recusal is appropriately also vacated in the

21 contempt and damages orders."

22 Q    So, again, with regard to this particular appeal, with

23 regards to the issue of recusal in connection with it.  It

24 resulted in the vacation of the award that was against Cummings

25 Manookian, PLLC, who was -- which was an appellant in

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 86 of 119

1  connection with this proceeding, correct?

2  A    That's a good question because the --

3          MR. KONVALINKA:  And objection.

4  BY MR. KONVALINKA:

5  Q    It's yes, no, I don't know, ma'am.  That's it.  I'm not

6  asking for speculation.

7  A    Oh.  I'm sorry.  I don't know the answer to that because

8  the Chase parties raised the fact that the debtor did not

9  appeal the sanctions judgment.  But I think everybody was

10 pretty much in agreement that because the, you know, or what I

11 -- my position was that because Cummings Manookian appealed the

12 recusal matter.  Part of that -- the sanctions judgment was set

13 aside.  I didn't think they had much of an argument that this

14 did not impact the judgment against Cummings Manookian.  I

15 think it did.

16 Q    And with regard to the finding of the trial court that

17 Cummings Manookian was an agent, did you ascertain whether or

18 not there was any argument made by Cummings Manookian in

19 connection with that trial court proceeding that Mr. Manookian

20 is -- was, in fact, in contempt was acting outside of his scope

21 as an agent of Cummings Manookian, PLLC?  Did you see that

22 issue was even addressed?

23 A    No.  I did not.

24 Q    Then the person that was representing Cummings Manookian,

25 you said, in connection with that trial court proceeding was,

1  in fact, Mr. Manookian?  Is that correct?

2  A    Mr. Manookian and Brian Cummings were both listed as

3  counsel for Cummings --

4  Q    No.  What I'm -- I'm sorry.  I apologize.  I interrupted

5  you.  Go ahead.

6  A    That's okay.

7  Q    All right.  And so what I'm asking is with regard to the

8  appearance in connection with the contempt proceeding.  Are you

9  aware whether anybody even appeared on behalf of Cummings

10 Manookian, PLLC?

11 A    I believe Brian Manookian did.

12 Q    Did you review the transcript of the proceedings in making

13 your determination?

14 A    Not the transcript of the proceedings.  No.  The state

15 court opinion cited two portions of the transcript.  And so did

16 the, you know, the briefs that I read.  But I did not read the

17 full transcript.

18 Q    You were aware, though, there was a transcript, correct?

19 A    I assume there was.  Yes.

20 Q    But you said there were citations or references to it,

21 correct?

22 A    Right.  Right.

23 Q    And so, and again, are you aware that Brian Manookian only

24 appeared on behalf of himself and not on behalf of Cummings

25 Manookian, PLLC?

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 88 of 119

1  A    I am not aware of that.

2  Q    But would you have access to the transcript to review it?

3  A    I didn't request it.

4  Q    And I'm -- ma'am, I'd like an answer to my question.  It's

5  just fairly simple (indiscernible).  Did you have access to it,

6  ma'am?

7  A    I assume that I could have tried to obtain the transcript.

8  I know there were some things -- I, yeah, I think I could have.

9  Q    In making your determination with regard to the claim, I

10 think you testified that these parties are fairly litigious.

11 Is that what I'm -- is that what I understand your testimony to

12 be?

13 A    They're both very aggressive in their, you know -- very

14 aggressive in their respective positions.  I don't think either

15 one of them would back down from anything.

16 Q    Well, for example, in the adversary proceeding, if for

17 whatever reason the adversary proceeding is adverse to those

18 people -- that you obtain a favorable judgment on behalf of the

19 bankruptcy.  What is your -- what is the estimate that you have

20 as to how long an appeal process would be from that adversary

21 proceeding?

22        MR. YOUNG:  Object as to relevance.  I'm not sure

23 what that has to do with this, Your Honor.

24        MR. KONVALINKA:  May I respond, Your Honor?

25        THE COURT:  You can, yes, respond.

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 89 of 119

1      MR. KONVALINKA:  My response is fairly simple, Your

2  Honor.  One of the big things that we are addressing here today

3  is the efficiency of the administration of this estate.  I

4  think I'm entitled to extol with regard to this particular

5  witness whether she's actually considered -- regardless of what

6  the outcome of this particular matter is, there is going to be

7  a continued inefficiency if you have litigious parties who

8  appeal the adversary proceeding and let's just say even this

9  determination today as to standing.  We're going to be at this

10  process for some time, is all I'm trying to establish.

11      THE COURT:  Again, I think ask your question again,

12  because

13      MR. KONVALINKA:  Okay.  Let me just restate it and

14  maybe do a little better.

15  BY MR. KONVALINKA:

16  Q    Ms. Burton, with regard to a determination in the

17  adversary proceeding, if you are favorable in the outcome with

18  regard to that, do you or do you not anticipate that there is

19  going to be an appeal?

20  A    I hadn't considered that.  I wouldn't be surprised, but

21  there could be.  But I haven't considered that.

22  Q    And isn't that one of the things in connection with the

23  efficiency of the administration of this estate, isn't it

24  something that you should consider in the sense that if, in

25  fact, there's going to be an elongated or an extended period of

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 90 of 119

1  time with regard to the adversary proceeding.  Isn't that going

2  to increase the cost as well?

