IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | ) |
| ) | Case No. 3:19-bk-07235 |
| CUMMINGS MANOOKIAN, PLLC, ) | Chapter 7 |
| ) | Judge Walker |
| Debtor. ) | |
| ) | |

## MOTION TO DISQUALIFY BANKRUPTCY JUDGE CHARLES WALKER

Brian Manookian, through counsel, respectfully requests that Judge Walker recuse himself from this matter.[1]

## I. INTRODUCTION

This is a Chapter 7 bankruptcy. The Debtor is Cummings Manookian, PLLC, a law firm. Brian Manookian is the sole member and owner of Cummings Manookian. The Trustee seeks approval of a proposed settlement arising out of a now-vacated contempt order. Mr. Manookian has objected to that settlement, and the Court has scheduled an evidentiary hearing to adjudicate the dispute.

Regrettably, during the pendency of this matter – and after the Trustee sought approval of the disputed settlement – the Court belatedly disclosed that it had engaged in multiple *ex parte* communications about Mr. Manookian, including with counsel for the Trustee. Despite the Court's unambiguous ethical obligation to disclose the details of

---

[1] A recusal appeal in this matter's companion adversary proceeding is currently pending before the District Court. Movant respectfully submits that recusal appeal is operative on, and stays, the bankruptcy proceeding as well. To the extent the Court has concluded that the adversary proceeding recusal appeal does not stay this proceeding, Movant asks the Court to recuse itself in this proceeding as well.

those *ex parte* communications, it has repeatedly refused to do so, instead putting the burden on Mr. Manookian to produce evidence of the Court's own communications. The Court has also prohibited Mr. Manookian from discovering the extent of the *ex parte* communications directly from the Court itself.

The Court declined to disqualify itself in a related adversary proceeding in this matter, issuing multiple strongly worded orders about Mr. Manookian and Mr. Manookian's counsel over their attempts to seek disclosure of the Court's *ex parte* communications. As detailed below, multiple statements in those orders confirm that the Court harbors evident bias against Mr. Manookian.

## II. LEGAL STANDARD

Canon Three of the Code of Conduct for Federal Judges provides that the Court shall not have *ex parte* communications, except in limited circumstances, and even then must give all parties prompt notice of the communications and an opportunity to respond.

> Except as set out below, <u>a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers</u>. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, <u>the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested</u>. A judge may:
>
> (a) initiate, permit, or consider ex parte communications as authorized by law;
>
> (b) when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;
>
> (c) obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the

> person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or
>
> (d) with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

Emphasis Added.

The Tennessee Rules of Professional Conduct are likewise clear that attorneys may not engage in *ex parte* communications with the Court. Rule 3.5 states that, "A lawyer shall not seek to influence a judge, juror, prospective juror, or other official by means prohibited by law; communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order."

Finally, Federal law mandates that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S. Code § 455(a). Engaging in improper *ex parte* communications in violation of the Federal Code of Conduct for Judges is, definitionally, conduct resulting in a judge's impartiality being reasonably questioned. Failing to disclose *ex parte* communications under these circumstances likewise gives rise to reasonable questions about a judge's impartiality.

### III.  FACTUAL BACKGROUND

**A.  The Bankruptcy Court Engages in *Ex Parte* Communications About Mr. Manookian.**

On March 17, 2022, the Court opined from the bench that Mr. Manookian was the critical witness in this matter; stating that "most of this is going to be driven by additional information that's available, not to the Trustee at this moment, but is locked away deep

inside Mr. Manookian's brain somewhere." (Doc. 161-1, Transcript at P. 49:2-5). Judge Walker went on to state that, with respect to critical questions of fact regarding the Debtor, "Mr. Manookian holds the keys to the kingdom. Id. at 49:15-16.

As the hearing progressed, the Court ordered, over objection, that certain depositions involving Brian Manookian be held in a secured location in the courthouse. Counsel for Mr. Manookian raised routine, logistical arguments in opposition to this directive, primarily about parking and cost to travel downtown when depositions are routinely taken at attorneys' offices.

Surprisingly, in order to justify its rationale for this Order, the Court raised what it termed the "100 pound gorilla in the room on that issue," namely, what Judge Walker believed to be Manookian's "past behavior before the tribunals."

