Charles M. Walker
U.S. Bankruptcy Judge
Dated: 2/8/2024



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CUMMINGS MANOOKIAN, PLLC, | ) | Case No.: 3:19-bk-07235 |
| | ) | Chapter 7 |
| Debtor. | ) | Judge Walker |

## ORDER FINDING BRIAN MANOOKIAN LACKS STANDING TO OBJECT TO THE TRUSTEE'S MOTION FOR COMPROMISE AND SETTLEMENT

This matter is before the Court on remand from the United States District Court for the Middle District of Tennessee after appeal from a judgment of this Court. The District Court, in its *Memorandum Opinion*, instructs this Court to apply a less stringent standard than may have been applied in deciding the standing of Brian Manookian – a non-party to this action – to object to a proposed settlement. *Manookian v. Burton* (*In re Cummings Manookian, PLLC*), 21-cv-00797, 2022 WL 677562 (M.D. Tenn. Mar. 7, 2022) (Crenshaw, C.J.). This Court now applies the standard as articulated by the District Court and finds that Brian Manookian lacks standing in this matter because he has failed to demonstrate a *reasonable possibility* of a surplus.

1

# BACKGROUND

Cummings Manookian, PLLC ("Debtor"), filed a petition in this Court for relief under Chapter 7 of the Bankruptcy Code on November 6, 2019. Jeanne Ann Burton ("Trustee") was appointed as the Chapter 7 Trustee to oversee the estate in the case.

Among the claims against the estate, as of the petition date, was a sanctions judgment issued by the Circuit Court for Williamson County, Tennessee ("State Court") against the Debtor, Brian Manookian, Mark Hammervold, and Hammervold Law, PLLC, jointly and severally, in the amount of $748,769.21. The judgment was awarded to Dean Chase, Sandra Chase, and D.F. Chase, Inc. ("Chase Claim"). Subsequently, this judgment was vacated by the Tennessee Court of Appeals, which ordered a retroactive recusal of the trial judge who issued sanctions and remanded the case for further proceedings before a new judge.

On July 6, 2021, the Trustee proposed to settle the Chase Claim for $250,000 to avoid renewed litigation in the matter and the potential reinstatement or expansion of the sanctions judgment by a new judge in the State Court. (ECF Doc. 108)[1]. Two objections to this settlement were filed, including one by Grant, Konvalinka & Harrison, P.C. ("GKH") (ECF Doc. 111), and one by Brian Manookian (ECF Doc. 112). The Trustee, in her response to Brian Manookian's

---

[1] All references to "ECF" refer to this Court's docket of the case.

objection, alleged that Brian Manookian, as principal of the Debtor, lacked standing in this matter (ECF Doc. 125). This Court set the two matters, the proposed settlement and the standing of Brian Manookian, for a bifurcated hearing on September 29, 2021. At that hearing the Court first determined that Brian Manookian lacked standing to object to the Trustee's proposed settlement. The Court then went on to consider the Trustee's proposed settlement in light of the GKH's objection. That determination resulted in the objection being overruled and approval of the Trustee's settlement of the Chase Claim (See hearing transcript ECF Doc. 157).

Brian Manookian appealed the determination that he lacked standing to the United States District Court (ECF Doc. 149). That court determined that a different legal standard should be applied to the determination that Brian Manookian lacked standing and remanded the case, instructing this Court to conduct further proceeedings as necessary in order to apply the designated standard. *Manookian v. Burton* at *4.

## LEGAL STANDARD

The applicable legal standard for determining standing in a bankruptcy context, as articulated by the District Court on appeal, is whether a party is "adversely affected pecuniarily". *In re Moran*, 566 F.3d 676, 680 (6th Cir. 2009). In general, "Debtors, particularly Chapter 7 debtors, rarely have such a pecuniary

3

interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor." *In re Lunan*, 523 F. App'x 339, 340 (6th Cir. 2013) (citation omitted). The exception to this general rule is when a case is a surplus case, meaning the estate has assets in excess of liability which would then revert to the debtor, making them a "person aggrieved" who has an interest in the case and therefore has standing. *Id*.