3  A    Yes.  Obviously, it would.  Yes.

4  Q    And based upon what your opinion as to the nature of these

5  parties insofar as an approach to litigation, how -- based upon

6  your experience, how long would that appeal take?

7  A    And you're talking about the appeal if I was successful in

8  the adversary proceeding?

9  Q    Yes, ma'am.

10  A    I would ask my counsel that question.  But I think it

11  could take, you know, it wouldn't surprise me if it took at

12  least a year for an appeal.

13  Q    And --

14  A    I really don't know the answer to that question.

15  Q    -- you don't have an opinion on that particular issue.

16  You haven't considered that particular issue.  Is that a fair

17  statement?

18  A    I haven't.  No.  I have not.  I've been focused on trying

19  to get a recovery in the adversary proceeding and collecting

20  it.

21  Q    Well, in your discussions with the case parties with

22  regard to some -- did you discuss with them whether there had

23  been any other attempts at settlement?

24        MR. YOUNG:  Objection as to admissibility under

25  Federal Rule of Evidence 408.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 91 of 119

1        MR. KONVALINKA:  And I'm sorry, Your Honor, you're

2    muted, and I didn't hear you.

3        THE COURT:  Response?

4        MR. KONVALINKA:  Yes.  First of all, I'm not asking

5    for the content of the settlement negotiations, Judge.  All I'm

6    asking for is whether there have been -- whether there was an

7    inquiry made that there had been attempts to settle with regard

8    to that.  I would also submit that under Rule 408.  This is not

9    a suggestion that I'm going to -- first of all, I want to know

10   if she made due inquiry with regard to prior settlement

11   negotiations.  And if she did or she did not, I think that may

12   be relevant to this proceeding in making a determination based

13   upon her opinion as to what would be in the best interest of

14   the bankruptcy estate.

15       Second of all, I would tell you that with regard to

16   the actual Rule 408 issue that deals with when you're in a

17   case, and you're -- and you have discussions between parties as

18   to settlement negotiations, and you're trying to enforce that

19   and duly precluded from doing that.  Under Rule 408, there is

20   an exception to the rule, if there's an extrinsic belief for

21   introducing this proof in connection with this proceeding, that

22   I should be permitted to do so because it's not evidence of the

23   settlement negotiation in connection with this case.  It is a

24   settlement negotiation in another case.  And so this, again, I

25   think that's something that she should have considered, but I

1 don't know if she did or she did not until I make an inquiry.

2         THE COURT:  And the Court will allow the limited

3 question that you posed would result with respect to the actual

4 whether there were or not what's the substance.

5 BY MR. KONVALINKA:

6 Q    So, Ms. Burton, if you would just answer my questions and

7 without much explanation so I don't get outside of what the

8 Court's scope is.  Were there discussions with the Chase

9 parties about prior negotiations that they had had with any of

10 the other parties concerning the settlement of their claims

11 against them?

12 A    No.

13 Q    So you did not make any inquiry of them?

14 A    No.  Not specifically about that.

15 Q    With regard to -- and you made some mention of the

16 pertinent that I can put in my objection, did you ever make

17 inquiry of me or others at the Grant Konvalinka and Harrison

18 firm?  Or your lawyer -- ask your lawyer to -- as to what basis

19 the family would be willing to proceed?

20 A    No.

21 Q    So just so I'm clear, it's my understanding that -- are

22 you suggesting that it's your opinion as an attorney and a

23 Trustee that if someone is acting in a contemptuous nature with

24 regard to an order that he or she would be acting within the

25 scope of their agency or employment?

1 A    I'm sorry.  Ask me that again?

2 Q    Sure.  Maybe I misheard you.  But you proffered -- you

3 offered an opinion in response to one of Mr. Young's questions

4 that you didn't think the result would be any different with

5 regard to the retrying of this case in Wilson (phonetic) County

6 based upon your role as the Trustee and your experience as a

7 lawyer.  Is that not a fair statement?

8 A    Correct.

9 Q    And so what I'm trying to understand is to do that, are

10 you as the Trustee and as an attorney suggesting that if

11 someone is acting in contempt in direct violation of a court

12 order that they would be acting on behalf of a professional

13 corporation as its agent and employee, which will be attributed

14 to them.  Is that what I understand?

15 A    I think so.

16 Q    And do you have any case law, other than the ruling of

17 this particular Court, that supports that, ma'am, that you

18 reviewed?

19         MR. YOUNG:  Objection, Your Honor.  Asking for a

20 legal conclusion, not a factual conclusion.

21         MR. KONVALINKA:  Your Honor, I think she's expressed

22 it.  Let me.  Let me state my response if I may.  Your Honor,

23 you can offer an opinion as to the Trustee.  And you can offer

24 an opinion as an attorney with regard to her review of a court

25 of appeals decision.  A review of a trial court's ruling all

1  without even a claim that there was a statement contained

2  within the record other than the judge's ruling that Mr.

3  Manookian was acting within the scope of his authority on

4  behalf of the PC.  And so I think I'm entitled to cross-examine

5  her with regard to that.