The Court then said, "<u>I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, and, you know, the Court takes those concerns very seriously</u> and makes no conclusion on whether they are valid, they are perceptions which drive behaviors of other parties." Dkt. No. 161-1, Transcript of Pretrial Conference, Page 84:11-23 (Emphasis Added).

At that hearing, well over a year into bench-trial cases over which he would preside, Judge Walker suprised Movant by casually admitting having participated in multiple *ex parte* conversations regarding Brian Manookian, the same very individual he had just identified as the key witness in the bankruptcy and adversary proceedings; but moreover, the Court then began holding forth on why it found Brian Manookian to be a particularly dangerous or unstable litigant: "[Brian Manookian's] past behavior before tribunals" justify ordering that depositions be conducted at the Courthouse over "security concerns" about Mr. Manookian.

As explained below, the Court's comments were not only factually wrong – Mr. Manookian has conducted hundreds of depositions without incident, and no court has ever found that he acted even remotely inappropriately, much less in a physically threatening manner, during a deposition – they betrayed animus toward the very person that Judge Walker has gone to great lengths to identify as the central factual witness in this case. And that animus is not based on evidence or past proceedings in the case, as nothing before the Court suggested that Mr. Manookian posed a security concern or had conducted himself inappropriately.

Indeed, the Court's views on Mr. Manookian can only be based on the Court's *ex parte* communications, which the Court acknowledged in its remarks during the hearing, or on extrajudicial investigation by the Court. Unfortunately, as briefed in the companion proceeding, the Court declined in the March 17, 2022 hearing – and continues to refuse – to provide any meaningful detail about its *ex parte* communications about Mr. Manookian, a key party and witness in this case.

**B.      The Bankruptcy Court Declines to Disclose the Substance of its *Ex Parte* Communications or Promptly Rule on a Motion to Disqualify**

After obtaining the transcript of the hearing, Mr. Manookian along with the Adversary Party Defendants promptly filed a motion asking the Court to disqualify itself and detail the dates, substance of, and parties to each of its *ex parte* communications, pursuant to 28 U.S.C. § 455(a) & (b)(1) and Canon Three of the Code of Conduct for Federal Judges (prohibiting judges from engaging in *ex parte* communications about a pending matter and, in the event an unauthorized *ex parte* communication is received, requiring prompt disclosure of the subject matter and an opportunity for the parties to respond). Dkt. No. 161.

Rather than ruling on the motion or making the compulsory disclosure, the Court set an evidentiary hearing, on its own initiative, calling for "[p]resentation of evidence" on the motion, but not until more than six weeks later on June 29, 2022. Dkt. No. 165.

The Court did not explain how or why it expected to receive testimonial evidence on the disqualification motion, nor did it explain <u>how Manookian could obtain evidence regarding the Court's own only recently revealed *ex parte* communications— definitionally known exclusively to the Court and not Manookian</u>.

The Court did not — and to this day, has not — disclosed any additional information about the *ex parte* communications that formed the basis of its March 17, 2022 ruling.

**C.  The Court Prevents Manookian from Obtaining Discovery in Advance of the Evidentiary Hearing and Again Declines to Recuse or Disclose the Substance of its *Ex Parte* Communications**

Facing an evidentiary burden and lacking information about the newly disclosed *ex parte* communications, Manookian reluctantly availed himself of the one tool a litigant can use to obtain evidence for presentation to a Court: a deposition. He noticed a limited deposition of Judge Charles M. Walker to take place two weeks before the evidentiary hearing set and insisted upon by Judge Walker.

Notwithstanding the atypical conduct of the Bankruptcy Judge in setting an evidentiary hearing on its own recusal without providing information necessary for a party to, a party noticing a deposition of a judge is admittedly and undoubtedly atypical. Sensitive to that fact, Manookian went out of his to ensure his request was minimally invasive and limited solely to their pending motion. To that end, Manookian specifically confined the scope of the deposition to two topics of inquiry: (1) Judge Walker and his staff's communications about this matter with third parties outside of court proceedings

and (2) Judge Walker and his staff's investigation into this matter, the parties, or witnesses outside of the Court record. Dkt. No. 177.