In showing such an interest, the debtor has the burden of showing "more than a metaphysical possibility of surplus; instead it must show that such surplus is a *reasonable possibility*." *In re Khan*, 544 F. App'x 617, 619 (6th Cir. 2013)(internal quotation omitted)(emphasis added). The "reasonable possibility" standard is a less demanding one than a "clear probability" or "more-likely-than-not" standard. *Hamzah v. Holder*, 428 F. App'x 551, 556 (6th Cir. 2011). However, it requires "concrete evidence" that such a surplus is more than a "theoretical chance". *Simon v. Amir* (*In re Amir*), 436 B.R. 1, 10 (6th Cir. BAP 2010).

## DISCUSSION

The District Court has remanded this matter for the application of a different legal standard. *Id.* It is worth noting that the matter was NOT remanded for any enlargement of the record. Indeed, the District Court observed that both parties had argued in their appellate briefs that the record was sufficient for the District Court

4

Case 3:19-bk-07235   Doc 205   Filed 02/08/24   Entered 02/08/24 16:47:15   Desc Main
Document      Page 4 of 10

to make a determination regarding the possibility of a surplus. See *Manookian v. Burton* at *3. The District Court declined to make such a finding, or any factual finding for that matter. Instead, the District Court left this Court's findings of fact in place, instructing this Court to determine whether or not Brian Manookian had carried his burden of establishing that a *reasonable possibility* of such a surplus existed based on those facts. *Manookian v. Burton at* *4. The District Court noted that it would not disturb the findings but would leave it "to the Bankruptcy Judge to make that determination under the proper standard because he is intimately familiar with the facts of this case". *Id.* Therefore, this Court may proceed upon the record as it currently stands, applying the correct legal standard to the facts already on the record.[2]

The matter of the possibility of a surplus in this case was thoroughly argued during the September 29, 2021 hearing (See hearing transcript ECF Doc. 157). Ms. Burton, the Chapter 7 Trustee, was called as the only witness in that hearing, and was examined under oath by both Mr. Young, counsel for the Trustee, and Mr. Spragens, counsel for Brian Manookian. No other evidence was presented by either party.

---

[2] In an abundance of caution, the Court set a status hearing on the matter once it retained jurisdiction following the appeal of another issue. All parties were represented by counsel at that hearing on February 7, 2024. The parties were asked to present their position on the status of this matter and no party requested to reopen the record. Therefore, as instructed by the District Court, the record remains as it was at the time of the appeal.

As of the date of the trial, the Trustee held only $85,000 in the estate. *Id.* at 32:11–12. The Court Clerk holds an additional $715,000, to which the estate is not currently entitled. *Id.* at 32:21–33:1. In order to gain that $715,000, the estate would require a favorable judgment or a settlement in the currently ongoing adversary proceeding. *Id.* at 41:22–41:5. There is no indication of any sudden settlement being imminent in that proceeding, and indeed, Mr. Manookian continues to contest any such favorable result in that proceeding. *Id.* at 45:11–20.

Other assets of the estate remain similarly speculative. The Trustee represents that the estate is entitled to $1.35 million in the Fitzgerald case resulting from an award of attorney's fees. *Id.* at 12:1–15. There are an additional fifteen cases which the Trustee alleges that the estate has an interest in and is owed payment in. *Id.* at 20:2–9, 21:11–17. Any money the estate may gain from those proceedings is speculative and depends on both a favorable outcome in the litigation itself, and the difficult and messy business of collection. Litigation outcomes are unpredictable and the process is often very expensive. *Id.* 37:14–38:1. Collection of any amount of a favorable judgment is similarly unreliable, difficult, and expensive to undergo, and it depends on many factors which are at play in this case. *Id.* at 38:2–39:13. Though the Trustee does allege that the estate is entitled to various hard property and intangible property as additional assets, any

award, judgement, or collection of that money is speculative and there is not at this point even a speculative inventory of the amount of such funds. *Id.* at 28:11–19.