6         MR. YOUNG:  Your Honor, actually, Mr. Konvalinka

7  objected to her testimony as an attorney, to her testimony as

8  that of the Trustee of Cummings Manookian.  And now he's asking

9  her for case law.

10        THE COURT:  Her role in this case as a Trustee,

11 although she does, obviously, carry the experience of her

12 attorney knowledge.  As a Trustee, she can testify and should

13 testify as to the steps she reasonably made.  So I'll allow the

14 question.

15        MR. KONVALINKA:  Let me restate it for the record in

16 light of the Court's comment (phonetic), if I may, so I make it

17 correct.

18 BY MR. KONVALINKA:

19 Q    So, Ms. Burton, as a Trustee for this bankruptcy estate of

20 Cummings Manookian, PLLC.  Is it a fair statement that it is

21 your considered opinion that when someone is acting in

22 contempt, a direct contempt of a court order that they're

23 acting within the scope of their agency and employment by that

24 PLLC?

25        MR. YOUNG:  Objection, Your Honor.  Asked and

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 95 of 119

1  answered.

2          THE COURT:  I'm going to let her answer the question

3  again.

4          THE WITNESS:  Mr. Manookian claims that he wasn't in

5  contempt with the things that he did.  The court determined

6  that he was in contempt but that -- when that was raised in

7  your objection, I did consult with my attorney on that.  And

8  Mr. Young did some research on that which I believe is

9  contained in our response in Mr. Young's argument.

10  BY MR. KONVALINKA:

11  Q    Is that a yes, no, I don't know, ma'am?  I'm just asking a

12  question.

13  A    That's my response.

14  Q    So you don't know, or you do know?

15  A    I relied on my attorney.

16  Q    So to make sure I understand, for the purposes of the

17  record, you as Trustee did not form an independent opinion with

18  regard to the decision whether it was going to be a ruling by

19  the court in the new case that was being filed.  But you relied

20  upon Counsel's opinion with regard to that.  Is that a fair

21  statement?

22  A    No.  No.  No.  I rely -- I seek the counsel of my attorney

23  and -- but that doesn't mean that we don't have conversations

24  about things that -- after reviewing his -- what he researched

25  and talking to him about it.  I reached that conclusion on my

1  own.

2  Q    Now, if there is, for example -- what would you estimate,

3  based upon your experience as a Trustee, the cost of an appeal

4  with regard to if there's an appeal of the -- if there's a

5  favorable ruling in your favor with regard to that adversary

6  proceeding that might last a year.  What would be your estimate

7  as to the cost that would relate to that for the bankruptcy

8  estate?

9           MR. YOUNG:  Objection as to relevance.

10          MR. KONVALINKA:  Again, Your Honor, I think that I'm

11 entitled to show -- they continue to suggest that this is in

12 the best interest of the estate with regard -- because of all

13 the relative costs that is associated with the decision of the

14 Chase parties.  I think it's also important to understand what

15 is happening with regard to the adverse proceeding and the

16 costs that are associated with that because it's been suggested

17 that the costs are a certain number based upon the examination

18 by Mr. Young and (indiscernible) by the examination of

19 Mr. Spragens that I don't think is accurate.

20          THE COURT:  If it goes to the Trustee's

21 administration of the case, if the Trustee knows the answer,

22 she can answer the question.

23          THE WITNESS:  I haven't discussed that or evaluated

24 that, but I would -- I don't know, another $50,000 to $100,000

25 for an appeal.  And, again, I may be underestimating.  That

ACCESS TRANSCRIPTS, LLC        ⚖        1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 97 of 119

1  would be an estimate.

2  BY MR. KONVALINKA:

3  Q    Well, when there was a vacation of the -- vacating of the

4  award by the Supreme Court, did you contact the Chase parties

5  again to make a determination as to whether or not the amount

6  of the claim should be reduced in connection with the

7  settlement?

8  A    I was contacted by the Chase parties to discuss the relief

9  from stay issue.  And so that's kind of how all of the

10 discussions started from there.

11 Q    Okay.  Well, I guess I didn't articulate my question

12 correctly -- well enough.  What I'm interested in is when you

13 started, and you did the negotiations with the Chase parties,

14 there was no decision by the Supreme Court -- or excuse me, by

15 the court of appeals, that there would be a vacated the order,

16 correct?

17 A    No.  No.  This was after the court of appeals had vacated

18 the order.

19 Q    Okay.  And was it after the decision by the Supreme Court

20 to deny the vacating -- to deny the appeal?

21 A    No.  It was in between.

22 Q    So was there any revisiting of this issue since it was not

23 yet filed or approved with regard to the determination by the

24 Supreme Court by yourself?

25 A    I'm sorry.  Ask me that again?

1 Q   Sure.  I'm sorry.  It's probably a bad question.  With

2 regard to your role as Trustee, did you undertake to make any

3 further inquiry of the persons that you had been negotiating

4 with when you had then an adverse determination as to the

5 recognition of the application for the Supreme Court to

6 reconsider the case?

7 A   I'm not sure I under your question, but in between the

8 time that the order vacated the judgment and, actually, before

9 the appeal was filed or close to that time, I had discussions

10 with the Chase parties about several things, including their

11 claim.  I won't say several things.  About the claim

12 (indiscernible).