Within twenty-four hours of filing the Notice of Depositions, the Court issued an order *sua sponte* quashing the Notice and declaring it unenforceable. Dkt. No. 178. Consistent with his earlier actions, rather than take the opportunity to disclose the substance or details of his *ex parte* communications, Judge Walker used the order to variously attack Manookian and the movants; accuse them of "tainting the proceedings"; and to assign improper motives to their attempt simply to discover information that Judge Walker himself was required to disclose as a result of extrajudicial communications that did not involve Manookian.

Evidence of the same is saturated through the Order. Declining its fourth opportunity to simply provide a reasonable or innocent explanation for the *ex parte* communications, the Court wrote:

- "As to the first consideration, the Court finds that the Notice serves no purpose other than to waste the resources of the United States for private purposes… and is a misuse of the resources available in order to avail oneself of the justice provided by the bankruptcy system." Dkt. No. 178.

- "The request is inappropriate as the request for testimony from the sitting judge serves no purpose other than to taint the proceedings before the Court." *Id.*

- The request for testimony of the judge sitting on the case is sought in order to contaminate the exercise of judicial and quasi-judicial responsibilities by federal judicial personnel." *Id.*

- For the twelfth and thirteenth factors, deposing the judge on a case is a manipulation of the judicial system in an effort to taint the proceedings." *Id.*

Having refused to promptly or voluntarily disclose the substance of his *ex parte* communications, Judge Walker prohibited Manookian from discovering the same via his testimony after unilaterally setting the matter for an evidentiary hearing.

Another point is necessarily made. Judge Walker referenced having "multiple" communications with more than one attorney. Manookian was able to question only one party during discovery – Counsel for the Trustee – about whether he had engaged in such communications. He admitted having done so but denied any specific recollections a year later. The problematic nature of his purported lack of recollection is compounded by the Judge's refusal disclose details about the *ex parte* communications; importantly the Court referred to *multiple such ex parte* conversations, but only one such conversation has ever been identified.

At the eventual evidentiary hearing the Court declined to permit argument or evidence, and refused to provide an accounting of the *ex parte* communications.

Instead, the Court read a statement into the record that that it would decline to rule on the motion as a result of the appeal of his order quashing the notice of his deposition. Dkt. No. 182.

**D.    Manookian Appeals Judge Walker's Order Quashing the Subpoena to Himself regarding his *Ex Parte* Communications**

After Judge Walker quashed the subpoena to himself seeking details of his *ex parte* communications, Manookian appealed, seeking an interlocutory ruling requiring the Bankruptcy Court to detail the substance of its *ex parte* communications, or in the alternative, to disqualify Judge Walker. *Manookian PLLC v. Burton*, Case No. 3:22-cv-00474.

Following briefing on the matter, the Court held that interlocutory appeal was not warranted, and that Manookian's request to disqualify Judge Walker in the adversary proceeding was not yet ripe, given that Judge Walker, himself, had not yet ruled upon the motion. *Manookian PLLC v. Burton*, Case No. 3:22-cv-00474.

E.  **Judge Walker Denies the Motion to Disqualify, Mistakenly Relying on a Long-Vacated State Trial Court Order**

With the appellate stay lifted, on April 4, 2023, the Bankruptcy Court took up the hearing on the Adversary Parties' Motion to Disqualify Judge Walker. Judge Walker denied the motion at the hearing and entered his written order detailing his reasoning and analysis the following day. (Dkt. No. 229).

Notably, the Court – once again – refused to actually provide any detail of the content of the Court's *ex parte* communications or even the participants to the conversations. Instead, he repeatedly <u>suggested</u> (without actually stating) that any such *ex parte* conversations he'd referenced were possibly administrative or logistical in nature; accused Movants and their attorneys of attempting to weaponize the issue; and yet again markedly declined simply to detail who he or his staff spoke to, the dates of the conversations, what was said, or why he did not promptly alert the other parties to the communications, as is required by the judicial code of conduct, and it is required for good reason.