There are three main claims against the estate. The claim by Mr. Konvalinka totals approximately $300,000. *Id.* at 9:3–10. The claim by Ms. McCarthy totals approximately $70,000. *Id.* at 9:16–10:1. The Chase claim, subject of the current attempt at reaching a settlement, is a matter of some debate. The Trustee's settlement would value that claim at $250,000. *Id.* at 9:11–15. However, the Trustee speculates that if the settlement were not allowed and the state court judgment from which it stems were reinstated, the amount of the Chase claim could reach or even exceed the $800,000 that the claim was initially requesting. *Id.* at 35:22–36:2, 37:9–13. Meanwhile Mr. Manookian insists that the claim currently is valued at zero dollars as a result of the judgment being vacated. *Id.* at 10:21–11:4.

Beyond these three claims are both actual and speculative attorney fees, costs, and the Trustee's compensation, all of which must be paid out of the estate before any potential surplus could exist. Trustee's special counsel, Mr. Young, is currently entitled to approximately $100,000 in attorney's fees. *Id.* at 11:12–16. Both the current adversary proceeding and any additional proceedings, such as that in the Fitzgerald case, will incur substantial attorney's fees. *Id.* at 13:10–14:1. The Trustee's compensation on $800,000 (the total for the current $85,000 plus the

7

$715,000 currently held by the Court Clerk) would total around $43,000 and if the estate were to succeed in securing additional funds from any other avenue, that number would of course increase. *Id.* at 14:9–18. Attorney's fees that would incur upon a renewing of litigation in the state court surrounding the Chase claim if the settlement is not approved are estimated at $150,000, which could potentially lead to an additional $100,000 in bankruptcy fees. *Id.* at 13:18–14:1. Attorney's fees resulting from any attempt by the Trustee to secure a favorable judgment in the Fitzgerald case alone are estimated at $50,000, and this number could easily double across the remaining potential cases. *Id.* at 35:15–21. And all of this says nothing about the potential cost of collecting any favorable judgment in those cases, assuming such a judgment results at all, nor about any of the other numerous administrative and legal costs involved in administering a bankruptcy estate.

    The result of all of this is that the estate of Cummings Manookian has, as of the trial date, a mere $85,000 in current assets. Any additional funds are speculative and rest upon the uncertain outcomes of numerous litigations as well as the as-yet-uncounted value of any property which the estate may or may not be entitled to. The three claims and current known attorney's fees against the estate total some $720,000 calculated based on the Trustee's settlement of the Chase claim. The myriad of proceedings necessary for a full conclusion of this bankruptcy process make it a virtual certainty that the final amount of these

numbers, $85,000 in assets against $720,000 in claims fees and costs, will change before it can be certain whether there will be a surplus in this case.

The burden here placed upon Brian Manookian, as described by the District Court, is to show that there exists a *"reasonable possibility"* that when all is said and done the assets of the estate will exceed all claims upon it and the surplus will revert to him. *Manookian v. Burton* at *3.

It is the opinion of this Court that Mr. Manookian has failed to meet this burden. It was the position of the Trustee that, when all the innumerable variables of the matter are considered, it was unlikely that this case would result in any surplus. ECF Doc. 157 at 39:12–14. This Court agrees. It is obvious from the record that any potential for a surplus in this case bears far more relation to a mere "metaphysical possibility" than to any "reasonable possibility". *Id* (citing *In re Khan*, 544 F. App'x 617, 619 (6th Cir. 2013)).

## CONCLUSION

This Court, after a thorough examination of the facts and testimony as presented at trial, and the application of the *"reasonable possibility"* standard as instructed by the District Court, finds that Mr. Manookian has failed to meet this burden. The status of the assets of the case, the current claims against it, and the vast multiplicity of variables yet to be resolved to determine the final amounts of assets and claims do not present a *"reasonable possibility"* of a surplus in this case.

Because Mr. Manookian has failed to meet the burden placed upon him as described by the District Court, this Court finds that he lacks standing in this matter.

Therefore, IT IS HEREBY ORDERED that, for the reasons stated herein, Brian Manookian lacks standing to bring an objection to the Trustee's Motion for Compromise and Settlement.

***THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS
INDICATED AT THE TOP OF THE FIRST PAGE***

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.