13 Q   So was there any revisiting of the amount of the

14 settlement at all as a result of the determination of the

15 Supreme Court not to accept the appeal?  Were there any

16 discussions about that?

17 A   No.  Because the settlement was not finalized or formally

18 memorialized at that point.  It had been discussed.

19 Q   And you have as a number of -- strike that.  Did you make

20 a determination as to what the number should be with regard to

21 the $250,000 amount?

22 A   I did.

23 Q   And was there any further counter made by the Chase folks

24 when you had suggested the $250,000?

25         MR. YOUNG:  Object under Federal Rule of Evidence

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 99 of 119

1  408.

2          MR. KONVALINKA:  Again, Your Honor, I'm not asking

3  about the content.  I'm just asking if there was any

4  discussion.

5          THE COURT:  Because we need to move on with this

6  detail, the Trustee who is operating as the Trustee can talk

7  about the facts and what the Trustee did to establish the

8  amount that's relevant to the Trustee's business judgment.  But

9  let's keep this for where we are.

10         We're talking about the Trustee's business judgment

11  and whether it was sound.  And I think the question as proposed

12  does go somewhat to the business judgment, but it's straying

13  close into matters that aren't necessarily relevant to the

14  business judgment of the Trustee, but we'll allow this one so

15  that we can get past what the Trustee did in establishing the

16  amount of the settlement.

17         MR. KONVALINKA:  Thank you, Your Honor.

18  BY MR. KONVALINKA:

19  Q    Do I need to repeat the question, ma'am?

20  A    Yes, please.

21  Q    After you suggest the number of $250,000, were there any

22  other discussions with the Chase parties in connection with

23  that amount?  I just want to know if there were discussions at

24  this point, not what the contents of the discussion was.

25  A    Yes, there were discussions.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 100 of 119

1  Q    And over what period of time?

2  A    Probably -- the discussions started in April and the

3  settlement agreement that was attached to the motion was

4  executed by the Chase parties in June, so -- so sometime

5  between April and June, obviously.

6  Q    And again, just for the purposes of the record, we're

7  referring to April and June of 2021.  Is that a fair statement?

8  A    Correct.

9  Q    And so are you suggesting to the Court that in your

10 business judgment that this case is going to be resolved

11 quicker and more efficiently by reason of your agreement to

12 this claim, as opposed to having other parties that may be

13 adversely affected by this that may take appellate action?

14 A    What case are you talking about?  Are you talking about

15 the state court matter or the adversary --

16 Q    No, I'm -- I'm asking this question.  You suggested to the

17 Court in your business judgment as the Trustee, you're making a

18 determination for the efficient administration of this estate

19 to save time with regard to the proposed -- the litigation that

20 is involved in the Chase matter and the expense that would be

21 involved in participating in the Chase matter, that it is in

22 the best interest of the bankruptcy estate.

23      And I'm just saying at the same time I'm not sure that you

24 considered what the adverse reaction of the other parties would

25 be with regard to that, in making that determination, and that

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 101 of 119

1 you're somewhat in a Catch 22 with regard to this in the sense

2 that you're going to have a similar expense and a similar

3 period of time that's expended with regard to those people that

4 you've already identified as being litigious in nature.  Is

5 that not true?

6 A    If this settlement is approved, then Cummings Manookian

7 won't be -- the estate won't be involved in the state court

8 proceeding.  I won't be employing an attorney.  I won't be --

9 you know, they will proceed however they wish to proceed, you

10 know, against the other parties, but not against Cummings and

11 Manookian.

12 Q    But again -- so those people that are involved in this

13 particular administration of the estate, with regard to the

14 adversary proceeding, whatever in connection with that, they

15 may -- you may be in the same position with regard to them and

16 that you're going to be having a long time of addressing that

17 issue in connection with the administration of this bankruptcy

18 estate.  Are you not?

19 A    I don't know that it will be as long, because as we -- as

20 I testified before, it may shorten the period of time in the

21 litigation of the adversary proceeding, you know, not counting

22 any kind of appeal.  So I do think it will be a shorter period

23 of time than if the adversary proceeding or litigation of that

24 is more extensive.

25 Q    What is the dates you have set for trial for that

1  adversary proceeding?

2  A    I do -- there's not an adversary -- there's a pretrial

3  conference after this.  There's not a trial date yet -- or

4  motions for summary judgment, that sort of thing.

5           MR. KONVALINKA:  Your Honor, I pass the witness.

6           MR. SPRAGENS:  Your Honor, I'm sorry.  Before Mr.

7  Young begins, I wanted to make the Court available -- I mean

8  aware that I spoke to Mr. Manookian, who is standing by

9  pursuant to a subpoena.  I was letting him know about the

10 Court's schedule, and he informed me that at five o'clock he

11 has a hard stop to -- it's for child care reasons, frankly.

12          So I wanted to let the Court know that, in case there

13 is an opportunity to take him out of turn or something.  But I

14 didn't want to interrupt Mr. Konvalinka's examination.