Relying on that long-vacated order – whose reversal had been filed with the Bankruptcy Court more than a year prior – Judge Walker stated:

> The record contains the rulings from other tribunals that have found Mr. Manookian to have acted in bad faith, engage in a pattern of obfuscation, and conduct himself in a reckless manner. Specifically, a Williamson County judge found that Mr. Manookian had knowingly, willfully, and

9
Case 3:19-bk-07235   Doc 187   Filed 08/23/23   Entered 08/23/23 12:25:23   Desc Main
Document    Page 9 of 18

intentionally violated a protective order and then attempted to mislead that court about that violation. That judge found Mr. Manookian's behavior regarding discovery matters to be so egregious that he imposed significant monetary sanctions against him. All of this is part of the record in this case. (Transcript of Hearing on Motion to Recuse Judge Charles M. Walker (Docket No. 161) 21:2-11)), April 4, 2023. *Also,* Finding in Order Denying Recusal (Docket No. 229 at 16).

Judge Walker's reliance on a long-vacated order, by a state court judge who was then *disqualified as a result of his bias against Mr. Manookian*, is perfectly emblematic of the reasons the Court is required to recuse here. A reasonable observer would question the Court's impartiality in this matter. Moreover, the Court's own statements evidence apparent bias against Mr. Manookian.

## IV. ARGUMENT

### A. The Court Engaged in Multiple *Ex Parte* Communications regarding Brian Manookian that Require Disqualification.

The Court is required to disqualify itself from this matter because it engaged in multiple prohibited *ex parte* communications about Brian Manookian and this proceeding[2] with "at least two [unidentified] lawyers" while this action has been pending.[3]

The Court then failed to promptly notify the parties of its repeated *ex parte* conversations as required by the Code of Conduct for United States Judges.[4] Instead, the

---

[2] Brian Manookian is the sole member of the Debtor, Cummings Manookian, and the Sole Member of the Defendant, Manookian PLLC.
[3] Transcript of Pretrial Conference and Motion Hearing, March 17, 2022, Pages 84:15-85:11. On April 21, 2022, the Manookian Parties learned that the Trustee, through her Special Counsel, has additionally had at least one improper *ex parte* communication with the Court. Deposition of Phillip Young, Transcript Forthcoming.
[4] Code of Conduct for United States Judges, Canon 3(A)(4).

Court only disclosed their occurrence much later, and only then to justify the Court's order that depositions in this matter be conducted at a secure courthouse location. In doing so, the Court attributed its order to unarticulated "concerns" about Brian Manookian which were communicated directly to the Court by undisclosed attorneys in various *ex parte* phone calls, but that neither the Court nor those attorneys disclosed to Mr. Manookian.

As a result, Manookian was never able to respond to the *ex parte* representations, or even make a record regarding those improper communications for review by a superior court. To this day, potentially years after the *ex parte* communications in this still-pending case, Manookian thus remain in the dark as to the substance of those prohibited communications, although their clear corrosive effect on the proceeding has become clear.

The Court and the as-yet unidentified attorneys have, intentionally or not, engaged in conduct that violates multiple provisions of the Code of Conduct for United States Judges as well as the Rules of Professional Conduct governing attorneys licensed in Tennessee.[5]

The Court's repeated *ex parte* communications with practicing attorneys, regarding this case and the parties to it, which were not disclosed at the time, and only revealed in order to support a subsequent ruling, require recusal. The Court's additional comments about whatever it believes "Mr. Manookian's past behavior" consists of, also require recusal.

---

[5] *Id. See, also*, Tennessee Supreme Court Rule 8, Rule of Professional Conduct 3.5, Impartiality and Decorum of the Tribunal ("A lawyer shall not seek to influence a judge, juror, prospective juror, or other official by means prohibited by law; communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order.").

Both statements reveal that this Court has engaged in prohibited *ex parte* communications and independent investigations, and also incorporated and relied upon the information gained in those improper exercises in its rulings and approach to this case.

28 U.S.C. § 455(a) states that "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This recusal standard is objective; the relevant inquiry is whether a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 800 (5th Cir. 1986) (internal quotation marks omitted), aff'd, 486 U.S. 847 (1988); *see Air Line Pilots Ass'n, Int'l v. Continental Airlines, Inc. (In re Continental Airlines Corp.)*, 901 F.2d 1259, 1262 (5th Cir. 1990); *In re Faulkner*, 856 F.2d 716, 720-21 (5th Cir. 1988).

The Court's conduct in conducting and allowing repeated *ex parte* communications; failing to promptly disclose the occurrence of those communications; failing to ever disclose the total substance and participants to those conversations; conducting apparent independent investigations into this matter; and relying upon both improper sources of information require immediate recusal. It further requires full disclosure of the circumstances and substance of the *ex parte* communications and independent investigation.