15          THE COURT:  Thank you.  Again, I'll have a hard stop

16 at 4:30.  So we can get done what we can get done, and we can

17 either come back tomorrow morning or another day, Friday, if we

18 can't finish up today.

19          MR. SPRAGENS:  Thank you, Your Honor.

20          MR. YOUNG:  Your Honor, if I may, just one brief

21 follow-up question for Ms. Burton.

22                    REDIRECT EXAMINATION

23 BY MR. YOUNG:

24 Q    Mr. Konvalinka asked you a number of questions about a

25 hypothetical appeal of the adversary proceeding and time and

1 expense associated with that.  Regardless of whether or not

2 there's appeal, wouldn't that be in addition to the cost and

3 time for a rehearing?

4 A    I'm sorry.  Ask me that again.

5 Q    If there is an appeal and there's money spent on the

6 appeal --

7 A    Of the adversary?

8 Q    Of the adversary proceeding.  Wouldn't that be additional

9 to any expense that would be spent on the rehearing?

10 A    In the state court proceeding?

11 Q    Right.

12 A    Yes.  Yes.

13 Q    So what you're trying to do is to keep the estate from

14 having to spend more money.

15 A    Right.

16        MR. YOUNG:  No further questions.

17        MR. KONVALINKA:  I have no further questions,

18 Your Honor.

19        THE COURT:  All right.  Next witness then.

20     (Witness excused)

21        MR. KONVALINKA:  I would call Mr. Manookian.

22        MR. YOUNG:  Well, Your Honor, I need to formally

23 close our side first, and then I'll object to the calling of

24 Mr. Manookian on two grounds:  One, it's beyond the corners of

25 Mr. Konvalinka's objection; and secondly, because all of his



1 evidence that Mr. Konvalinka lists on the witness and exhibit

2 list would be prohibited by Rule 408 of the Federal Rules of

3 Evidence.

4          MR. KONVALINKA:  Do you want me to respond to that

5 now, Your Honor?

6          THE COURT:  Go ahead and respond.

7          MR. KONVALINKA:  Well, first of all, there's

8 obviously a disputed issue of facts with regard to who was the

9 appellant and whether or not they were appealing the judgment

10 on behalf of Cummings Manookian.  I think that obviously

11 Mr. Manookian would be somewhat familiar with that since he's

12 listed as the attorney of record in connection with the

13 Tennessee Court of Appeals case in this matter.

14          I think, similarly, he would be able to tell us

15 whether or not he even raised the issue as to whether there was

16 a contempt -- a defense based on the lack of agency or acting

17 outside the scope of agency with regard to the entity itself at

18 the time of the lower court ruling in connection with this

19 matter, because I don't believe there was.

20          So, at least with regard to those issues, they are

21 directly on point with regard to this.  And again, with regard

22 to the other issues as described by Mr. Young, I know -- as the

23 Court's already previously said that I hadn't notified him

24 because I didn't put it in my objection, but I did put him in

25 my witness list and I did put down the areas and topics that

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 105 of 119

1  are really based upon, in part, Mr. Manookian's objection.

2  It's not everything that's in his objection; but at the same

3  time, it's irrelevant to this proceeding.

4       MR. YOUNG:  Your Honor, if I may briefly respond with

5  regard to the first couple of issues, those weren't in the

6  witness and exhibit list.  They weren't listed.  The only thing

7  that Mr. Manookian's testimony was listed as relevant was with

8  regard to the alleged walkaway offer, which would clearly be

9  subject to 408.

10      In fact, the letter that's attached to

11  Mr. Manookian's objection says very clearly at the top that

12  it's subject to 408.  So I think the only issues that he would

13  testify to are not admissible and is inefficient for this Court

14  to consider.

15      THE COURT:  All right.  And of course, this is just

16  the ground we were trying to prevent with bifurcating the

17  proceeding.  Mr. Manookian, his objection is not at issue,

18  based on the likelihood of conflating and confusing the issues

19  that are before the Court -- and remember, we're here on an

20  objection to the proposed settlement that's subject to the

21  business judgment rule, which is a high standard.

22      If any of the testimony that Mr. Manookian would

23  offer would be determined above that, the Court finds it very

24  unlikely that that in fact would be the case.  But because of

25  the scope of what you want to go into, the Court finds it's

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 106 of 119

1 more likely to be prejudicial than valuable to the Court.

2 So the Court is not going to allow Mr. Manookian to

3 testify unless it were very, very limited. And to this point,

4 Mr. Konvalinka, you've not offered me a sufficiently tight

5 scope of testimony that you want him to offer. You want him to

6 testify about his objection, which in fact go beyond what the

7 Court is willing to allow today.

8 You can attempt to tighten it up, but the Court is

9 not going to let Mr. Manookian backdoor his way into this

10 proceeding, based on my prior rulings that he does not have

11 standing.

12 MR. KONVALINKA: May I proceed, Your Honor?

13 THE COURT: You can express to the Court the scope

14 that you are going to examine Mr. Manookian.