**B.    The Court's refusal to make the required disclosures de facto creates the appearance of impropriety and give rise to a reasonable questioning of its impartiality.**

The federal statute on recusal is found at 28 U.S.C. § 455. Section 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself

in any proceeding in which his impartiality might reasonably be questioned." The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned.

A reasonable person would conclude that Judge Walker's impartiality might reasonably be questioned given the following chain of events:

1. Judge Walker receives and engages in multiple *ex parte* communications "with at least two lawyers" who "call[ed] the Court" to raise "serious concerns" about "your client [Brian Manookian]."[6] Judge Walker does not disclose those conversations promptly on the record.

2. Over a year later, Judge Walker first mentions his *ex parte* communications in open court as justification for a contested ruling. Judge Walker again does not take the opportunity to disclose the details of the *ex parte* communications on the record.

3. When Movants promptly seek Judge Walker's belated disclosures and recusal via written motion, Judge Walker sets the request for evidentiary hearing (despite the fact that he is the sole holder of such evidence known to Manookian). In setting the hearing, Judge Walker again declines the opportunity to disclose the details of the communications at issue on the record.

4. After Manookian issues a subpoena to Judge Walker on the limited topic of his *ex parte* communications, Judge Walker quashes the subpoena in written order taking the time to excoriate Manookian and his motives; but again, refusing to simply detail the *ex parte* communications on the record.

---

[6] Transcript of Pretrial Conference, Page 84:11-23.

13
Case 3:19-bk-07235    Doc 187    Filed 08/23/23    Entered 08/23/23 12:25:23    Desc Main
Document      Page 13 of 18

5. When the Adversary Parties appeal the quashing of their subpoena, Judge Walker requires the parties to appear for an in-person hearing where, after assembling the parties, he simply reads a statement into the record that he will not act on the matter while subpoena is on appeal. Having summoned all to the Courthouse to read a statement into the record, Judge Walker again refuses include within that record any details of his *ex parte* communications.

6. Judge Walker holds the lengthy, in-person recusal hearing, during which he refuses to testify or otherwise disclose any details of the very communications at issue – known to him and required to be disclosed by the U.S. Code of Conduct.

7. Judge Walker denies his recusal in a lengthy written order, largely relying on a long-vacated state court order regarding Brian Manookian. In authoring that order, Judge Walker again refuses to simply disclose, or otherwise explain, the details of the very *ex parte* communications upon which the controversy hinges.

These facts would lead any objective observer to question Judge Walker's impartiality. Indeed, no objective observer <u>would fail to question</u> Judge Walker's impartiality given these facts and the seven (7) discrete occasions upon which Judge Walker either in person, or in writing, declined to comply with a Canon of Judicial Conduct whose fundamental purpose is to ensure impartiality.

It is exceptional that a sitting federal bankruptcy judge would reveal having participated in multiple *ex parte* communications and not only refuse to voluntarily disclose their details, but actively block measures to discover their contents and the identities of the parties thereto. Indeed, Movant is unable to find an analog in federal

case law because this simply does not appear to happen. But commenters have cataloged the effect of such behavior in state courts.

"Failure to disclose a conversation and its contents creates the appearance of impropriety." Leslie W. Abramson, <u>The Judicial Ethics of *Ex parte* and Other Communications</u>, 37 Houston Law Review 1343, at 1375 (2000). Emphasis added. Citing *Bell v. State*, 655 N.E.2d 129, 132 (Ind. Ct. App. 1995) (holding that "the trial judge created an appearance of impropriety" by "failing to fully disclose the extent of his [*ex parte*] conversation"); *Niblock v. State*, 711 P.2d 771, 772-73 (Kan. Ct. App. 1985) (deferring to the state's supreme court to determine an ethical violation where the trial judge responded to a letter from state corrections officials and then presided over a hearing presenting the same issue without revealing the letter to the parties or counsel).

"A trial judge's failure to disclose participation in a banned communication or reveal its contents will likely result in the conclusion that the judge engaged in an ethical violation." *Abramson* at 1376 (citing *State v. Rich*, 907 P.2d 1382, 1383-84 (Ariz. 1995) (en banc) (placing the burden on the appellee to prove that there was no reversible error where the judge failed to disclose an improper *ex parte* communication with the jury)); *In re Wheatley*, 697 N.E.2d 938, 941 (Ml. App. Ct. 1998) (vacating and remanding where the trial judge created the appearance of impropriety by failing to disclose the receipt of an improper *ex parte* communication).