15 MR. KONVALINKA: Well, one of the first things I'm

16 going to be asking him about is in fact what happened with

17 regards to the trial court proceeding, with regard to the

18 agency issue, which I previously raised, and it's raised in my

19 objection. That's (indiscernible) question and whether or not

20 Cummings Manookian did, in fact, appeal. Not only does it go

21 to sort of the merits of the litigation, it also goes somewhat

22 to the Trustee's duty to review this stuff and based her

23 opinion on this, she didn't consider those things. And I think

24 that's relevant, as well.

25 MR. YOUNG: Your Honor, if I may, none of those

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 107 of 119

1  issues were disclosed in the witness and exhibit list

2  associated with Mr. Manookian.

3      MR. KONVALINKA:  And I'd respectfully disagree,

4  Your Honor, in the sense that we did say that there should be

5  no award against Cummings Manookian because Mr. Manookian, to

6  the extent that he is found to be acting in contempt, would be

7  outside the scope of his agency and employment.  And we

8  definitely raised that, and it's relevant for that purposes.

9  And we also raised the issue that if he's not found in contempt

10 for anything, that, in fact, there would be no sanctions award.

11 So I think it is relevant for both of those purposes, because

12 we raised those in our objection.

13      MR. YOUNG:  And Your Honor, what I was trying to say

14 is that it's not in the witness and exhibit list.  If the Court

15 will look at the witness and exhibit list, the exclusive

16 reasons why Mr. Konvalinka listed potential testimony from

17 Mr. Manookian all had to do with his objection and this

18 purported walkway agreement.

19      MR. KONVALINKA:  Well, I disagree with that statement

20 as well, Your Honor.  If you look at the witness list, it

21 states in  pertinent part Brian Manookian, Mr. Manookian, may

22 testify regarding his personal knowledge of the Chase

23 litigation.

24      That is clearly the very thing that I just discussed

25 with the Court, and the very thing that I elucidated with

1  regard to what I was going to be asking this witness.  To

2  suggest otherwise is an incorrect apprehension of what is

3  contained in my witness list.

4      THE COURT:  We've gone back and forth enough.  The

5  Court is going to bar Mr. Manookian from testifying.  It's not

6  additive to where we are in this process, and the Court is

7  going to bar him from testifying to any matters related to the

8  litigation.  It would be speculative on his part, as well, just

9  the same as it would be speculative from any party to

10 prospectively predict what was going to happen in litigation.

11      So based on the ruling of standing, the Court doesn't

12 find the testimony of Mr. Manookian to be of probative value,

13 and to be more prejudicial and confusing if we allow him to

14 testify.  So the Court is going to sustain the objection of Mr.

15 Young, and Mr. Manookian will not testify today.

16      MR. MANOOKIAN:  I assume I'm being excused at this

17 point?

18      THE COURT:  Yes, sir.  You're free to go.

19      MR. MANOOKIAN:  Thank you very much.

20      THE COURT:  Mr. Konvalinka.

21      MR. KONVALINKA:  Yes, Your Honor.  I assume -- is

22 Mr. Young through, because he said he wanted to -- he was not

23 through, but he did want to raise those two issues, so --

24      MR. YOUNG:  No, Your Honor.  I'm sorry if there was

25 any confusion.  I'm done with my proof and I thought we had

ACCESS TRANSCRIPTS, LLC   ⚖   1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 109 of 119

1  moved on to Mr. Konvalinka's proof.

2          MR. KONVALINKA:  I have no further proof at this

3  time, Your Honor.

4          THE COURT:  All right.  Well, let's go ahead with

5  argument to wrap things up on issues that you want me to look

6  at.

7          MR. YOUNG:  Your Honor, I'm going to be very brief,

8  because I know the Court's read the briefs and has listened to

9  the Trustee's testimony.  Really the only thing I want to do is

10 reiterate that a Trustee (audio interference) deference to her

11 business judgment in the administration of an estate.  As we

12 cited in our settlement motion, courts have found that

13 compromises just like this are favored in bankruptcy in order

14 to increase efficiency and to minimize cost to the estate.

15         A Trustee doesn't need to prove that her settlement

16 is better than anything else that can be achieved, only that

17 the settlement falls within the reasonable range of

18 possibilities.  We cited the Penn Central Transportation case

19 in the Third Circuit in our settlement motion for that

20 proposition.

21         Case law is clear that neither the Court nor any

22 other party should substitute their business judgment for that

23 of the Trustee.  In this case, the Trustee's exercised her

24 reasonable business judgment in reaching the decision to allow

25 the Chase claim as an unsecured claim in the amount of

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 110 of 119

1  $250,000.

2      She testified that she considered a number of

3  factors including the likelihood that the state court would

4  reimpose a substantial (audio interference) judgment against

5  Cummings Manookian, the time and legal expense that would be

6  required to see a rehearing through to its conclusion, and the

7  impacts that settling this claim versus it remaining

8  unliquidated would have on the administration of this estate

9  and the progress of the adversary proceeding.

10      The testimony showed that when looking at litigation

11  risk, the expense of litigation, the time that would be

12  involved to try this claim in state court, and the effects of

13  all that, that the settlement is in the best interest of the

14  estate and its creditors.

15      Her testimony also showed why the objection -- the

16  remaining objection lacks merit.  She testified that she did

17  not believe that it was likely that a court would find that

18  Mr. Manookian was not the agent of Cummings Manookian,

19  considering that the state court had already previously made

20  that finding before.