The reasoning underpinning these decisions is sound and in accord with the federal rules governing disclosure of *ex parte* communications. The very act of refusing to do so shakes the confidence of parties to the proceedings.

A judge's refusal to simply follow the rules put in place to protect the integrity of the proceedings is, itself, de facto grounds for a reasonable observer to reasonable

question the judge's impartiality. Judge Walker has, for reasons known to him, decided that he will not disclose or otherwise detail the multiple conversations he acknowledged having with at least two lawyers about this case. That decision requires disqualification.

**C.     The Bankruptcy Judge's Actions in Response to Efforts to Discover the Content, Identities, and Extent of *Ex Parte* Communications Warrant Disqualification.**

The Bankruptcy Court's response to Mr. Manookian's request that he simply make the disclosures already required by the Judicial Code of Conduct confirms the need for his disqualification. Rather than simply make the disclosure, Judge Walker issued a vitriolic order repeatedly asserting that Manookian had acted with improper motives. These are those statements as to Manookian's Request that the Judge simply comply with the existing Federal Judicial Canon:

- "The request is inappropriate as the request for testimony from the sitting judge serves no purpose **other than to taint the proceedings before the Court.**" Dkt. No. 178. Emphasis Added.

- The request for testimony of the judge sitting on the case is sought **in order to contaminate** the exercise of judicial and quasi-judicial responsibilities by federal judicial personnel." Dkt. No. 178. Emphasis Added.

- For the twelfth and thirteenth factors, deposing the judge on a case is a manipulation of the judicial system **in an effort to taint the proceedings**." Dkt. No. 178. Emphasis Added.

Strikingly, the Court made its view of a litigant plain, concluding that he was attempting to "manipulat[e] the judicial system" and trying to "taint the proceedings"— when, in fact, Mr. Manookian was trying to meet an evidentiary burden incorrectly imposed by the Court when it set an evidentiary hearing on a recusal motion about *ex parte* communications known only to the Court. Setting aside every prior argument in

this brief, this Court's own rulings confirm that the Court no longer meets the objective criteria required to preside over this case. The Court has deemed the mere attempt to gain information about the Court's *ex parte* communications as not only a personal attack, but an effort to "taint" and "contaminate" the proceedings, summarily concluding that Mr. Manookian acted with improper motives. A reasonable observer would conclude that the Court's impartiality is in question, and the interests of justice would be served by another bankruptcy judge handling this case.

Finally, the Court's reliance on a vacated state court order to justify its comments about Mr. Manookian additionally confirms the Court's evident bias against Mr. Manookian. The specific order from which Judge Walker quoted and relied on as the basis for his rulings was issued and authored by a state-court judge who was subsequently removed from that case by the Tennessee Court of Appeals as a result of evident bias against Mr. Manookian. Moreover, as the Court was or should have been aware, the quoted order had long been vacated by the time the Court relied upon it.[7]

## V. CONCLUSION

For all these reasons, the Court should conclude that disqualification is warranted and required by controlling law. Moreover, the Court should detail the dates, substance of, and parties to each of its *ex parte* communications about Mr. Manookian as well as details of any independent investigation it conducted.

---

[7] In the same order the Court stated that Mr. Manookian had been "disbarred by the Tennessee Supreme Court." That statement was not only unrelated to the issue to be resolved, but it was and is false. It is unclear where the Court obtained that information that was apparently material to its ruling about Mr. Manookian, and it provides further reasonable grounds to question the Court's impartiality.

Date: August 23, 2023                                  Respectfully submitted,


                                                       */s/ John Spragens*
                                                       John Spragens (TN Bar No. 31445)
                                                       Spragens Law PLC
                                                       311 22nd Ave. N.
                                                       Nashville, TN 37203
                                                       T: (615) 983-8900
                                                       F: (615) 682-8533
                                                       john@spragenslaw.com

                                                       *Attorney for Manookian PLLC and
                                                       Brian Manookian*


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed August 23, 2023 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.


                                                       */s/ John Spragens*