21      Trustee properly exercised her business judgment in

22  reaching this settlement, as this Court should expect her to

23  do.  She's done exactly what the Court -- what the Bankruptcy

24  Court required -- Bankruptcy Code requires her to do and what

25  this Court would expect her to do.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 111 of 119

1    She's properly considered all factors, she's weighed

2  them, and determined that it's in the estate's best interest to

3  settle this Chase claim.  As such, the Trustee respectfully

4  requests that the Court grant her motion to approve the

5  compromise and settlement, and overrule any remaining

6  objections.  And that's all I have, Your Honor.

7          THE COURT:  All right.  Thank you.

8          Mr. Konvalinka.

9          MR. KONVALINKA:  I also will be brief.  It's quite

10 simple.  The Trustee misapprehended the issue, as just was

11 articulated by Mr. Young.  The issue is not whether

12 Mr. Manookian was the agent of Cummings Manookian.  The issue

13 is whether, to the extent that he was an agent, was he acting

14 within it scope of his agency on behalf of the entity at the

15 time that he -- his conduct was such that it could be

16 interpreted to be contempt of court, which is a direct

17 violation of a court order.

18         That's the issue.  And if he is not in violation,

19 obviously there could be nothing awarded against Cummings

20 Manookian.  If he is found to be in contempt -- and that's

21 acting outside the scope of any agency or employment that he

22 would have with the entity itself.  To suggest the issue is

23 just merely whether he's an agent misconstrues or misapprehends

24 what the real issue is when making a decision on behalf of the

25 Trustee in connection with this matter.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 112 of 119

1    And also what has been demonstrated in connection

2 with this particular proceeding, it's also in consideration

3 that there was no consideration as to what -- if there is a

4 settlement, to which parties object, that there is going to be

5 a process involved and litigation and expense as well, all of

6 which suggests there should have at least been the exploration

7 of would there be an opportunity out there that would be

8 willing to take this case on behalf of Cummings Manookian, to

9 the extent that there is a case, and handled in a state court

10 for a lesser amount than $150,000, and maybe cap a fee.  None

11 of that was done.  It was actually suggested by myself in

12 connection with this matter.  So none of that was explored, and

13 I think that those are errors that have been made in making

14 this business judgment.  That's all I have.

15    THE COURT:  All right.  Thank you.  The Court is

16 prepared to rule.  I'll just need a moment, but I'm going to

17 rule in about one minute, so please stand (audio

18 interference) --

19    All right.  The Court, first of all, would like to

20 thank both parties for what has been a well-argued proceeding

21 today.  We're here to determine the objection of Grant

22 Konvalinka to the Trustee's motion for approval of compromise

23 and settlement.

24    As has been stated several times today, the business

25 judgment rule grants substantial deference to the Chapter 7

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 113 of 119

1  Trustee.  That deference exceeds quite far.  In fact, many
2  Courts have said that short of bad faith or whim that the
3  Trustee wins.

4          This Court expects more than that based off of the
5  case law and the particularities of this case, the complexity,
6  expense, and likely duration being the key issues here, which
7  the Trustee did articulate were taken into account in
8  formulating the basis and the amount of the settlement.

9          We have here a Trustee who's been on the panel for
10 24 years.  We have a Trustee who took into account the risk.
11 We have a Trustee who had an estate that was by her testimony
12 administratively insolvent, with $85,000 of cash, and expenses
13 exceeding $100,000.  We have a Trustee who's actually
14 articulated the likelihood that there would be litigation that
15 would be long in duration, expensive, and run up bills for the
16 estate without actually having money to pay those bills for the
17 professional fees.

18         Those alone would be enough to satisfy the business
19 judgment rule given the Trustee has a duty, a fiduciary duty,
20 to ensure some recovery for the creditors.  In this case, based
21 off what's in the estate now, the only recovery would be for
22 professionals.

23         So the settlement is not only a good thing for the
24 estate, but the Trustee has articulated that, based off the
25 assets claims and costs, and the goal being a meaningful

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 114 of 119

1 distribution -- and the Trustee specifically used the words "to

2 protect" the other creditors.

3        The Trustee has clearly articulated that her business

4 judgment is not one based in whim or folly, but one that's

5 based on the facts in this particular case. There have been

6 issues raised as to whether the Trustee would examine every

7 possible option or every circumstance. Well, that's not the

8 test. The test is this Trustee's particular business judgment

9 with the facts as she sees the facts.

10        Clearly, there's been nothing articulated that this

11 Trustee is not competent, capable, and suited to make these

12 type of decisions. The facts in this case show that the

13 Trustee has done due diligence, examined the record of the

14 proceedings, and made a decision to settle this matter for

15 $250,000. That decision is not subject to review on the

16 business judgment rule because the Trustee has clearly

17 articulated a basis for making that decision which relies on

18 her experience and her review of this particular case.

19        So the Court, having heard argument of Counsel, finds

20 that the creditor has failed to overcome the substantial

21 deference given to the Trustee's business judgment, and

22 therefore the objection is overruled.

23        As part of this hearing strayed into Mr. Manookian

24 and his objection, the Court will note that even if

25 Mr. Manookian had standing to object, nothing in his pleadings

ACCESS TRANSCRIPTS, LLC     1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 115 of 119

1 or the evidence submitted would amount to a challenge to the

2 Trustee's business judgment.  However, that's not necessary to

3 rule on his objection based off my previous ruling on standing.

4          So, Mr. Young, if you could prepare an order to that

5 effect.

6          MR. YOUNG:  I will, Your Honor.  Thank you.

7          THE COURT:  All right.  Any questions?

8          MR. KONVALINKA:  Not from me, Your Honor.

9          THE COURT:  All right.  Thank you.

10          MR. YOUNG:  Your Honor, I believe we also have a

11 pretrial conference.  It might be possible for us to do this in

12 the next five minutes, because frankly the -- now that, based

13 on this ruling, I think we're ready to move that pretrial

14 matter forward.

15          I would suggest the following deadlines, and subject

16 to any comments --

17          MR. KONVALINKA:  Your Honor, may I be excused from

18 this?  I'm sorry.  I don't think I'm a participant.

19          THE COURT:  Yes, sir.  Thank you.

20          MR. YOUNG:  I believe it's going to take us

21 approximately 60 days to get through issues regarding written

22 discovery -- that's outstanding written discovery that has not

23 been fully responded to, that we need to follow up on and

24 perhaps get the Court involved in, but also perhaps there's

25 issuance of other written discovery that could shorten the

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript   Page 116 of 119

1  number of depositions that we'd need in this case.

2          So what I would suggest is that between now and

3  November 30th that the parties participate in written discovery

4  for depositions to open on December 1, to be concluded by

5  March 31.  I would normally probably only ask 90 days instead

6  of 120 days for these depositions, but with the holidays

7  intervening, I think it's -- and the number of depositions that

8  might be taken, I think it's smarter to ask for 120 days.

9          And then I would suggest that we set motion for

10  summary judgment deadlines, you know, any dispositive motions

11  beginning a couple of weeks thereafter.  So sometime in mid

12  April, then with two weeks for responses, one week for reply,

13  and then a hearing to follow.  That would be my suggestion as

14  to how to get this thing moving and try to bring this adversary

15  proceeding to a conclusion.

16          MR. SPRAGENS:  Your Honor, I apologize for my

17  informality.  I'm caught having thought my portion of the

18  hearing was over.  Let me just note that this is the first time

19  I've heard of these deadlines.  They don't strike me as too

20  objectionable, but I would like the opportunity to confer with

21  my client, and we can file something jointly with Mr. Young.

22          THE COURT:  All right.  The Court is more than happy

23  to entertain -- the deadlines sound more than reasonable to the

24  Court.  And if the parties would confer, you can either return

25  our worksheet or submit an order with -- leaving the actual

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 117 of 119

1  trial date blank.  If you can manage all the other dates -- and
2  the response and the reply deadlines -- if you can manage those
3  based off the framework that Mr. Young has articulated, the
4  Court would then insert the trial date and we'd be set to go
5  forward.

6        MR. YOUNG:  Your Honor, no, I'm happy to consult with
7  Mr. Spragens and Mr. Gabbert on that.  And obviously, if
8  there's an issue, we'll notify the Court and try to get back on
9  the Court's docket as soon as possible.  But hopefully there
10 will be no issue.

11        THE COURT:  Thank you.  Again --

12        MR. GABBERT:  That works for me, Judge.

13        THE COURT:  All right.  Thank you, Mr. Gabbert.
14 (Audio interference) without you saying something.

15        MR. SPRAGENS:  Your Honor, I'd like the record to
16 reflect that Mr. Gabbert's probably not wearing a tie either.

17        MR. GABBERT:  Actually, I am.  But I will say I am in
18 shorts.

19        MR. SPRAGENS:  Par for the course, sir.  Par for the
20 course.

21        THE COURT:  All right.  Again, thanks today.  The
22 Court does appreciate the professionalism that counsel on all
23 sides has argued today.  These are tough issues, but hopefully
24 we can move forward and get some resolution of this case, and
25 the Trustee can continue to administer this case and get the

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 118 of 119

1 results for the creditors.  So appreciate all the parties to

2 date.

3          UNIDENTIFIED:  Thank you, Your Honor.

4          UNIDENTIFIED:  Thank you, Your Honor.

5          MR. GABBERT:  Thank you, Judge.

6          UNIDENTIFIED:  Thank you, Your Honor.

7          THE COURT:  We'll be adjourned.

8     (Proceedings concluded at 4:29 p.m.)

9                    * * * * *

10

11

12

13

14          **C E R T I F I C A T I O N**

15

16          I, Alicia Jarrett, court-approved transcriber, hereby

17 certify that the foregoing is a correct transcript from the

18 official electronic sound recording of the proceedings in the

19 above-entitled matter.

20

21

22

23 _____

24 ALICIA JARRETT, AAERT NO. 428     DATE: October 25, 2021

25 ACCESS TRANSCRIPTS, LLC

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

Case 3:19-bk-07235   Doc 158-1   Filed 10/28/21   Entered 10/28/21 22:52:18   Desc
Exhibit 9/29/2021 Hearing Transcript    Page 119 of 119